# Exhibit A – Settlement Agreement

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Case No. 12-cv-00603 |
| PRODUCT: OCCUPANT SAFETY RESTRAINT SYSTEMS | |
| THIS DOCUMENT APPLIES TO: ALL END-PAYOR ACTIONS | Hon. Marianne O. Battani |

### SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this 30th day of May, 2014 ("Execution Date") between Autoliv, Inc., Autoliv ASP, Inc., Autoliv B.V. & Co. KG, Autoliv Safety Technology, Inc. and Autoliv Japan Ltd. (collectively, "Autoliv"), and End-Payor Plaintiffs class representatives (collectively, "End-Payor Plaintiffs"), both individually and on behalf of a class of end-payor purchasers of Occupant Safety Restraint Systems (the "Settlement Class") as more particularly defined in Paragraph 10 below.

WHEREAS, End-Payor Plaintiffs are prosecuting the above *In Re Automotive Parts Litigation*, Master File No. 12-md-02311 (E.D. MI. ), Case No. 12-cv-00603 (the "Action") on their own behalf and on behalf of the Settlement Class against, among others, Autoliv;

1

WHEREAS, End-Payor Plaintiffs allege that they were injured as a result of Autoliv's participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for Occupant Safety Restraint Systems in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in End-Payor Plaintiffs' Consolidated Amended Class Complaint (the "Complaint");

WHEREAS, Autoliv denies End-Payor Plaintiffs' allegations and would assert defenses to End-Payor Plaintiffs' claims;

WHERAS, arm's-length settlement negotiations have taken place between Settlement Class Counsel (as defined below) and Autoliv, and this Agreement has been reached as a result of those negotiations;

WHEREAS, End-Payor Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving the claims against Autoliv, according to the terms set forth below, is in the best interest of End-Payor Plaintiffs and the Settlement Class because of the payment of the Settlement Amount and the value of the Cooperation (as those terms are defined below) that Autoliv has agreed to provide pursuant to this Agreement;

WHEREAS, this Action will continue against all other Defendants that are not Realesees (as defined below);

WHEREAS, Autoliv, despite its belief that it is not liable for the claims asserted and has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this

2

Agreement, and to put to rest with finality all claims that have been or could have been asserted against Autoliv with respect to Occupant Safety Restraint Systems, based on the allegations in the Action, as more particularly set out below;

WHEREAS, Autoliv has agreed to provide Cooperation (defined below) to End-Payor Plaintiffs in the ongoing prosecution of this Action as set forth in the Agreement, and such Cooperation will reduce End-Payor Plaintiffs' substantial burden and expense associated with prosecuting this Action; and

WHEREAS, End-Payor Plaintiffs recognize the benefits of Autoliv's Cooperation and recognize that because of joint and several liability, the Agreement with Autoliv does not impair End-Payor Plaintiffs' ability to collect the full amount of damages to which they and the Settlement Class may be entitled to in the Action.

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Releasees, as defined below, and except as hereinafter provided, without costs as to End-Payor Plaintiffs, the Settlement Class, or Autoliv, subject to the approval of the Court, on the following terms and conditions:

A.   Definitions.

1.   "Cooperation" shall refer to those provisions set forth below in Paragraphs 30-42.

2.   "Defendant" means any party named as a defendant in this Action at any time up to and including the final approval date as set forth in Paragraph 18 of this Agreement.

3.   "Document" is defined to be synonymous in meaning and equal in scope to

the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, including

without limitation, electronically stored information. A draft or non-identical copy is a

separate document within the meaning of this term. For purposes of this Agreement,

Document shall include all English translations in Autoliv's custody, possession or

control.

4. "End-Payor Plaintiff Class representatives" means those Settlement Class

Members, as defined in paragraph 12, below, who are named plaintiffs in the Complaint.

5. "Indirect Purchaser States" means Arizona, Arkansas, California, District of

Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusessetts, Michigan,

Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New

Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South

Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

6. For purposes of this Agreement, "Occupant Safety Restraint Systems" shall

have the meaning as set forth in the Complaint at the time this Agreement is executed.

7. "Opt-Out Deadline" means the deadline set by the Court for the timely

submission of requests by Settlement Class Members to be excluded from the Settlement

Class and this settlement.

8. "Releasees" shall refer to Autoliv and to all of their respective past and

present, direct and indirect, parents, subsidiaries, and affiliates, including, but not limited

to Autoliv, Inc., Autoliv ASP, Inc., Autoliv B.V. & Co. KG, Autoliv Safety Technology,

Inc., and Autoliv Japan Ltd. the predecessors, successors and assigns of any of the above;

and each and all of the present and former principals, partners, officers, directors,

supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors,

4

administrators, and assigns of the foregoing. "Releasees" does not include any other

Defendant in the Action other than Autoliv, Inc., Autoliv ASP, Inc., Autoliv B.V. & Co.

KG, Autoliv Safety Technology, Inc., and Autoliv Japan Ltd.

9. "Releasors" shall refer to all the Settlement Class Members, as defined in

Paragraph 12, below, and their past and present officers, directors, employees, agents,

stockholders, attorneys, servants, representatives, parents, subsidiaries, affiliates,

partners, insurers and all other persons, partnerships or corporations with whom any of

the former have been, or are now, affiliated, and the predecessors, successors, heirs,

executives, administrators and assigns of any of the foregoing.

10. For purposes of this Agreement, "Settlement Class" is defined as:

All persons and entities from January 1, 2003 through the Execution Date
who: (1) purchased or leased a new vehicle in the United States for
personal use and not for resale which included one or more Occupant
Safety Restraint System(s) as a component part, which were manufactured
or sold by a Defendant, any current or former parent, subsidiary, or
affiliate of a Defendant or any co-conspirator of the Defendants, or (2)
indirectly purchased one or more Occupant Safety Restraint System(s) as a
replacement part, which were manufactured or sold by a Defendant, any
current or former parent, subsidiary, or affiliate of a Defendant or any co-
conspirator of the Defendants. Excluded from the Settlement Class are
Defendants, their parent companies, subsidiaries and affiliates, any co-
conspirators, federal government entities and instrumentalities of the
federal government, states and their subdivisions, agencies and
instrumentalities, and all persons who purchased Occupant Safety
Restraint Systems for resale.

11. "Settlement Class Counsel" shall refer to the law firms of:

Cotchett, Pitre, & McCarthy LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010

Robins, Kaplan, Miller & Ciresi L.L.P.
601 Lexington Avenue, Suite 3400
New York, NY 10022

Susman Godfrey L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067

12. "Settlement Class Member" means each member of the Settlement Class who does not timely elect to be excluded from the Settlement Class.

13. "Settlement Fund" shall be $19 million United States Dollars as specified in Paragraph 22 plus accrued interest on the deposits set forth in Paragraph 23.

B. Approval of this Agreement and Dismissal of Claims Against Autoliv.

14. End-Payor Plaintiffs and Autoliv shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(e)) to secure the complete and final dismissal with prejudice of the Action as to the Releasees only.

15. End-Payor Plaintiffs, at a time to be decided in their sole discretion but not to exceed forty-five (45) days after the execution of this Agreement, shall submit to the Court a motion seeking preliminary approval of this Agreement (the "Motion"). The Motion shall include the proposed form of an order preliminarily approving this Agreement; which form shall be agreed upon by End-Payor Plaintiffs and Autoliv before submission of the Motion.

16. End-Payor Plaintiffs, at a time to be decided in their sole discretion but no later than the time they seek authorization to disseminate notice of any other settlement in the Action, shall submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Settlement Class members identified by End-Payor Plaintiffs (the "Notice Motion"). In order to mitigate

6

the costs of notice, the End-Payor Plaintiffs shall endeavor, to the fullest extent possible, to disseminate a combined notice to the Settlement Class of this settlement and any other settlements that have been or are, by the time of the Notice Motion, reached in the Action. The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice.

17. End-Payor Plaintiffs shall seek, and Autoliv will not object unreasonably to, the entry of an order and final judgment, the text of which End-Payor Plaintiffs and Autoliv shall agree upon. The terms of that order and final judgment will include, at a minimum, the substance of the following provisions:

(a) certifying the Settlement Class described in Paragraph 10, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class;

(b) as to the Action, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

(c) solely as to Autoliv, directing that the Action be dismissed with prejudice and, except as provided for in this Agreement, without costs;

(d) reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement as well as over Autoliv for the duration of its provision of Cooperation pursuant to this Agreement, to the United States District Court for the Eastern District of Michigan; and

(e) determining under Federal Rule of Civil Procedure 54(b) that there is

7

no just reason for delay and directing that the judgment of dismissal as to Autoliv shall be final.

18. This Agreement shall become final when (i) the Court has entered a final order certifying the Settlement Class described in Paragraph 10 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to Autoliv against all Settlement Class Members and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to Autoliv described in (i) hereof has expired and no motion or other pleading has been filed with the Court (or with any other court) seeking to set aside, enjoin, or in any way alter the judgment or final approval order or to toll the time for appeal of the judgment or, if appealed, approval of this Agreement and the final judgment as to Autoliv have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.  On the date that End-Payor Plaintiffs and Autoliv have executed this Agreement, End-Payor Plaintiffs and Autoliv shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraphs 23(h), 24(d) and 43 of this Agreement.

19. Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents and discussions associated with them, shall be deemed or construed to be an admission by Autoliv or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Autoliv or of the

8

truth of any of the claims or allegations contained in any complaint or any other pleading filed in the Action, and evidence thereof shall not be used directly or indirectly, in any way, whether in the Action or in any other action or proceeding against Autoliv. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by Autoliv shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law. Nothing in this Paragraph shall prevent End-Payor Plaintiffs from using cooperation materials produced pursuant to Paragraphs 30-42, against any other defendants in the Automotive Parts Antitrust Litigation, 12-md-02311.

C.  Release, Discharge, and Covenant Not to Sue.

20. In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in Paragraph 18 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 22 of this Agreement, into the Settlement Fund, and for other valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or in any way based on, the

conduct alleged in the Complaint, or any act or omission of the Releasees (or any of them) that is the subject of the Complaint solely concerning the sale or manufacture of Occupant Safety Restraint Systems, including, but not limited to, any conduct alleged, and causes of action asserted or that could have been alleged or asserted, in any class action complaints filed in the Action concerning Occupant Safety Restraint Systems (the "Released Claims"); provided, however, that nothing herein shall release:  (1) any claims made by direct purchasers of Occupant Safety Restraint Systems as to such direct purchases; (2) any claims made by automotive dealerships that are indirect purchasers of Occupant Safety Restraint Systems; (3) any claims made by any State, State agency, or instrumentality or political subdivision of a State, as to government purchases and/or penalties; (4) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to Occupant Safety Restraint Systems; (5) claims concerning any automotive part other than Occupant Safety Restraint Systems; (6) claims under laws other than those of the United States and the states thereof; and (7) claims for damages under the state or local laws of any jurisdiction other than an Indirect Purchaser State.  Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims unless the Agreement is, for any reason, not finally approved or terminated.

21. In addition to the provisions of Paragraph 20 of this Agreement, Releasors hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by §

1542 of the California Civil Code, which states:

> *CERTAIN CLAIMS NOT AFFECTED BY GENERAL*
> *RELEASE. A GENERAL RELEASE DOES NOT EXTEND*
> *TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW*
> *OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME*
> *OF EXECUTING THE RELEASE, WHICH IF KNOWN BY*
> *HIM MUST HAVE MATERIALLY AFFECTED HIS*
> *SETTLEMENT WITH THE DEBTOR;*

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 20 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that Autoliv and End-Payor Plaintiffs have agreed to release pursuant to the provisions of Paragraph 20 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

D.    Settlement Amount.

22. Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, Autoliv shall pay or cause to be paid the Settlement Amount of $19 million in United States Dollars (the "Settlement Amount"). The Settlement Amount shall be paid in United States Dollars into an escrow account to be administered in accordance with the provisions of Paragraph 23 of this Agreement (the "Escrow Account") within ten (10) days after execution of this Agreement.

E.    Escrow Account.

11

23. (a)    The Escrow Account will be established at U.S. Bank N.A. with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to Settlement Class Counsel and Autoliv, such escrow to be administered under the Court's continuing supervision and control.

(b)    The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively, by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.

(c)    All funds held in the Escrow Account shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement or further order(s) of the Court.

(d)    End-Payor Plaintiffs and Autoliv agree to treat the Settlement Fund as being at all times a Qualified Settlement Fund within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 23, including the relation-back election (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary

12

parties, and thereafter to cause the appropriate filing to occur.

      (e)    For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)(l)).  Such returns (as well as the election described in Paragraph 23(d)) shall be consistent with Paragraph 23(d) and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 23(f) hereof.

      (f)    All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Autoliv or any Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 23(d) through 23(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 23(f) ("Tax Expenses")), shall be paid out of the Settlement Fund.

      (g)    Neither Autoliv or any Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the

Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). Autoliv shall not be responsible or have any liability therefor.  End-Payor Plaintiffs and Autoliv agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 23(d) through 23(f).

(h)    If this Agreement does not receive final Court approval, including final approval of the Settlement Class as defined in Paragraph 10, or if the Action is not certified as a class action for settlement purposes, then all amounts paid by Autoliv into the Settlement Fund (other than costs paid or incurred in accordance with this Paragraph and Paragraph 25 below) shall be returned to Autoliv from the Escrow Account by the Escrow Agent along with any interest accrued thereon within thirty (30) calendar days of the Court's final determination.

F.    Exclusions.

24.  Subject to Court approval, any person or entity seeking exclusion from the Settlement Class must file a written request for exclusion by the Opt Out Deadline.  Any person or entity that files such a request shall be excluded from the Settlement Class and shall have no rights with respect to this settlement.  Subject to Court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable

class notice will be invalid, and the person(s) or entity(ies) serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by this Settlement Agreement upon final approval. Settlement Class Counsel shall, within ten (10) business days of the Opt Out Deadline, provide Autoliv with a list and copies of all opt out requests it receives and shall file under seal with the Court a list of all Settlement Class members who timely and validly opted out of the settlement.

(a) Subject to Court approval, any Settlement Class member who submits a valid and timely request for exclusion will not be a Settlement Class Member and shall not be bound by the terms of this Agreement. Autoliv reserves all of its legal rights and defenses, including but not limited to any defenses relating to whether any excluded Settlement Class member is an indirect purchaser of Occupant Safety Restraint Systems or has standing to bring any claim against Autoliv.

(b) Subject to Court approval, in the written request for exclusion, the Settlement Class Member must state his, her, or its full name, address, and telephone number. Further, the Settlement Class member must include a statement in the written request for exclusion that he, she, or it wishes to be excluded from the settlement.

(c) Autoliv or Settlement Class Counsel may dispute an exclusion request, and the parties shall, if possible, resolve the disputed exclusion request by agreement and shall inform the Court of their position, and, if necessary, obtain a ruling thereon within thirty (30) days of the Opt-Out Deadline.

(d) Within twenty (20) business days following the Opt-Out Deadline in accordance with the terms of this paragraph, or as soon thereafter as practicable, the parties shall determine the total number of persons and entities in the Indirect Purchaser

States from January 1, 2003 through the Execution Date that: (1) purchased or leased a new motor vehicle for personal use and not for resale that included an Occupant Safety Restraint System manufactured or sold by a Defendant or any current or former parent, subsidiary, or affiliate thereof or any alleged co-conspirator identified to counsel for Autoliv by Settlement Class Counsel, or (2) indirectly purchased an Occupant Safety Restraint System as a replacement part, which was manufactured or sold by a Defendant or any current or former parent, subsidiary, or affiliate thereof or any alleged co-conspirator identified to counsel for Autoliv by Settlement Class Counsel (defined as "Total Number of Damages Class Members" for purposes of calculating the Total Opt-Out Percentage defined below). The parties shall determine the Total Number of Damages Class Members based upon reasonably available public information. In the event the parties mutually agree that non-public information is required to determine the Total Number of Damages Class Members, the parties shall identify an appropriate source of, and Autoliv shall pay for, the reasonable costs incurred in securing the necessary information. Within ten (10) business days following the determination of the Total Number of Damages Class Members, the parties shall calculate the percentage of the Total Number of Damages Class Members that have validly and timely requested to be excluded from the Settlement Class ("Total Opt-Out Percentage"), provided that Autoliv shall have the sole option to waive the calculation and, by doing so, waive its termination rights under this paragraph. The Total Opt-Out Percentage is a fraction, the numerator of which is the Total Number of Damages Class Members that have validly and timely requested to be excluded from the Settlement Class, and the denominator of which is the Total Number of Damages Class Members. In the event the Total Opt-Out

16

Percentage exceeds the percentage set forth in a separate confidential side letter agreement, Autoliv has the option to rescind, cancel, and terminate this Settlement Agreement (excepting paragraphs 25 and 50 hereof; *provided, however*, that (i) these termination rights shall be exercised within five (5) business days of receipt of the Total Opt-Out Percentage calculation or be deemed waived and (ii) Autoliv shall have the burden of demonstrating that the Total Opt-Out Percentage has been met. If Autoliv elects to rescind, cancel, and/or terminate this Settlement Agreement in accordance with this paragraph, the Escrow Agent shall, within ten (10) business days of termination of the Settlement Agreement refund to Autoliv by wire transfer the portion of the Settlement Fund (including any and all income earned thereon) paid by Autoliv, less only any taxes paid or owed on the earnings of the Settlement Fund, any reasonable out-of-pocket costs, and any Notice Costs or other expenditures authorized by this Settlement Agreement that were paid out of the Settlement Fund prior to termination.

G.   Payment of Expenses.

25.     Autoliv agrees to permit use of a maximum of $ 500,000 of the Settlement Fund on an unrecoupable basis towards the cost of providing notice to the Settlement Class and the costs of administration of the Settlement Fund. The $500,000 in notice and administration expenses are not recoupable if this settlement does not become final or is terminated to the extent such expenses are paid or incurred for notice and administration costs. Other than as set forth in this Paragraph 25, Autoliv shall not be liable for any of the costs or expenses of the litigation incurred by End-Payor Plaintiffs in the Action, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings

17

before the Court or any Special Master, appeals, trials or the negotiation of other

settlements, or for Settlement Class administration costs.

H.    The Settlement Fund.

26.    Releasors shall look solely to the Settlement Fund for settlement and

satisfaction against the Releasees of all Released Claims, and shall have no other

recovery against Autoliv or any Releasee for any Released Claims.

27.    After this Agreement becomes final within the meaning of Paragraph 18, the

Settlement Fund shall be distributed in accordance with a plan to be submitted at a time

to be determined in the sole discretion of Settlement Class Counsel, subject to approval

by the Court.  In no event shall any Releasee have any responsibility, financial obligation,

or liability whatsoever with respect to the investment, distribution, or administration of

the Settlement Fund, including, but not limited to, the costs and expenses of such

distribution and administration, with the exception of the provisions set forth in

Paragraph 25 of this Agreement.

28.    End-Payor Plaintiffs and Settlement Class Counsel shall be reimbursed

subject to Court approval and indemnified solely out of the Settlement Fund for their

costs and expenses.  Autoliv and the Releasees shall not be liable for any costs, fees, or

expenses of any of End-Payor Plaintiffs' or the Settlement Class' respective attorneys,

experts, advisors, agents, or representatives, but all such costs, fees, and expenses as

approved by the Court shall be paid out of the Settlement Fund.

I.    Settlement Class Counsel's Attorneys' Fees, Reimbursement of Expenses, and
      Incentive Awards for Class Representatives.

29.    (a)    Settlement Class Counsel may, after preliminary approval of the

Agreement and notice to the class, at the time to be determined in their sole discretion,

18

submit an application to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the settlement fund, plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action and incentive awards, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). Settlement Class Counsel reserve the right to make additional applications from time to time for fees and expenses incurred and incentive awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)     Subject to Court approval and except as provided herein, End-Payor Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation expenses. Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement of any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of expenses is reduced or reversed, or in the event the Agreement is rescinded or terminated pursuant to Paragraphs 24(d) or 43.

(c)     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, and

19

incentive awards for End Payor Plaintiff Class representatives to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

(d)   Neither Autoliv nor any Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel of any Fee and Expense Award in the Action.

(e)   Neither Autoliv nor any Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

J.   Cooperation.

30.   In return for the release and discharge provided herein, in addition to the Settlement Amount it will pay, Autoliv agrees to provide substantial cooperation to End-Payor Plaintiffs as set forth below.  Certain aspects of Cooperation may be expanded or accelerated as set forth in a Confidential Side Letter.  All such cooperation shall occur in a manner that is in compliance with Autoliv's obligations to any Governmnet Entities (as defined below), to the extent that such compliance continues to be required.  In carrying out its cooperation obligations under Paragraphs 30 to 42, Autoliv will promptly provide to its customers any notices required under any applicable confidentiality agreements, will inform the customers that documents containing their confidential information will

be designated highly confidential – outside attorneys' and experts' eyes only under the applicable protective order and will, as necessary, afford customers the opportunity to have their objections, if any, considered by the Court on a schedule that does not impede Autoliv's cooperation.  On or before July 15, 2014, Counsel for Autoliv shall provide Settlement Class Counsel with the identity of all current and former employees of Autoliv who: (1) were interviewed and/or prosecuted by the United States Department of Justice ("DOJ"), the Japanese Fair Trade Commission, the European Commission, or any other government entity (collectively, referred to as "Government Entities") in connection with alleged violations with respect to Occupant Safety Restraint Systems; (2) appeared before the grand jury in the DOJ's investigation into alleged violations with respect to Occupant Safety Restraint Systems; and/or (3) were disclosed to a Government Entity as having knowledge or information relating to investigations into alleged violations with respect to Occupant Safety Restraint Systems.  Counsel for Autoliv shall not be required to disclose to Settlement Class Counsel the specific Government Entities to which each such current or former employee of Autoliv was identified or appeared before.

31.  Beginning on or before October 20, 2014, counsel for Autoliv will make themselves available in the United States for up to three (3) meetings of one (1) business day each to provide detailed proffers of the relevant facts known to them relating to End-Payor Plaintiffs' allegations of price-fixing, bid-rigging, and market allocation of Occupant Safety Restraint Systems ("Attorney Proffers").  As part of the Attorney Proffers, Autoliv's counsel will provide End-Payor Plaintiffs with relevant facts known to them regarding Documents, witnesses, meetings, communications, agreements with

competitors, events, background information and any other relevant topics, to the extent

not covered by privilege or other protections available under any applicable statute or

United States law, relating to the claims at issue in this Action, including any information

given to the DOJ and transactions for sale of Occupant Safety Restraint Systems inside

the United States or that involve sales of Occupant Safety Restraint Systems for

installation in vehicles known to be exported to the United States. Autoliv's counsel will

make themselves available for reasonable follow-up conversations in connection with the

Attorney Proffers, and will use reasonable efforts to respond to questions posed by

Settlement Class Counsel. It is understood that Autoliv has no obligation to seek new or

additional information or Documents from any of its employees, representatives, or

agents with respect to any follow-up conversations; however, Autoliv will in good faith

consider requests for new or additional information or Documents, and will produce such

information or Documents, if appropriate, in its discretion. End-Payor Plaintiffs and

Settlement Class Counsel agree that all Attorney Proffers made by Autoliv's counsel

shall be treated as "Highly Confidential," as said designation is described in the

Protective Order in this Action (Doc. 77) and that they shall not use the information so

received for any purpose other than the prosecution of claims in the Automotive Parts

Antitrust Litigation, 12-md-02311, except as otherwise provided in this Settlement

Agreement. Notwithstanding any other provision of this Agreement, the Parties and their

counsel further agree that any Attorney Proffers or other statements made by Autoliv's

counsel in connection with or as part of this settlement shall be governed by Federal Rule

of Evidence 408. Notwithstanding anything herein, Settlement Class Counsel may use

(but shall not cite, introduce an Attorney Proffer into the record, or depose or subpoena

22

any Autoliv counsel related to an Attorney Proffer) information contained in such Attorney Proffers or other statements in the prosecution of its claims in all cases in the Automotive Parts Antitrust Litigation, 12-md-02311, and rely on such information to certify that, to the best of Settlement Class Counsel's knowledge, information and belief, such information has evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

32.   Except as set forth therein, Autoliv will (i) produce all Documents that Autoliv produced to the DOJ in connection with its investigation of price-fixing, bid-rigging, and market allocation of Occupant Safety Restraint systems, including all English translations, to the extent they exist, by October 20, 2014; (ii) produce all English translations, to the extent they exist, of the Documents described in Paragraph 32 (a)-(f) on or before December 31, 2014; and (ii) substantially complete the production of the Documents in Autoliv's possession, custody or control, set forth in sub-paragraphs (a)-(f) on or before December 31, 2014.

(a)   Notwithstanding the deadlines above, Autoliv will produce on or before October 20, 2014 transactional data, to the extent it exists in Autoliv's electronic databases, concerning Autoliv's bids for and sales of Occupant Safety Restraint Systems to Original Equipment Manufacturers ("OEM") or other purchasers of Occupant Safety Restraint Systems from January 1, 2001 to two years from the Execution of this Agreement, including available transactional data containing any of the following information:  (1) the date for each bid, price submission or sale; (2) the price submitted in each bid or price submission; (3) bids and price submissions formulated but not submitted due to agreements or understandings with co-conspirators; (4) the final price of

23

each sale; (5) the purchaser to whom each bid or price submission was submitted and each sale was made; (6) the model, model year(s), and brand of car for which each bid or price submission was submitted and each sale was made, as well as the country of sale of said cars; (7) the total amount of products comprising Occupant Safety Restraint Systems sold in each sale; (8) the location where each bid or price submission was submitted and each sale was made; (9) the Autoliv entity that submitted each bid or price submission and made each sale; (10) the sale agreements and contracts for each sale; (11) value engineering and other price adjustments made to the products comprising Occupant Safety Restraint Systems sold in each sale, including through annual price reductions; (12) any ancillary costs associated with each sale such as tooling costs; (13) the identity of any other bids or prices submitted by competitors, including each winning bid; (14) the specifications for each bid or price submission; (15) adjustments made to each bid as it was being formulated; (16) Autoliv's profits, losses and margins on the products comprising Occupant Safety Restraint Systems and other reasonably available financial information, e.g., balance sheets and ledger data; (17) data showing Autoliv's costs to produce the products comprising Occupant Safety Restraint Systems; and (18) any other transactional data reasonably agreed to in writing between Autoliv's counsel and Settlement Class Counsel. Autoliv will provide any translations of the above Documents that may exist as of the Execution Date of this Agreement and within two years of the Execution Date. With respect to any electronic transactional data generated within the two years after the Execution Date of this Agreement, Autoliv shall have no on-going obligation to produce such data as it is generated. However, Autoliv will provide, in response to a written request from Settlement Class Counsel, a single production of

24

electronic transactional data generated during the two years after the Execution Date of this Agreement, as it exists in the normal course of business in Autoliv's electronic databases at the time of the request, within ninety (90) days of the receipt of such request. Autoliv will preserve such transactional data until two years after the Execution Date of this Agreement, as referred to in this Paragraph 32(a). Except as provided herein, Autoliv will only produce the data that exists as of the Execution Date. In addition, Autoliv will produce the same categories of transactional data for each sale to an OEM in which Autoliv Japan Ltd. engaged in anticompetitive conduct described in Autoliv's guilty plea to the United States Department of Justice on June 21, 2012. Autoliv will produce transactional data only from existing electronic transaction databases and will not be required to compile any data from individual invoices, individual personal computers, or transactional Documents, except that, to the extent Autoliv has not recorded or maintained electronic transaction data for any period between January 1, 2001 and two years after the Execution Date, then Autoliv will use reasonable efforts to produce records of those sales transactions not recorded or maintained electronically in the existing electronic sales transaction databases. Additionally, Autoliv will provide to End-Payor Plaintiffs any later-generated electronic transactional data that is provided to plaintiffs in any other case involving Occupant Safety Restraint Systems claims in the Automotive Parts Litigation, 12-md-02311. Furthermore, Autoliv shall only be obligated to provide transactional data regarding sales of Occupant Safety Restraint Systems sold to customers in the United States or sold to customers outside the United States for installation in vehicles known to be exported to the United States. Autoliv shall use reasonable efforts to determine its sales of Occupant Safety Restraint Systems sold to

customers outside the United States for installation in vehicles exported to the United States. End-Payor Plaintiffs and Settlement Class Counsel agree that all transactional data and any other Documents produced by Autoliv pursuant to this Paragraph 32(a) shall be treated as "Highly Confidential", as said designation is described in the Protective Order in this Action (Doc. 77); and that they shall not use the information so received for any purpose other than the prosecution of the claims in the Automotive Parts Antitrust Litigation, 12-md-02311, except as otherwise provided in this Settlement Agreement.

      (b)    Documents that relate to or concern the allegations in the Complaint or that relate to or concern an actual or potential communication, meeting, or agreement regarding Occupant Safety Restraint Systems, by an employee, officer or director of Autoliv with any employee, officer or director of another manufacturer or seller of Occupant Safety Restraint Systems.

      (c)    To the extent not already produced, Documents, if any, provided to or seized by Government Entities relating to their investigation into alleged competition violations with respect to Occupant Safety Restraint Systems, to the extent they have not already been produced to Settlement Class Counsel.

      (d)    Documents, if any, concerning Autoliv's determinations of its prices for products comprising the Occupant Safety Restraint Systems that it sells in the United States or for installation in vehicles that are known to be exported to the United States, including pricing policies, formulas and guidelines, including Documents concerning the relationship between prices charged or submitted to different OEMs or to the same OEM for different models.

      (e)    Documents, if any, concerning Occupant Safety Restraint Systems that

were collected and reviewed in connection with Autoliv's internal investigation but were not provided to or seized by Government Entities and that are relevant to the claims and allegations in the Complaint.

(f)     Documents, if any, showing how employees were trained or instructed to bid and set prices submitted to purchasers or potential purchasers, for products comprising Occupant Safety Restraint Systems, in RFQs, or any other procurement process, including Documents stating the lowest bid or price employees were authorized to submit, how to determine the lowest allowable bid or price, and when and how to increase or decrease a proposed bid or price.

33.  For all Documents withheld from production pursuant to (1) the attorney-client privilege; (2) the work-product doctrine; (3) a protective order; or (4) any other applicable privilege or doctrine protecting Documents from disclosure, Autoliv shall provide a privilege log, to the extent it already exists or comes into existence as a result of other litigation in the Action, describing such Documents in sufficient detail as to explain the nature of the privilege asserted or the basis of any other law or rule protecting such Documents.  No Document shall be withheld under claim of privilege if produced or made available to any Government Entities.  If any Document protected by the attorney-client privilege, attorney work-product doctrine, or any other privilege is accidentally or inadvertently produced under this paragraph, then, upon notice by Autoliv of such inadvertent production, the Document shall promptly be destroyed or returned to Autoliv, and its production shall in no way be construed to have waived any privilege or protection attached to such Document.

34.  In the event that Autoliv produces Documents or provides declarations or

written responses to discovery to any Government Entity, or party in any other actions in the Automotive Parts Antitrust Litigation, 12-md-02311, concerning or relating to this Action ("Relevant Production"), Autoliv shall produce all such Documents, declarations, or written discovery responses to End-Payor Plaintiffs contemporaneously with making the Relevant Production, to the extent such Documents, declarations, or written discovery responses have not previously been produced by Autoliv to End-Payor Plaintiffs. The production of relevant Documents shall include all English translations, to the extent they exist. Counsel for Autoliv shall not be required to disclose the specific Government Entities to which each such Document, declaration, or written responses to discovery was produced.

35. Upon reasonable notice after preliminary approval of the Settlement Agreement, Autoliv shall, at Settlement Class Counsel's request, make available for an interview with Settlement Class Counsel and/or Settlement Class Counsel's experts at a mutually agreed upon location in the United States, a total of up to ten (10) persons selected by Settlement Class Counsel. All interviews shall each be limited to a total of eight (8) hours over one day. To the extent that the person to be interviewed requests an interpreter, interviews shall be limited to a total of fourteen (14) hours, which would occur over two (2) consecutive days of seven (7) hours each day at the request of the interviewee. If applicable, Settlement Class Counsel may participate in the interviews of persons designated by counsel for class plaintiffs in any other case involving Occupant Safety Restraint Systems claims in Automotive Parts Litigation, 12-md-02311 should such interviews be scheduled, and at any such interviews, Settlement Class Counsel would have an additional three (3) hours of interview time beyond the time used by other

28

plaintiffs' counsel, or an additional five (5) hours if an interpreter is requested, which may result in the interview occurring over three (3) consecutive days at the request of the interviewee. Autoliv agrees to make available by telephone the persons who have been interviewed as set forth in this paragraph to answer follow-up questions at the request of Settlement Class Counsel for a period not to exceed two (2) hours per person. To the extent practicable, all such interviews shall be conducted on consecutive days jointly with the putative class plaintiffs in the matters captioned *In re Automotive Parts Antitrust Litigation / In re Occupant Safety Restraint Systems Cases,* Case No. 12-CV-006-01 ("Direct Purchaser Plaintiffs") and *In re Automotive Parts Antitrust Litigation / In re Occupant Safety Restraint Systems Cases,* Case No. 12-CV-006-02 ("Dealership Plaintiffs"). Notwithstanding anything to the contrary contained herein, the time limits for depositions and interviews set forth in this Settlement Agreement reflect the total amount of time that all settlement classes of Plaintiffs in the Action may depose or interview designated Autoliv employees, but those total times will not be reduced should a settlement with a given settlement class be terminated or not approved.

36. Upon reasonable notice after preliminary approval of the Settlement Agreement, Autoliv shall, at Settlement Class Counsel's request, use its best efforts to: (1) make available to appear for deposition a total of up to eight (8) persons who Settlement Class Counsel select from among the same persons who have been chosen for interviews pursuant to Paragraph 35 to provide affidavits from the same persons who have been chosen for interviews and/or depositions pursuant to Paragraphs 35 and 36. If Autoliv is unable to make those same persons available for deposition or affidavit, then Settlement Class Counsel may select a substitute deponent or declarant. Each deposition

shall, to the extent practicable, be conducted jointly by Settlement Class Counsel and counsel for Direct Purchaser Plaintiffs and Dealership Plaintiffs at a mutually agreed upon location in the United States and shall be limited to a total of twelve (12) hours, which would occur over two (2) consecutive days of six (6) hours each day at the request of the deponent. To the extent that the person to be deposed requests an interpreter, the deposition shall be limited to a total of eighteen (18) hours, which would occur over two (2) consecutive days of nine (9) hours each day at the request of the deponent. If applicable, Settlement Class Counsel may participate in the deposition of Autoliv employees noticed by counsel in any other case involving Occupant Safety Restraint Systems claims in Automotive Parts Litigation, 12-md-02311, should such depositions be noticed, and at any such depositions, Settlement Class Counsel would have an additional four (4) hours of deposition time beyond the time used by other counsel, or an additional six (6) hours if an interpreter is requested, which may result in the deposition occurring over three (3) consecutive days at the request of the deponent.

37.   Upon reasonable notice, Autoliv shall, at Settlement Class Counsel's request, use its best efforts to provide, for trial testimony, if necessary, up to four (4) persons from among the persons who have been interviewed or deposed pursuant to Paragraphs 35 and 36 who may be current or former employees, representatives, or agents of Autoliv whom Settlement Class Counsel, in consultation with counsel for Autoliv, reasonably and in good faith believe possess knowledge of facts or information that would assist in the prosecution of the Occupant Safety Restraint Systems claims in Automotive Parts Litigation, 12-md-02311.

38.   In addition to its cooperation obligations set forth herein, Autoliv agrees to

produce through affidavit(s) or declaration(s) and at trial, if necessary, in Settlement

Class Counsel's discretion, representatives qualified to authenticate and establish as

business records any of Autoliv's Documents and transactional and cost data produced or

to be produced, and to the extent possible, any Documents produced by other Defendants

or third-parties in this Action.  In addition, if not unduly burdensome, Autoliv agrees to

produce through affidavit(s), declaration(s), and at trial, if necessary, in Settlement Class

Counsel's discretion, representatives qualified to establish any other necessary foundation

for admission into evidence.

     39.  Autoliv's obligations to provide cooperation shall not be affected by the

Release set forth in this Agreement.  Unless this Agreement is rescinded, disapproved, or

otherwise fails to take effect, Autoliv's obligations to provide cooperation under this

Agreement shall continue only until otherwise ordered by the Court, or the date that final

judgment has been entered in the Action against the last Defendant.

     40.  In the event that this Agreement fails to receive final approval by the Court as

contemplated in Paragraphs 14-18 hereof, including final approval of the Settlement

Class, or in the event that it is terminated by either party under any provision herein, the

parties agree that neither End-Payor Plaintiffs nor Settlement Class Counsel shall be

permitted to introduce evidence against Autoliv, at any hearing or trial, or in support of

any motion, opposition or other pleading in the Action or in any other federal or state or

foreign action alleging a violation of any law relating to the subject matter of this Action,

any Attorney Proffers, deposition testimony or any Documents provided by Autoliv

and/or the Released Parties, their counsel, or any individual made available by Autoliv

pursuant to Cooperation (as opposed to from any other source or pursuant to a court

order). Notwithstanding anything contained herein, End-Payor Plaintiffs and the

Settlement Class are not relinquishing any rights to pursue discovery against Autoliv in

the event that this Agreement fails to receive final approval by the Court as contemplated

in Paragraphs 14-18 hereof, including final approval of the Settlement Class, or in the

event that it is terminated by either party under any provision herein.

41. Autoliv need not respond to formal discovery requests from End-Payor

Plaintiffs or otherwise participate in the Action during the pendency of the Agreement

with the exception of the cooperation set forth in Paragraphs 30-40 above. Other than to

enforce the terms of this Agreement, neither Autoliv nor End-Payor Plaintiffs shall file

motions against the other, in this Action, during the pendency of the Agreement. Autoliv

and End-Payor Plaintiffs shall jointly request the Court to enter an order withdrawing

Autoliv's Motion to Dismiss End-Payor Plaintiffs' Consolidated Amended Class Action

Complaint in the Action and reserving Autoliv's right to renew the Motion should the

settlement not receive final approval.

42. If Settlement Class Counsel believes that any current or former employee,

representative, or agent of Autoliv has refused to cooperate under the terms of this

Agreement, Settlement Class Counsel may seek an Order from the Court compelling such

current or former employee, representative, or agent of Autoliv to provide discovery.

K. Rescission if this Agreement is Not Approved or Final Judgment is Not Entered.

43. If the Court refuses to approve this Agreement or any part hereof, including if

the Court does not certify a settlement class in accordance with the specific settlement

class definition set forth in this Agreement, or if such approval is modified or set aside on

appeal, or if the Court does not enter the final judgment provided for in Paragraph 18 of

this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then Autoliv and End-Payor Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraphs 24(d) and 43. A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

44. In the event that this Agreement does not become final, or this Agreement otherwise is terminated pursuant to Paragraphs 24(d) or 43, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (including interest earned thereon) shall be returned forthwith by wire transfer to Autoliv pursuant to written wire transfer instructions provided by Autoliv's counsel, less only disbursements made in accordance with Paragraphs 25 of this Agreement. Autoliv expressly reserves all of their rights and defenses if this Agreement does not become final.

45. Further, and in any event, End-Payor Plaintiffs and Autoliv agree that this Agreement, whether or not it shall become final, and any and all negotiations, Documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Autoliv, or the Releasees, or of the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, or by any person or entity in any other action, and evidence thereof shall not be discoverable or

used directly or indirectly, in any way, whether in the Action or in any other action or proceeding to the fullest extent permitted by applicable law. Nothing in this Paragraph shall prevent End-Payor Plaintiffs from using cooperation materials produced pursuant to Paragraphs 30-42 against any other defendants in the Automotive Parts Litigation, 120md-02311, to establish any of the above.

46. This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement as well as cooperation by Autoliv.

47. The parties to this Agreement contemplate and agree that, prior to final approval of the settlement as provided for in Paragraphs 14-18 hereof, appropriate notice (1) of the settlement, and (2) of a hearing at which the Court will consider the approval of this Settlement Agreement will be given to the Settlement Class.

L.    Miscellaneous.

48. Autoliv shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

49. This Agreement does not settle or compromise any claim by End-Payor Plaintiffs or any Settlement Class Member asserted in the Complaint or, if amended, any subsequent Complaint, against any Defendant or alleged co-conspirator other than the Releasees. All rights against such other defendants or any other alleged co-conspirators are specifically reserved by End-Payor Plaintiffs and the Settlement Class. All rights of any Settlement Class Member against any and all former, current, or future defendants or alleged co-conspirators or any other person other than the Releasees, for sales made by

34

Autoliv and Autoliv's illegal conduct are specifically reserved by End-Payor Plaintiffs and Settlement Class Members. Autoliv's sales to the Settlement Class and its alleged illegal conduct shall, to the fullest extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future defendants in the Action and all other persons or entities other than the Releasees.

50. The Court shall retain continuing jurisdiction over the parties and the Settlement Fund for the purposes of the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by End-Payor Plaintiffs and Autoliv. This Agreement shall be governed by and interpreted according to the substantive laws of the State of Michigan without regard to its choice of law or conflict of laws principles.

51. This Agreement constitutes the entire, complete and integrated agreement among End-Payor Plaintiffs and Autoliv pertaining to the settlement of the Action against Autoliv, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations and discussions, either oral or written, between End-Payor Plaintiffs and Autoliv in connection herewith. This Agreement may not be modified or amended except in writing executed by End-Payor Plaintiffs and Autoliv, and approved by the Court. The Settlement Class Members and Settlement Class Counsel, or any of them, may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of this

settlement, but the subsequent discovery or existence of such different or additional facts shall have no bearing on the validity of this Settlement Agreement once executed and shall not serve as a basis for any Party to challenge or otherwise seek to rescind, terminate, or cancel the settlement.

52. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of End-Payor Plaintiffs and Autoliv. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by End-Payor Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than Autoliv entities which are parties hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

53. This Agreement may be executed in counterparts by End-Payor Plaintiffs and Autoliv, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

54. Neither End-Payor Plaintiffs nor Autoliv shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

55. Where this Agreement requires either party to provide notice or any other communication or Document to the other, such notice shall be in writing, and such notice, communication, or Document shall be provided by facsimile or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

56. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated:   May 30, 2014

*Steven Williams/WVR*

Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Elizabeth Tran
Joanna W. LiCalsi
**COTCHETT, PITRE & MCCARTHY, LLP**
San Francisco Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Hollis Salzman/WVR*

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN MILLER & CIRESI L.L.P.**
601 Lexington Avenue Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499

*Marc Seltzer/WVR*

Marc M. Seltzer
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY LLP**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214) 754-1933

*Interim Co-Lead Class Counsel and Settlement
Class Counsel*

Peter Kontio
**ALSTON & BIRD**
1201 W. Peachtree Street, Suite 4000
Atlanta, GA 30309-3424
404-881-7000
Fax: 404-253-9690

Joanne Geha Swanson
Fred K. Herrmann
Dwayne D. Stresman
**KERR, RUSSELL & WEBER PLC**
500 Woodward Avenue, Suite 2500
Detroit, MI 48226-3406
313-961-0200

*Counsel for Autoliv, Inc., Autoliv ASP, Inc.,
Autoliv B.V. & Co. KG, Autoliv Safety Technology,
Inc., and Autoliv Japan Ltd.*