# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | 12-md-02311 <br> Honorable Marianne O. Battani |
| **In Re: OCCUPANT SAFETY SYSTEMS CASES** | |
| **THIS RELATES TO:** <br> **ALL END-PAYOR ACTIONS** | 2:12-cv-00603 |

## ANSWER AND AFFIRMATIVE DEFENSES OF
## TAKATA CORPORATION AND TK HOLDINGS INC. TO
## END-PAYOR PLAINTIFFS' SECOND CONSOLIDATED
## <u>AMENDED CLASS ACTION COMPLAINT</u>

Defendants Takata Corporation and TK Holdings Inc. ("Takata"), through undersigned counsel, hereby submit their Answer to the claims asserted against Takata in Plaintiffs Kimberly Bennett, Rebecca Lynn Morrow, Erica J. Shoaf, Tom Halverson, Sophie O'Keefe-Zelman, Melissa Barron, Meetesh Shah, Elizabeth Kaufmann, Keith Uehara, Jennifer Chase, Darrel Senior, James E. Marean, Ron Blau, Roger D. Olson, Susan B. Olson, Nilsa Mercado, Darcy C. Sherman, David Bernstein, Thomas N. Wilson, Robert P. Klingler, Jessica DeCastro, Lori Curtis, Dori Gilels, Nathan Croom, Gregory Asken, Leonard Julian, Edward T. Muscara,

Michael Wick, Tenisha Burgos, Jason Grala, Kathleen A. Tawney, Kent Busek, Curtis Harr, Cindy Prince, Paul Gustafson, Frances H. Gammell-Roach, Andrew Hedlund, William Dale Picotte, Phillip G. Young, Rita Cornish, Alena Farrell, Jane FitzGerald, Arthur Stukey, Janne Rice, Robert M. Rice, Jr. , Stacey R. Nickell, and Carol Ann Kashishian, Halley Ascher, Whitney Porter, and Carroll Gibbs (collectively "Plaintiffs") Second Consolidated Amended Class Action Complaint dated November 21, 2014 ("complaint"), and assert Affirmative and Other Defenses.  By using the collective term "Takata," the two above-named defendants do not admit that they constitute a single entity for purposes of the allegations in the complaint.  Takata uses the term "Occupant Safety Restraint Systems" as defined in Paragraph 2 of the complaint solely for ease of reference; no agreement or waiver by such use is intended.  By using the term "Occupant Safety Systems," Takata does not admit that the diverse and distinct types of products that Plaintiffs refer to in their complaint may accurately be grouped together under the term "Occupant Safety Restraint Systems," and expressly denies the same.  Takata expressly denies that it engaged in the conspiracy or other wrongdoing pled in any of the averments contained in the complaint.  Takata expressly denies that this action is appropriate for class certification.  Takata denies all allegations contained in the complaint (including headings and the "Prayer for Relief") not specifically admitted below and denies that Plaintiffs are entitled to any relief in this action.

Takata answers the complaint as follows:

## ANSWER TO END-PAYOR SECOND CONSOLIDATED
## AMENDED CLASS ACTION COMPLAINT

1.      This lawsuit is brought as a proposed class action against Defendants Autoliv, Inc., Autoliv ASP, Inc., Autoliv B.V. & Co. KG (collectively, "Autoliv" or "Autoliv Defendants"), Takata Corp., TK Holdings, Inc., Tokai Rika Co., Ltd., TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. (collectively, "Tokai Rika" or "Tokai Rika Defendants"), TRW Deutschland Holding GmbH, TRW Automotive Holdings Corp. (collectively, "TRW" or "TRW Defendants"), Toyoda Gosei Co., Ltd., Toyoda Gosei North America Corp., TG Missouri Corp. (collectively, "Toyoda Gosei" or "Toyoda Gosei Defendants") (all as defined below, and collectively "Defendants"), and unnamed co-conspirators, manufacturers and/or suppliers of Occupant Safety Restraint Systems (defined below) globally and in the United States, for engaging in a long-running conspiracy to unlawfully fix, raise, maintain and/or stabilize prices, rig bids for and allocate the market and customers in the United States for Occupant Safety Restraint Systems (defined below). According to the United States Department of Justice ("DOJ"), Defendants' conspiracy successfully targeted the long-struggling United States automotive industry, raising prices for car manufacturers and consumers alike.

3

**ANSWER:** Paragraph 1 consists of Plaintiffs' characterization of their purported claims to which no response is required.  To the extent any response is required, Takata admits that it manufacturers various types of seat belts, airbags, steering wheels, and other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems," and denies the allegations in the first sentence of Paragraph 1 to the extent directed at Takata in all other respects. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 1 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 1 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

2.     "Occupant Safety Restraint Systems" are generally comprised of the parts in an automotive vehicle that protect drivers and passengers from bodily harm. Types of different Occupant Safety Restraint Systems include seat belts, airbags, steering wheels, and steering systems.

**ANSWER:** Takata admits that Plaintiffs purport to define the term "Occupant Safety Restraint Systems" as stated in Paragraph 2 and denies the allegations in Paragraph 2 in all other respects. Solely for ease of reference, in this Answer Takata will use the term "Occupant Safety Restraint Systems" as defined

in the complaint; no agreement or waiver by such use is intended.

**3.**     Plaintiffs seek to represent all persons and entities who, during the period from and including January 1, 2003 through such time as the anticompetitive effects of the Defendants' conduct ceased (the "Class Period") purchased or leased a new vehicle in the United States not for resale which included one or more Occupant Safety Restraint System(s) as a component part which were manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any-co-conspirator of the Defendants.

**ANSWER:** Paragraph 3 consists of Plaintiffs' characterization of their purported claims to which no response is required.  To the extent any response is required, Takata admits that Plaintiffs seek to represent a class and purport to define the term "Class Period" as stated in Paragraph 3.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 3 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 3 regarding purported class members.  Takata denies the allegations in Paragraph 3 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

5

4.      The Defendants manufacture, market, and/or sell Occupant Safety Restraint Systems throughout and into the United States. The Defendants, and their co-conspirators (as yet unknown), agreed, combined, and conspired to fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers in the United States for Occupant Safety Restraint Systems.

**ANSWER:** Takata admits that it manufactures, markets, and sells seat belts, airbags, steering wheels, and other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" in the United States and other countries. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 4 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 4 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

5.      The U.S. Department of Justice's ("DOJ") Antitrust Division is currently conducting a broad criminal investigation into illegal price-fixing and bid-rigging in the automotive parts industry. As part of its criminal investigation, the DOJ is seeking information about unlawful anticompetitive conduct in the market for a number of different but related automotive parts, and the Federal

Bureau of Investigation ("FBI") has participated in raids, pursuant to search warrants, carried out in the offices of a number of major competitors in the automotive parts industry. The automotive parts investigation is the largest criminal investigation the Antitrust Division has ever pursued, both in terms of its scope and its impact on American consumers and businesses. The ongoing cartel investigation of price-fixing and bid-rigging in the automotive parts industry has yielded more than $2.4 billion in criminal fines to date.

**ANSWER:** Takata admits that on February 8, 2011, the FBI raided the Auburn Hills, Michigan offices of TK Holdings Inc. Takata denies the allegations in Paragraph 5 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

6.     Defendant Autoliv, Inc. has agreed to plead guilty and pay a $14.5 million fine for its unlawful conduct in conspiring with others to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize and maintain the prices of, Occupant Safety Restraint Systems sold to certain automobile manufacturers in the United States and elsewhere at various times from at least as early as March 2006 and continuing until at least February 2011. The combination and conspiracy engaged in by Defendant Autoliv, Inc. and its co-conspirators was in unreasonable restraint of interstate and foreign

7

trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

**ANSWER:** The allegations in the second sentence of Paragraph 6 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata refers to the referenced document for its content and denies any characterization of it. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 6 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 6 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

7.     Defendant TRW Deutschland Holding GMBH has agreed to plead guilty and pay a $5.1 million fine for its unlawful conduct in conspiring with others to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize and maintain the prices of, Occupant Safety Restraint Systems sold to certain automobile manufacturers in the United States and elsewhere at various times from at least as early as January 2008 and continuing until at least June 2011. The combination and conspiracy engaged in by Defendant TRW Deutschland Holding GMBH and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of

the Sherman Antitrust Act, 15 U.S.C. § 1.

**ANSWER:** The allegations in the second sentence of Paragraph 7 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata refers to the referenced document for its content and denies any characterization of it. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 7 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 7 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

8. Defendant Takata Corp. has agreed to plead guilty and pay a $71.3 million fine for its unlawful conduct in conspiring with others to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize and maintain the prices of, Occupant Safety Restraint Systems sold to certain automobile manufacturers in the United States and elsewhere at various times from at least as early as January 1, 2003 and continuing until at least February 2011. The combination and conspiracy engaged in by Defendant Autoliv, Inc. and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

**ANSWER:** Takata admits that Takata Corporation pleaded guilty per a plea agreement, and refers to the referenced document for its content and denies any characterization of it, and denies the allegations in the first sentence of Paragraph 8 in all other respects. The allegations in the second sentence of Paragraph 8 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response to the second sentence of Paragraph 8 is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in the second sentence of Paragraph 8 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in the second sentence of Paragraph 8 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

9. Defendant Toyoda Gosei Co. Ltd. has agreed to plead guilty and pay a $26 million fine for its unlawful conduct in conspiring with others to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, rig bids for, and to fix, stabilize and maintain the prices of, among other products, Occupant Safety Restraint Systems sold to certain automobile manufacturers in the United States and elsewhere at various times from at least as early as September 2003 and continuing until at least September 2010. The

10

combination and conspiracy engaged in by Defendant Toyoda Gosei Co. Ltd. and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

**ANSWER:** The allegations in the second sentence of Paragraph 9 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations.  To the extent any response is required, Takata refers to the referenced document for its content and denies any characterization of it.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 9 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 9 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**10.**    The Defendants and their co-conspirators participated in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, rig bids for, and to fix, stabilize and maintain the prices of Occupant Safety Restraint Systems sold to vehicle manufacturers and others in the United States. The combination and conspiracy engaged in by the Defendants and their co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of

the Sherman Antitrust Act, 15 U.S.C. § 1, and state antitrust, unfair competition, consumer protection and unjust enrichment laws.

**ANSWER:** The allegations in Paragraph 10 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 10 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 10 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

11.    As a direct result of the anti-competitive and unlawful conduct alleged herein, Plaintiffs and the Classes paid artificially inflated prices for Occupant Safety Restraint Systems during the Class Period and have thereby suffered antitrust injury to their business or property.

**ANSWER:** Takata denies the allegations in Paragraph 11 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 11 regarding purported class members. Takata denies the allegations in Paragraph 11 for lack of knowledge or

information sufficient to form a belief as to their truth in all other respects.

**12.**    Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, consumer protection and unjust enrichment laws, and seek to obtain restitution, recover damages and secure other relief against the Defendants for violations of those state laws. Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

**ANSWER:** Paragraph 12 consists of Plaintiffs' characterizations of their purported claims, to which no response is required, and on that basis Takata denies these allegations.

**13.**    This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337. This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in

which some members of the proposed Classes are citizens of a state different from some of the Defendants.

**ANSWER:** The allegations in Paragraph 13 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations.

14.    Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

**ANSWER:** The allegations in Paragraph 14 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations.

15.    This Court has *in personam* jurisdiction over the Defendants because each, either directly or through the ownership and/or control of its subsidiaries, inter alia: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of Occupant Safety Restraint Systems throughout the United States, including in this District; (c) had

substantial aggregate contacts with the United States as a whole, including in this District; or (d) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. The Defendants also conduct business throughout the United States, including in this jurisdiction, and they have purposefully availed themselves of the laws of the United States.

**ANSWER:** The allegations in Paragraph 15 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 15 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 15 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**16.**   The Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United

States.

**ANSWER:** The allegations in Paragraph 16 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 16 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies that any alleged conduct involving trade or commerce with foreign nations had a direct, substantial or reasonably foreseeable effect upon interstate commerce within the United States. Takata denies the allegations in Paragraph 16 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

17.    The activities of the Defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States. The Defendants' products are sold in the flow of interstate commerce.

**ANSWER:** The allegations in Paragraph 17 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in

16

Paragraph 17 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 17 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

18.    Occupant Safety Restraint Systems manufactured abroad by the Defendants and sold for use in vehicles in the United States are goods brought into the United States for sale, and therefore constitute import commerce. To the extent any Occupant Safety Restraint Systems are purchased in the United States, and such Occupant Safety Restraint Systems do not constitute import commerce, the Defendants' activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury in the United States.

**ANSWER:**  The allegations in Paragraph 18 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 18 to the extent they are directed at Takata or intended to reference

actions taken by or on behalf of Takata.  Takata denies that Occupant Safety Restraint Systems manufactured abroad and sold for use in vehicles in the United States are import commerce.  Takata denies that any alleged conduct involving trade or commerce with foreign nations had a direct, substantial or reasonably foreseeable effect upon interstate commerce within the United States.  Takata denies the allegations in Paragraph 18 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

19.    By reason of the unlawful activities hereinafter alleged, the Defendants' unlawful activities substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes. The Defendants, directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers in the United States for Occupant Safety Restraint Systems, which conspiracy unreasonably restrained trade and adversely affected the market for Occupant Safety Restraint Systems.

**ANSWER:** The allegations in Paragraph 19 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems," Takata

denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 19 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 19 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

20. The Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased Occupant Safety Restraint Systems for personal use and not for resale, including Plaintiffs and the Classes.

**ANSWER:** The allegations in Paragraph 20 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 20 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 20 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

21. Plaintiff Rebecca Lynn Morrow is an Arizona resident who purchased

an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 21 for lack of knowledge or information sufficient to form a belief as to their truth.

22.    Plaintiff Erica J. Shoaf is an Arizona resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 22 for lack of knowledge or information sufficient to form a belief as to their truth.

23.    Plaintiff Tom Halverson is an Arizona resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 23 for lack of knowledge or information sufficient to form a belief as to their truth.

24.    Plaintiff Sophie O'Keefe-Zelman is an Arizona resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 24 for lack of knowledge or information sufficient to form a belief as to their truth.

**25.**     Plaintiff Kimberly Bennet is an Arkansas resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 25 for lack of knowledge or information sufficient to form a belief as to their truth.

**26.**     Plaintiff Melissa Barron is a California resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 26 for lack of knowledge or information sufficient to form a belief as to their truth.

**27.**     Plaintiff Meetesh Shah is a California resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 27 for lack of knowledge or information sufficient to form a belief as to their truth.

**28.**     Plaintiff Elizabeth Kaufmann is a Florida resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 28 for lack of knowledge or information sufficient to form a belief as to their truth.

**29.** Plaintiff Keith Uehara is a Hawaii resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 29 for lack of knowledge or information sufficient to form a belief as to their truth.

**30.** Plaintiff Jennifer Chase is an Iowa resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 30 for lack of knowledge or information sufficient to form a belief as to their truth.

**31.** Plaintiff Darrell Senior is a Kansas resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 31 for lack of knowledge or information sufficient to form a belief as to their truth.

**32.** Plaintiff James E. Marean is a Maine resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 32 for lack of knowledge or information sufficient to form a belief as to their truth.

**33.**　　Plaintiff Ron Blau is a Massachusetts resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 33 for lack of knowledge or information sufficient to form a belief as to their truth.

**34.**　　Plaintiffs Roger D. Olson is a Michigan resident who purchased Occupant Safety Restraint Systems indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 34 for lack of knowledge or information sufficient to form a belief as to their truth.

**35.**　　Susan B. Olson is a Michigan resident who purchased Occupant Safety Restraint Systems indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 35 for lack of knowledge or information sufficient to form a belief as to their truth.

**36.**　　Plaintiff Nilsa Mercado is a Michigan resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 36 for lack of knowledge or information sufficient to form a belief as to their truth.

**37.**   Plaintiff Darcy C. Sherman is a Minnesota resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 37 for lack of knowledge or information sufficient to form a belief as to their truth.

**38.**   Plaintiff David Bernstein is a Minnesota resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 38 for lack of knowledge or information sufficient to form a belief as to their truth.

**39.**   Plaintiff Thomas N. Wilson is a Mississippi resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 39 for lack of knowledge or information sufficient to form a belief as to their truth.

**40.**   Plaintiff Robert P. Klingler is a Missouri resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 40 for lack of knowledge or information sufficient to form a belief as to their truth.

**41.** Plaintiff Jessica DeCastro is a Missouri resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 41 for lack of knowledge or information sufficient to form a belief as to their truth.

**42.** Plaintiff Lori Curtis is a Missouri resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 42 for lack of knowledge or information sufficient to form a belief as to their truth.

**43.** Plaintiff Dori Gilels is a Montana resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 43 for lack of knowledge or information sufficient to form a belief as to their truth.

**44.** Plaintiff Nathan Croom is a Nebraska resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 44 for lack of knowledge or information sufficient to form a belief as to their truth.

**45.** Plaintiff Gregory Asken is a Nevada resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 45 for lack of knowledge or information sufficient to form a belief as to their truth.

**46.** Plaintiff Leonard Julian is a Nevada resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 46 for lack of knowledge or information sufficient to form a belief as to their truth.

**47.** Plaintiff Edward T. Muscara is a New Hampshire resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 47 for lack of knowledge or information sufficient to form a belief as to their truth.

**48.** Plaintiff Michael Wick is a New Mexico resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 48 for lack of knowledge or information sufficient to form a belief as to their truth.

26

**49.**    Plaintiff Tenisha Burgos is a New York resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 49 for lack of knowledge or information sufficient to form a belief as to their truth.

**50.**    Plaintiff Jason Grala is a New York resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 50 for lack of knowledge or information sufficient to form a belief as to their truth.

**51.**    Plaintiff Kathleen A. Tawney is a North Carolina resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 51 for lack of knowledge or information sufficient to form a belief as to their truth.

**52.**    Plaintiff Kent Busek is a North Dakota resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 52 for lack of

knowledge or information sufficient to form a belief as to their truth.

**53.**    Plaintiff Curtis Harr is a North Dakota resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 53 for lack of knowledge or information sufficient to form a belief as to their truth.

**54.**    Plaintiff Cindy Prince is an Oregon resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 54 for lack of knowledge or information sufficient to form a belief as to their truth.

**55.**    Plaintiff Paul Gustafson is an Oregon resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 55 for lack of knowledge or information sufficient to form a belief as to their truth.

**56.**    Plaintiff Frances H. Gammell-Roach is a Rhode Island resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 56 for lack of knowledge or information sufficient to form a belief as to their truth.

57.     Plaintiff Andrew Hedlund is a South Carolina resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 57 for lack of knowledge or information sufficient to form a belief as to their truth.

58.     Plaintiff William Dale Picotte is a South Dakota resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 58 for lack of knowledge or information sufficient to form a belief as to their truth.

59.     Plaintiff Phillip G. Young is a Tennessee resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 59 for lack of knowledge or information sufficient to form a belief as to their truth.

60.     Plaintiff Rita Cornish is a Utah resident who purchased an Occupant

29

Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 60 for lack of knowledge or information sufficient to form a belief as to their truth.

61.     Plaintiff Alena Farrell is a Vermont resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 61 for lack of knowledge or information sufficient to form a belief as to their truth.

62.     Plaintiff Jane FitzGerald is a Vermont resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 62 for lack of knowledge or information sufficient to form a belief as to their truth.

63.     Plaintiff Arthur Stukey is a Vermont resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 63 for lack of knowledge or information sufficient to form a belief as to their truth.

64.     Plaintiff Janne Rice is a West Virginia resident who purchased an

Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 64 for lack of knowledge or information sufficient to form a belief as to their truth.

65.     Plaintiff Robert M. Rice, Jr. is a West Virginia resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 65 for lack of knowledge or information sufficient to form a belief as to their truth.

66.     Plaintiff Stacey R. Nickell is a West Virginia resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 66 for lack of knowledge or information sufficient to form a belief as to their truth.

67.     Plaintiff Carol Ann Kashishian is a Wisconsin resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 67 for lack of knowledge or information sufficient to form a belief as to their truth.

**68.**   Plaintiff Halley Ascher is a resident of the District of Columbia who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 68 for lack of knowledge or information sufficient to form a belief as to their truth.

**69.**   Plaintiff Whitney Porter is a resident of the District of Columbia who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 69 for lack of knowledge or information sufficient to form a belief as to their truth.

**70.**   Plaintiff Caroll Gibbs is a resident of the District of Columbia who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

**ANSWER:** Takata denies the allegations in Paragraph 70 for lack of knowledge or information sufficient to form a belief as to their truth.

**71.**   Takata Corp. ("Takata") is a Japanese corporation with its principal place of business in Tokyo, Japan. Takata—directly and/or through its subsidiaries,

which it wholly owned and/or controlled—manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.

**ANSWER:** Takata admits that Takata Corporation is a Japanese corporation with its principal place of business located in Tokyo, Japan and denies the allegations in Paragraph 71 in all other respects.

72.    TK Holdings, Inc. ("TK"), is a Delaware corporation with its principal place of business in Auburn Hills, Michigan. It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Takata. TK manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent.

**ANSWER:** Takata admits that TK Holdings Inc. is a Delaware corporation with its principal place of business located in Auburn Hills, Michigan, that it is a subsidiary of its ultimate parent Takata Corporation, and that it sold seat belts, airbags, steering wheels, and other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" that were purchased in the United States during the alleged Class Period.  Takata denies the allegations in Paragraph 72 in

all other respects.

**73.**   Autoliv, Inc. is a Delaware corporation with its principal place of business in Stockholm, Sweden. Autoliv, Inc.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 73 for lack of knowledge or information sufficient to form a belief as to their truth.

**74.**   Autoliv ASP, Inc. is an Indiana corporation with its principal place of business in Ogden, Utah. It is a subsidiary of and wholly owned and/or controlled by its Swedish parent, Autoliv, Inc. Autoliv ASP, Inc. manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its Swedish parent.

**ANSWER:** Takata denies the allegations in Paragraph 74 for lack of knowledge or information sufficient to form a belief as to their truth.

34

75.     Autoliv B.V. & Co. KG is a German corporation with its principal place of business in Elmshorn, Germany. It is a subsidiary of and wholly owned and/or controlled by its Swedish parent, Autoliv, Inc. Autoliv B.V. & Co. KG manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period. At all times during the Class Period, its activities in the United States were under the control and direction of its Swedish parent.

**ANSWER:** Takata denies the allegations in Paragraph 75 for lack of knowledge or information sufficient to form a belief as to their truth.


76.     Tokai Rika Co., Ltd. is a Japanese corporation with its principal place of business in Aichi, Japan. Tokai Rika Co., Ltd.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 76 for lack of knowledge or information sufficient to form a belief as to their truth.


77.     TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. is a Michigan corporation with its principal place of business in Plymouth, Michigan. It is a subsidiary of and

wholly owned and/or controlled by its Japanese parent, Tokai Rika Co., Ltd. TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent.

**ANSWER:** Takata denies the allegations in Paragraph 77 for lack of knowledge or information sufficient to form a belief as to their truth.

78. TRW Deutschland Holding GMBH ("TRW GMBH") is a German corporation with is principal place of business in Koblenz, Germany. TRW GMBH—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 78 for lack of knowledge or information sufficient to form a belief as to their truth.

79. TRW Automotive Holdings Corp. ("TRW") is a Delaware corporation with its principal place of business in Livonia, Michigan. TRW—directly and/or

through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 79 for lack of knowledge or information sufficient to form a belief as to their truth.

80.    Toyoda Gosei Co., Ltd. ("Toyota Gosei") is a Japanese corporation with its principal place of business in Aichi, Japan. Toyoda Gosei—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 80 for lack of knowledge or information sufficient to form a belief as to their truth.

81.    Toyoda Gosei North America Corp. is a Michigan corporation with its principal place of business in Troy, Michigan. It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Toyoda Gosei. Toyoda Gosei North America Corp. manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period. At all times during the Class Period, its

activities in the United States were under the control and direction of its Japanese parent.

**ANSWER:** Takata denies the allegations in Paragraph 81 for lack of knowledge or information sufficient to form a belief as to their truth.

82.     TG Missouri Corp. is a Missouri corporation with its principal place of business in Perryville, Missouri. It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Toyoda Gosei. TG Missouri Corp. manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent.

**ANSWER:** Takata denies the allegations in Paragraph 82 for lack of knowledge or information sufficient to form a belief as to their truth.

83.     Each Defendant acted as the principal of or agent for the other Defendant with respect to the acts, violations, and common course of conduct alleged.

**ANSWER:** The allegations in Paragraph 83 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations.

To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 83 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 83 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

84.    Various persons, partnerships, sole proprietors, firms, corporations and individuals not named as defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with the Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

**ANSWER:** The allegations in Paragraph 84 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 84 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 84 for lack of knowledge or information sufficient to form a belief as to their truth

in all other respects.

**85.**    Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

**ANSWER:** Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 85 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 85 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**86.**    Occupant Safety Restraint Systems are generally comprised of the parts in an automotive vehicle that protect drivers and passengers from bodily harm. Occupant Safety Restraint Systems include seat belts, air bags, steering wheels (or steering systems), and safety electronic systems.

**ANSWER:** Takata admits that seat belts, airbags, steering wheels, and other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint

Systems" are automotive parts with specific functions, some of which relate to occupant safety, and denies the allegations in Paragraph 86 in all other respects.

87.     Occupant Safety Restraint Systems are installed by vehicle original equipment manufacturers ("OEMs") in new cars as part of the automotive manufacturing process. They are also installed in cars to replace worn out, defective or damaged Occupant Safety Restraint Systems.

**ANSWER:** Takata admits that seat belts, air bags, steering wheels, and other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" are installed by automobile original equipment manufacturers ("OEMs") in new cars as part of the automotive manufacturing process and may be later replaced, and denies the allegations in Paragraph 87 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

88.     For new cars, OEMs – mostly large automotive manufacturers – purchase Occupant Safety Restraint Systems directly from the Defendants.

**ANSWER:** Takata admits that some OEMs purchase directly from Takata certain products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" for certain cars.  Takata denies the allegations in Paragraph 88 for lack of knowledge or information sufficient to form a belief as to their truth in

41

all other respects.

**89.** When purchasing Occupant Safety Restraint Systems, OEMs issue Requests for Quotation ("RFQs") to automotive parts suppliers. Automotive parts suppliers submit quotations, or bids, to OEMs in response to RFQs, and the OEMs usually award the business to the selected automotive parts supplier for four to six years. Typically, the bidding process begins approximately three years prior to the start of production of a new model. Japanese OEMs procure parts for U.S.-manufactured vehicles both in Japan and the United States.

**ANSWER:** Takata admits that, from time to time, some automobile manufacturers use requests for quotations to procure certain products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" in the United States for certain US-manufactured motor vehicles. Takata admits that OEMs often issue RFQs for some products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" several years in advance of vehicle production. Takata denies that OEMs procure products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" in Japan for US-manufactured vehicles. Takata denies the allegations in Paragraph 89 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**90.** The Defendants and their co-conspirators supplied Occupant Safety Restraint Systems to OEMs for installation in vehicles manufactured and sold in the United States and elsewhere. The Defendants and their co-conspirators manufactured Occupant Safety Restraint Systems (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) in Japan and elsewhere for export to the United States and installation in vehicles manufactured and sold in the United States, and (c) in Japan and elsewhere for installation in vehicles manufactured in Japan and elsewhere for export to and sale in the United States.

**ANSWER:** Takata admits that Takata Corporation manufactured certain seat belts, airbags, steering wheels, and/or other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" abroad for installation in certain vehicles manufactured abroad for export to and sale in the United States. Takata admits that TK Holdings Inc. manufactured certain seat belts, airbags, steering wheels, and/or other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" for certain motor vehicles (a) in the United States for installation in certain vehicles manufactured and sold in the United States, (b) abroad for export to the United States and installation in certain vehicles manufactured and sold in the United States, and (c) abroad for installation in

43

certain vehicles manufactured abroad for export to and sale in the United States. Takata denies the remaining allegations in Paragraph 90 for lack of knowledge or information sufficient to form a belief as to their truth.

91.     Plaintiffs and members of the proposed Classes purchased Occupant Safety Restraint Systems indirectly from one or more of the Defendants. By way of example, an owner or lessee of a vehicle may indirectly purchase an Occupant Safety Restraint Systems from the Defendants as part of purchasing or leasing the new vehicle.

**ANSWER:** Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 91 regarding purported class members.  Takata denies the allegations in Paragraph 91 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

92.     According to Autoliv's 2011 Annual Report, the global market for Occupant Safety Restraint Systems in 2010 was $18.1 billion and the North American market for Occupant Safety Restraint Systems was $4.2 billion.

**ANSWER:** Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems."  Takata refers to the referenced

document for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 92 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

93.    The global Occupant Safety Restraint Systems market is dominated and controlled by large manufacturers, the top three of which are Defendants who control almost 75% of the market. The Autoliv Defendants account for more than 33% of the global market for Occupant Safety Restraint Systems; as Autoliv states in its 2011 Annual Report, it is "the world's largest automotive safety supplier with sales to all the leading car manufacturers in the world." TRW accounts for approximately 20% of the global market for Occupant Safety Restraint Systems. And the Takata Defendants account for approximately 20% of the Occupant Safety Restraint Systems global market.

**ANSWER:** Takata denies that there is a legally meaningful or cognizable "Occupant Safety Restraint Systems market."  Takata refers to the referenced document Paragraph 93 for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 93 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

94.    By virtue of their market shares, Defendants are the dominant

manufacturers and suppliers of Occupant Safety Restraint Systems in the United States and the world.

**ANSWER:** Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems." Takata denies the allegations in Paragraph 94 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**95.** Airbags are a type of Occupant Safety Restraint System. Airbags are occupant restraints designed to control the movement of an occupant inside a vehicle in the event of a collision. An Airbag consists of a light fabric air bag, an inflator, which through use of pressurized gas (typically generated by pyrotechnic materials), rapidly inflates the Airbag upon deployment, and an initiator to initiate the deployment. It may also include, depending on the requirements of the vehicle manufacturer, an injection molded plastic decorative cover or other devices associated with the Airbag. According to the National Highway Traffic Safety Administration, a typical new Airbag retailed for approximately $1,000 from a car dealer in 2011.

**ANSWER:** Takata admits air bags are encompassed in Plaintiffs' term "Occupant Safety Restraint Systems." Takata admits that airbags are designed to soften the impact of collisions by keeping passengers from contacting the steering

46

wheel, dashboard, front glass, and other parts of the automobile.  Takata admits that an airbag typically consists of fabric, an inflator, which rapidly inflates the airbag upon deployment, and an initiator to start the deployment.  Takata admits that certain airbags may also include an injection molded plastic cover or other devices associated with the airbag.  Takata refers to the referenced document for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 95 in all other respects.

96.     In 2012, the total dollar-value of Airbags sold in the U.S. reached $6.7 billion.

**ANSWER:** Takata denies the allegations in Paragraph 96 for lack of knowledge or information sufficient to form a belief as to their truth.

97.     According to Autoliv's website, it manufactures more than one-third of the Airbags sold in North America and according to its 2011 10-K, Autoliv manufactures over 40% of the side Airbags and almost 30% of the frontal Airbags sold in the world. TRW, Takata, and Toyoda Gosei are also major manufacturers of Airbags.

**ANSWER:** Takata admits it manufactures airbags.  Takata refers to the referenced document for its content and denies any characterization of it.  Takata

denies the allegations in Paragraph 97 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

98.    Seatbelts are another type of Occupant Safety Restraint System. Seatbelts are safety strap restraints designed to secure an occupant in position in a vehicle in the event of a collision. A Seatbelt includes belt webbing, a buckle, a retractor, and hardware for installation in a vehicle. It may also include, depending on the requirements of the vehicle manufacturer, a height adjuster, a pretensioner, or other devices associated with the Seatbelt.

**ANSWER:** Takata admits seat belts are encompassed in Plaintiffs' term "Occupant Safety Restraint Systems."  Takata admits that seat belts are designed to secure a person in a motor vehicle in order to mitigate the results of any accident. Takata admits that a seat belt typically includes belt webbing, a buckle, and a retractor.  Takata admits that a seat belt may also include a height adjuster, pretensioner, or other devices associated with the seat belt.  Takata denies the allegations in Paragraph 98 in all other respects.

99.    In 2012, the total dollar-value of Seatbelts sold in the U.S. reached over $900 million.

**ANSWER:** Takata denies the allegations in Paragraph 99 for lack of

48

knowledge or information sufficient to form a belief as to their truth.

**100.**   According to Autoliv's website, it manufactures almost one-third of the Seatbelts sold North America, and according to its 2011 10-K, Autoliv manufactures 40% of the Seatbelts sold in the world. TRW and Takata are also major manufacturers of Seatbelts.

**ANSWER:** Takata admits it manufactures steering wheels.  Takata refers to the referenced documents for their content and denies any characterization of them. Takata denies the allegations in Paragraph 100 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**101.**   Steering Wheels are another type of Occupant Safety Restraint System.  Steering Wheels consist of a die-cast armature (frame) covered by molded polyurethane. Steering Wheels are then finished with leather, wood trim, or plastic, and may include various electronic features and controls, depending on the requirements of a vehicle manufacturer.

**ANSWER:** Takata admits steering wheels are encompassed in Plaintiffs' term "Occupant Safety Restraint Systems."  Takata admits that some steering wheels may consist of a die-cast armature (frame) covered by molded polyurethane and finished with leather, wood trim, or plastic.  Takata admits that steering wheels

may also include various electronic features and controls. Takata denies the allegations in Paragraph 101 in all other respects.

**102.**   In 2012, the dollar-value for Steering Wheels and related components sold in the U.S. reached $2.24 billion.

**ANSWER:** Takata denies the allegations in Paragraph 102 for lack of knowledge or information sufficient to form a belief as to their truth.

**103.**   According to its website, Autoliv manufactures more than 15% of the Steering Wheels sold in North America, and in its 2011 10-K, Autoliv states that it manufactures almost 30% of the Steering Wheels sold in the world. TRW, Takata, and Toyoda Gosei are also major manufacturers of Steering Wheels.

**ANSWER:** Takata admits it manufactures steering wheels.  Takata refers to the referenced documents for their content and denies any characterization of them. Takata denies the allegations in Paragraph 103 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**104.**   Characteristics of the Occupant Safety Restraint Systems market in the United States are conducive to a price-fixing and market allocation agreement, and have made collusion particularly attractive in this market. Specifically, the

Occupant Safety Restraint Systems market (1) has barriers to entry; (2) has inelasticity of demand; (3) is highly concentrated; and (4) is rife with opportunities to conspire.

**ANSWER:** Takata denies that there is a legally meaningful or cognizable "Occupant Safety Restraint Systems market," denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint, and denies the allegations in Paragraph 104 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 104 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**105.** A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supra-competitive pricing. Where, however, there are significant barriers to entry, new entrants are less likely to enter the market. Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

**ANSWER:** Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 105 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 105 for lack of knowledge or

51

information sufficient to form a belief as to their truth in all other respects.

**106.** There are substantial barriers that preclude, reduce, or make more difficult entry into the Occupant Safety Restraint Systems market. A new entrant into the business would face costly and lengthy start-up costs, including multimillion dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long-standing customer relationships.

**ANSWER:** Takata denies that there is a legally meaningful or cognizable "Occupant Safety Restraint Systems market." Takata denies the allegations in Paragraph 106 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**107.** Research and development is necessary for product innovation as players in this industry compete primarily based on product pricing. Airbags are constantly researched for better deployment speeds, Seatbelts are constantly researched for better functionality and quality, and Steering Wheels are constantly researched for better precision and rotation. In order to effectively compete, an entrant must be committed to spending a significant amount of resources on research and development.

**ANSWER:** Takata denies the allegations in Paragraph 107 for lack of knowledge or information sufficient to form a belief as to their truth.

**108.** Defendants also own several patents for Occupant Safety Restraint Systems. For example, TRW owns Airbag, Steering Wheel and Seatbelt patents. These patents place a significant and costly burden on potential new entrants, who must avoid infringing on the patents when entering the market with a new product.

**ANSWER:** Takata admits that it owns patents for products that may be encompassed in Plaintiffs' definition of Occupant Safety Restraint Systems. Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems."  Takata denies the allegations in Paragraph 108 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**109.**  In addition, OEMs cannot change Occupant Safety Restraint Systems suppliers randomly after they choose one because the OEMs design the features of their vehicles so that the Occupant Safety Restraint Systems it purchases for a vehicle are then integrated with the electronics and mechanics of the particular vehicle model. Thus, Occupant Safety Restraint Systems manufacturers and OEMs must agree on a design that is unique to a particular vehicle model. It would be

difficult for a new market entrant to do so.

**ANSWER:** Takata denies that there is a legally meaningful or cognizable market for Occupant Safety Restraint Systems.  Takata denies the allegations in Paragraph 109 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**110.**  "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any. In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.

**ANSWER:** Takata denies the allegations in Paragraph 110 for lack of knowledge or information sufficient to form a belief as to their truth.

**111.**  For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices. Otherwise, increased prices would result in declining sales, revenues and profits, as customers purchased substitute products or declined to buy altogether. Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices

without triggering customer substitution and lost sales revenue.

**ANSWER:** Takata denies the allegations in Paragraph 111 for lack of knowledge or information sufficient to form a belief as to their truth.

**112.** Demand for Occupant Safety Restraint Systems is highly inelastic. Demand for Occupant Safety Restraint Systems is inelastic because there are no close substitutes for these products. In addition, customers must purchase Occupant Safety Restraint Systems as an essential part of a vehicle, even if the prices are kept at a supra-competitive level.

**ANSWER:** Takata denies the allegations in Paragraph 112 for lack of knowledge or information sufficient to form a belief as to their truth.

**113.** A highly concentrated market is more susceptible to collusion and other anticompetitive practices. There is a high level of concentration among firms in the Occupant Safety Restraint Systems market.

**ANSWER:** Takata denies that there is a legally meaningful or cognizable "Occupant Safety Restraint Systems market."   Takata denies the allegations in Paragraph 113 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**114.**   As discussed above, Defendants dominate the Occupant Safety Restraint Systems market. Three of the Defendants control almost 75% of the global market.

**ANSWER:** Takata denies that there is a legally meaningful or cognizable "Occupant Safety Restraint Systems market."   Takata denies the allegations in Paragraph 114 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**115.**   Defendants attended industry events where they had the opportunity to meet, have improper discussions under the guise of legitimate business contacts, and perform acts necessary for the operation and furtherance of the conspiracy. In a June 6, 2012 press release, the DOJ explained that Defendant Autoliv and its coconspirators met in secret and agreed to allocate the supply of various automotive parts. According to the Autoliv information, Autoliv and its co-conspirators participated in meetings, conversations and communications to discuss and agree on the bids and price quotations to be submitted to certain automobile manufacturers for Occupant Safety Restraint Systems, and agreed, during meetings, conversations and communications, to allocate the supply of Occupant Safety Restraint Systems sold to certain automobile manufacturers on a model-bymodel basis.

56

**ANSWER:** Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 115 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata refers to the referenced document for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 115 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**116.**   A globally coordinated antitrust investigation is taking place in the United States, Europe, Canada and Japan, aimed at suppliers of automotive parts in general, and Occupant Safety Restraint Systems in particular. A Japanese Fair Trade Commission ("JFTC") official told a leading legal publication that the international automotive parts investigation would continue to widen because the automotive industry as a whole comprises many sub-industries. He characterized the investigation being conducted by international antitrust authorities as "large and broad," and he declined to deny that this "would be history's largest case."

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 116 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**117.** The probe originated in Europe as the result of several European OEMs coming together to bring a complaint to the European Commission ("EC"). The EC and the FBI have executed surprise raids at the European and U.S. offices of several auto parts manufacturers, including certain Defendants, as part of an investigation into anticompetitive conduct related to the manufacturing and sale of automotive parts.

**ANSWER:** Takata admits that on February 8, 2011, the FBI raided the Auburn Hills, Michigan offices of TK Holdings Inc.  Takata denies the remaining allegations in Paragraph 117 to the extent they are directed at Takata.  Takata denies the allegations in Paragraph 117 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.


**118.** On February 8, 2010, the EC executed surprise raids at the European offices of certain automotive parts makers The DOJ has confirmed that its auto parts investigation is the largest criminal investigation that the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the illegal conduct. The DOJ has levied more than $3.4 billion in criminal fines have already been levied against various automotive parts manufacturers.

**ANSWER:** Takata denies the allegations in Paragraph 118 for lack of knowledge or information sufficient to form a belief as to their truth.

**119.** Defendants Autoliv, TRW, and Takata have admitted that they are cooperating with the antitrust investigators. Autoliv, Inc. stated in its 2011 Annual Report that its subsidiary, Autoliv ASP, Inc., received a grand jury subpoena from the Antitrust Division of the United States Department of Justice on February 8, 2011. "The subpoena requested documents and information as part of a longrunning investigation into possible anticompetitive behavior among certain suppliers to the automotive vehicle industry, including Autoliv." Autoliv, Inc.'s 2011 Annual Report also stated that, on June 7-9, 2011, representatives of the EC visited two facilities of Autoliv B.V. & Co. KG to gather information for a similar inquiry.

**ANSWER:** Takata admits that Takata Corporation pleaded guilty per a plea agreement.  Takata refers to the referenced documents for their content and denies any characterization of them.  Takata denies the allegations in Paragraph 119 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**120.** TRW stated in its 2011 Annual Report that "in June 2011, European

antitrust authorities visited certain of our Occupant Safety Systems business unit locations in Germany to gather information. We also received a subpoena related to the Antitrust Investigations in the United States from the U.S. Department of Justice."

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 120 in all other respects.

**121.** On February 23, 2010, investigators from the FBI raided the Plymouth, Michigan offices of Tokai Rika as part of a federal antitrust investigation. Special Agent Sandra Berchtold stated that the affidavits containing facts supporting issuance of the search warrants were filed in federal court under seal.

**ANSWER:** Takata denies the allegations in Paragraph 121 for lack of knowledge or information sufficient to form a belief as to their truth.

**122.** Takata Corp. stated in its 2011 Annual Report that TK Holdings, Inc., a U.S. subsidiary, "became the subject to an investigation conducted by the Federal Bureau of Investigation on February 8, 2011. TK Holdings, Inc. is cooperating fully with the investigation." Alby Berman, vice-president of marketing and public

relations for TK Holdings, Inc., said the subpoena "targeted safety system suppliers – seat belts, air bags, steering wheels and safety electronics – any communications with competitors, and specifically mentioned Tokai Rika" and that the subpoena targeted communications dating back to January 1, 2005. Special Agent Sandra Berchtold, media coordinator for the FBI, confirmed that the FBI raided TK Holdings, Inc.'s Auburn offices.

**ANSWER:** Takata admits that on February 8, 2011, the FBI raided the Auburn Hills, Michigan offices of TK Holdings Inc. Takata refers to the referenced documents in the first and second sentences of Paragraph 122 for their content and denies any characterization of them. Takata admits that Alby Berman is TK Holdings Inc.'s vice president of marketing and public relations. Takata refers to the referenced document in the third sentence of Paragraph 122 for its content and denies any characterization of it. Takata denies the allegations in the fourth sentence of Paragraph 122 for lack of knowledge or information sufficient to form a belief as to their truth. Takata denies the allegations in Paragraph 122 in all other respects.


**123.** To obtain the search warrant to raid TK Holdings, Inc., the FBI was legally required to have probable cause, accepted by a magistrate, to believe that it would obtain evidence of an antitrust violation as a result of executing the search

warrant – that is, the United States had to have evidence sufficient to warrant a person of reasonable caution to believe that raiding the offices of a seemingly lawful business would uncover evidence of antitrust violations and that claimed evidence must have been examined and accepted by a magistrate. That belief, which was recounted in sworn affidavits or testimony, must be grounded on reasonably trustworthy information.

**ANSWER:** The allegations in Paragraph 123 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies the allegations in Paragraph 123 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

124. On June 6, 2012, the DOJ announced that Defendant Autoliv agreed to pay a $14.5 million criminal fine and plead guilty to a two-count criminal Information charging it with participating in: (i) a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of certain seatbelts sold to one Japanese automobile manufacturer in the United States and elsewhere from at least as early as May 2008 continuing until at least February 2011 in violation of the Sherman Act, 15 U.S.C. § 1 ; and (2) a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of certain seatbelts, airbags, and steering wheels sold to a

second Japanese automobile manufacturer in the United States and elsewhere from at least as early as March 2006 and continuing until at least February 2011 in violation of the Sherman Act, 15 U.S.C. § 1. According to the Information filed, Defendant Autoliv, Inc. and its co-conspirators carried out the Occupant Safety Restraint Systems conspiracy by:

(a) participating in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to automobile manufacturers for Occupant Safety Restraint Systems;

(b) agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to automobile manufacturers for Occupant Safety Restraint Systems;

(c) agreeing, during those meetings, conversations, and communications, to allocate the supply of Occupant Safety Restraint Systems sold to automobile manufacturers on a model-by-model basis;

(d) submitting bids and price quotations to automobile manufacturers in accordance with the agreements reached;

(e) selling Occupant Safety Restraint Systems to automobile manufacturers at collusive and noncompetitive prices; and

(f) accepting payment for Occupant Safety Restraint Systems sold to automobile manufacturers at collusive and noncompetitive prices.

**ANSWER:** Takata refers to the referenced documents for their content and denies any characterization of them, and denies the allegations in Paragraph 124 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

125. In addition to Autoliv, Takayoshi Matsunaga, the former Vice President of the Toyota Global Business Unit at Autoliv Japan, pleaded guilty to a one count Criminal Information charging him with participating in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of certain seat belts sold to Toyota in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1. In connection with his guilty, plea, Matusnaga was criminally fined $20,000 and sentence to serve one year and one day in a U.S. prison.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 125 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

126. On July 30, 2012, the DOJ announced that Defendant TRW Deutsch Holding GmbH agreed to pay a $5.1 million criminal fine and plead guilty to a

one-count criminal Information charging it with participating in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of seatbelts, airbags, and steering wheels sold to two German automobile manufacturers in the United States and elsewhere from at least as early as January 2008 and continuing until at least June 2011 in violation of the Sherman Act, 15 U.S.C. § 1. According to the Information filed, Defendant TRW Deutsch Holding GmbH and its co-conspirators carried out the Occupant Safety Restraint Systems conspiracy by:

(a) participating in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to two German Automobile manufacturers for Occupant Safety Restraint Systems;

(b) agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to two German automobile manufacturers for Occupant Safety Restraint Systems;

(c) agreeing, during those meetings, conversations, and communications, to allocate the supply of Occupant Safety Restraint Systems sold to two German automobile manufacturers on a model-by-model basis;

(d) submitting bids and price quotations to two German automobile manufacturers in accordance with the agreements reached;

(e) selling Occupant Safety Restraint Systems to two German automobile manufacturers at collusive and noncompetitive prices; and

(f) accepting payment for Occupant Safety Restraint Systems sold to two German automobile manufacturers at collusive and noncompetitive prices.

**ANSWER:** Takata refers to the referenced documents for their content and denies any characterization of them, and denies the allegations in Paragraph 126 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**127.** On October 9, 2013, Defendant Takata Corporation announced that it agreed to pay a $71.3 million criminal fine and plead guilty to a one-count criminal Information charging it with participating in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of certain seatbelts sold to automobile manufacturers, including, Toyota, Honda, Nissan, Fuji Heavy Industries, Ltd. (Subaru), and Mazda, in the United States and elsewhere from at least as early as January 1, 2003 and continuing until at least February 2011 in violation of the Sherman Act, 15 U.S.C. § 1. According to the Information filed, Defendant Takata Corporation and its co-conspirators carried out the Occupant Safety Restraint Systems conspiracy by:

(a) participating in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to certain automobile manufacturers for Occupant Safety Restraint Systems;

(b) agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to certain automobile manufacturers for Occupant Safety Restraint Systems;

(c) agreeing, during those meetings, conversations, and communications, to allocate the supply of Occupant Safety Restraint Systems sold to certain automobile manufacturers on a model-by-model basis;

(d) submitting bids and price quotations to certain automobile manufacturers in accordance with the agreements reached;

(e) selling Occupant Safety Restraint Systems to certain automobile manufacturers at collusive and noncompetitive prices; and

(f) accepting payment for Occupant Safety Restraint Systems sold to certain automobile manufacturers at collusive and noncompetitive prices.

**ANSWER:** Takata admits that Takata Corporation pleaded guilty per a plea agreement, and refers to the referenced documents for their content and denies any characterization of them, and denies the allegations in Paragraph 127 in all other respects.

**128.** On November 21, 2013, the DOJ announced that three high-level Takata executives, Yasuhiko Ueno, Saburo Imamiya, and, Yoshinobu Fujino pleaded guilty to three separate one-count criminal Informations charging them

with participating in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of seatbelts sold to Toyota, Honda, Nissan, Fuji Heavy Industries, Ltd. (Subaru), and Mazda in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1. In connection with their guilty pleas, the Takata executives were criminally fined $20,000 each and sentenced to serve between 14 and 19 months in U.S. prison. Ueno's criminal Information notes that was employed by Defendant TK Holdings Inc., in the United States as senior vice president for sales for Japanese manufacturers from at least January 2006 through December 2007.

**ANSWER:** Takata admits that Takata Corporation and/or TK Holdings Inc. has employed Yasuhiko Ueno, Saburo Imamiya, and Yoshinobu Fujino.  Takata admits that Mr. Ueno, Mr. Imamiya, and Mr. Fujino pleaded guilty pursuant to plea agreements and refers to the referenced documents for their content and denies any characterization of them.  Takata admits that Mr. Ueno was employed by TK Holdings Inc. as Senior Vice President of Sales for the Transplant Sales Department from at least January 2006 through December 2007.  Takata denies the allegations in Paragraph 128 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

68

**129.**   A fourth Takata executive, Gary Walker – employed by Defendant TK Holdings, Inc. – pleaded guilty to a one-count criminal Information charging him with participating in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of certain seatbelts sold to Toyota, Honda, Nissan, Fuji Heavy Industries (Subaru) and Mazda in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1. In connection with his guilty plea, Walker was criminally fined $20,000 and sentenced to serve 14 months in a U.S. prison.

**ANSWER:** Takata admits that Gary Walker was employed by TK Holdings Inc.  Takata admits that Mr. Walker pleaded guilty pursuant to a plea agreement and refers to that document for its content and denies any characterization of it. Takata denies the allegations in Paragraph 129 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**130.**   A fifth Takata executive, Gikou Nakajima, was indicted on June 5, 2014 for his participation in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of seatbelts sold to Honda, Nissan, Fuji Heavy Industries (Subaru) and Mazda in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1.

**ANSWER:** Takata admits that a former Takata Corporation executive, Gikou Nakajima, was indicted on June 5, 2014 and refers to the indictment for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 130 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**131.**    On September 29, 2014, the DOJ announced that Defendant Toyoda Gosei Co., Ltd. agreed to pay a $26 million criminal fine and plead guilty to a two-count criminal Information charging it with participating in conspiracies to: (1) allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of certain automotive hoses sold to Toyota in the United States and elsewhere from at least as early as February 2004 and continuing until at least September 2010 in violation of the Sherman Act, 15 U.S.C. § 1; and (2) allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of, automotive airbags and steering wheels sold to Subaru and Toyota in the United States and elsewhere from at least as early as September 2003 and continuing until at least September 2010 in violation of the Sherman Act, 15 U.S.C. §[1]

**ANSWER:** Takata refers to the referenced document for its content and

---

[1] The paragraphs in Plaintiffs' complaint are numbered incorrectly beginning at Paragraph 131. Takata renumbered the paragraphs in its answer according to the order of their appearance in Plaintiffs' complaint.

denies any characterization of it, and denies the allegations in Paragraph 131 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

132.   According to the Information filed, Defendant Toyoda Gosei Co., Ltd. and its co-conspirators carried out the Occupant Safety Restraint Systems conspiracy by:

(a) participating in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to Subaru and Toyota for Occupant Safety Restraint Systems;

(b) agreeing, during those meetings, conversations, and communications, to allocate among the companies certain sales of certain Occupant Safety Restraint Systems sold to Subaru and Toyota;

(c) agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to Subaru and Toyota;

(d) exchanging information on bids and price quotations to be submitted to Subaru and Toyota;

(e) submitting bids and price quotations to Subaru and Toyota in accordance with the agreements;

(f) selling Occupant Safety Restraint Systems to Subaru and Toyota at collusive

and noncompetitive prices; and

(g) accepting payment for Occupant Safety Restraint Systems sold to Subaru and Toyota at collusive and noncompetitive prices.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 132 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**133.** The Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA") provides leniency benefits for a participant in a price-fixing conspiracy that voluntarily discloses its conduct to the Department of Justice. In most recent cases in which guilty pleas for price-fixing conduct have been obtained, there has been a cooperating party that has been accepted into the DOJ's ACPERA program as an "amnesty applicant." One of the leniency benefits for a conspirator that is accepted into the ACPERA program is that it is not charged with a criminal offense and is not required to plead guilty to criminal charges.

**ANSWER:** Takata refers to the referenced statute for its content and denies any characterization of it, and denies the allegations in Paragraph 133 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**134.**   In light of the multiple guilty pleas in this case, in related automotive parts antitrust cases and the DOJ's ongoing investigation into the industry, it is reasonable for this Court to infer that there is an ACPERA "amnesty applicant" in this case.

**ANSWER:** Takata denies the allegations in Paragraph 134 for lack of knowledge or information sufficient to form a belief as to their truth.

**135.**   On September 29, 2011, the DOJ announced that Furukawa Electric Co. Ltd. had agreed to plead guilty and to pay a $200 million criminal fine for its role in a criminal price-fixing and bid rigging conspiracy involving the sale of automotive wire harnesses and related products to automobile manufacturers.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 135 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**136.**   In the press release announcing the fine against Furukawa Electric Co. Ltd., Sharis A Pozen, then the Acting Assistant Attorney General in charge of the DOJ's Antitrust division, said that "[a]s a result of this international price-fixing

and bid-rigging conspiracy, automobile manufacturers paid noncompetitive and higher prices for parts in cars sold to U.S. consumers." Ms. Pozen also stated that "[t]his cartel harmed an important industry in our nation's economy, and the Antitrust Division with the Federal Bureau of Investigation will continue to work together to ensure that these kinds of conspiracies are stopped." The press release also quoted FBI's Special Agent in Charge Andrew G. Arena, who said that "[w]hen companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system," and that "[t]he FBI is committed to aggressively pursuing any company involved in antitrust crimes."

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 136 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

137. On January 30, 2012, the DOJ announced that Yazaki Corporation, as stated above, had agreed to plead guilty and to pay a $470 million criminal fine and DENSO Corporation had agreed to plead guilty and to pay a $78 million criminal fine for their respective involvement in multiple price-fixing and bidrigging conspiracies in the sale of automotive parts to automobile manufacturers in the United States. According to the two-count felony charge

against DENSO Corporation, it engaged in conspiracies to rig bids for and to fix, stabilize and maintain the prices of electronic control units and heater control panels.

**ANSWER:** Takata refers to the referenced documents for their content and denies any characterization of them, and denies the allegations in Paragraph 137 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

138.   Also on January 30, 2012, four executives from Yazaki Corporation (all Japanese nationals) – Tsuneaki Hanamura, Ryoji Kuwai, Shigeru Ogawa, and Hisamitsu Takada – agreed to plead guilty to their participation in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of automotive wire harnesses sold to certain automobile manufacturers in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1. These four executives of Yazaki Corporation will serve prison time ranging from 15 months to two years. The two-year sentences would be the longest term of imprisonment imposed on a foreign national voluntarily submitting to U.S. jurisdiction for a Sherman Act antitrust violation.

**ANSWER:** Takata refers to the referenced documents for their content and

denies any characterization of them, and denies the allegations in Paragraph 138 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

139.    In the press release announcing the fines against Yazaki Corporation, its executives, and DENSO Corporation, Ms. Pozen vowed to continue the investigation into "pernicious cartel conduct that results in higher prices to American consumers . . . ." In the same press release, Special Agent in Charge Andrew G. Arena said that "[t]his criminal activity has as significant impact on the automotive manufacturers in the United States, Canada, Japan and Europe and has been occurring for at least a decade. The conduct has also affected commerce on a global scale in almost every market where automobiles are manufactured and/or sold[.]"

ANSWER: Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 139 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

140.   Ms. Pozen said there is no doubt consumers were hurt financially by the automotive wire harness price-fixing conspiracy. She stated: "By rigging bids

on wiring harnesses . . . the three companies inflated what some of their auto manufacturer clients paid, and indirectly, what consumers paid for some cars."

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 140 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**141.** On April 3, 2012, the DOJ announced that G.S. Electech Inc. had agreed to plead guilty and to pay a $2.75 million criminal fine for its role in a conspiracy to fix the prices of speed sensor wire assemblies used on antilock brake systems installed in United States automobiles.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 141 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**142.** On April 23, 2012, the DOJ announced that Fujikura Ltd. had agreed to plead guilty and to pay a $220 million criminal fine for its role in a conspiracy to fix prices of automotive wire harnesses and related products installed in United States automobiles.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 142 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

143. On June 6, 2012, the DOJ announced that Defendant Autoliv Inc. agreed to plead guilty and to pay a $14.5 million criminal fine for its involvement in the conspiracy alleged herein.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 143 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

144. On July 30, 2012, the DOJ announced that Defendant TRW Deutschland Holding GmbH agreed to plead guilty and to pay a $5.1 criminal fine for its involvement in the conspiracy alleged herein.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 144 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**145.** On October 30, 2012, the DOJ announced that Defendant Tokai Rika Co. Ltd. agreed to plead guilty and to pay a $17.7 million criminal fine for its role in a conspiracy to fix prices of heater control panels installed in automobiles sold in the United States and elsewhere. Tokai Rika also agreed to plead guilty to a charge of obstruction of justice related to the investigation of the antitrust violation.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 145 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**146.** On February 15, 2013, Scott Hammond, the deputy Assistant Attorney General in the Antitrust Division, discussed the DOJ's ongoing automotive parts investigation in a Thomas Reuters article. He said "[t]he investigation is broader than what we've announced so far . . . . [The investigation] is still very much ongoing, but it already appears to be the biggest criminal antitrust investigation that we've ever encountered. I say the biggest with respect to the impact on U.S. businesses and consumers, and the number of companies and executives that are subject to the investigation." (emphasis added).

**ANSWER:** Takata refers to the referenced document for its content and

79

denies any characterization of it. Takata denies the allegations in Paragraph 146 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

147. On July 16, 2013, the DOJ announced that Diamond Electric Mfg. Co. Ltd. had agreed to plead guilty and to pay a $19 million criminal fine for its role in a conspiracy to fix prices of ignition coils installed in automobiles sold in the United States and elsewhere.

ANSWER: Takata refers to the referenced document for its content and denies any characterization of it. Takata denies the allegations in Paragraph 147 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

148. In the press release announcing the fine against Diamond Electric Mfg. Co. Ltd., Robert D. Foley III, Agent in Charge, FBI Detroit Division said "[t]hose who engage in price fixing, bid rigging and other fraudulent schemes harm the automotive industry by driving up costs for vehicle makers and buyers."

ANSWER: Takata refers to the referenced document for its content and denies any characterization of it. Takata denies the allegations in Paragraph 148 for lack of knowledge or information sufficient to form a belief as to their truth in

all other respects.

149.   On July 18, 2013, Panasonic Corporation agreed to plead guilty and to pay a $45.8 million criminal fine for its role in a conspiracy to fix prices of various automotive parts including HID ballasts, switches and steering angle sensors installed in automobiles sold in the United States and elsewhere.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 149 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

150.   On September 26, 2013, nine additional Japanese automotive suppliers agreed to plead guilty to conspiracy charges and pay more than $740 million in criminal fines for their roles in rigging the prices of more than 30 different products:

(a) Hitachi Automotive Systems Ltd. agreed to plead guilty and to pay a $195 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of automotive parts including starter motors, alternators, air flow meters, valve timing control devices, fuel injection systems, electronic throttle bodies, ignition coils, inverters and motor generators sold to

automobile manufacturers in the United States and elsewhere;

(b) Mitsuba Corporation agreed to plead guilty and to pay a $135 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of certain automotive parts sold to automobile manufacturers in the United States and elsewhere. Mitsuba also agreed to plead guilty to one count of obstruction of justice because of the company's efforts to destroy evidence ordered by a high-level U.S.-based executive after learning of the U.S. investigation of collusion in the automotive parts industry;

(c) Mitsubishi Electric Corporation agreed to plead guilty and to pay a $190 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of certain automotive parts sold to automobile manufacturers in the United States and elsewhere;

(d) Mitsubishi Heavy Industries Ltd. agreed to plead guilty and to pay a $14.5 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of compressors and condensers sol to automobile manufacturers in the United States and elsewhere;

(e) T.RAD Co. Ltd. agreed to plead guilty and to pay a $13.75 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of radiators and automatic transmission fluid warmers (ATF warmers) sold to automobile manufacturers in the United States and elsewhere;

(f) Valeo Japan Co. Ltd. agreed to plead guilty and to pay a $13.6 million criminal fine for its participation in a conspiracy to allocate the supply of, rig bids for, and to fix, stabilize and maintain the prices of air conditioning systems sold to automobile manufacturers in the United States and elsewhere;

(g) JTEKT Corporation agreed to plead guilty and to pay a $103.27 million criminal fine for its participation in a conspiracy to allocate markets, to rig bids for, and to fix, stabilize and maintain the prices of bearings and electric powered steering assemblies sold to automobile manufacturers in the United States and elsewhere;

(h) NSK Ltd. agreed to plead guilty and to pay a $68.2 million criminal fine for its participation in a conspiracy to allocate markets, to rig bids for, and to fix, stabilize and maintain the prices of bearings sold to an automobile manufacturer in the United States and elsewhere; and

(i) Yamashita Rubber Co. Ltd. agreed to plead guilty and to pay $11 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, raise and maintain the prices of automotive anti-vibration rubber products sold in the United States and elsewhere to automobile manufacturers.

**ANSWER:** Takata refers to the referenced documents for their content and denies any characterization of them, and denies the allegations in Paragraph 150 for lack of knowledge or information sufficient to form a belief as to their truth in

all other respects.

**151.** On the same day, September 26, 2013, United States Attorney General Eric Holder in the Antitrust Division presented the DOJ's most recent findings in the ongoing automotive parts investigation. He stated "[t]hese international price-fixing conspiracies affected more than $5 billion in automobile parts sold to U.S. car manufacturers. In total, more than 25 million cars purchased by American consumers were affected by the illegal conduct." Holder also described how the conspiracies worked: "[c]ompany executives met face to face in the United States and Japan – and talked on the phone – to reach collusive agreements to rig bids, fix prices and allocate the supply of auto parts sold to U.S. car companies. In order to keep their illegal conduct secret, they used code names and met in remote locations. Then they followed up with each other regularly to make sure the collusive agreements were being adhered to." Attorney General Holder explained that the automotive parts conspiracies "targeted U.S. manufacturing, U.S. businesses and U.S. consumers. As a result of these conspiracies, Americans paid more for their cars."

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it. Takata denies the allegations in Paragraph 151 for lack of knowledge or information sufficient to form a belief as to their truth in

all other respects.

**152.**   The diagram below, which was prepared by the DOJ, illustrates the September 26, 2013 guilty pleas and the corresponding automotive parts to which the various manufacturers have admitted price-fixing.

**ANSWER:** Takata admits Plaintiffs purport to illustrate the September 26, 2013 guilty pleas through the diagram referenced in Paragraph 152.  Takata denies the allegations in Paragraph 152 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**153.**   On October 9, 2013, Defendant Takata Corporation announced that it had agreed to plead guilty and pay a $71.3 million criminal fine for its participation in the conspiracy alleged herein.

**ANSWER:** Takata admits that Takata Corporation pleaded guilty per a plea agreement, and refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 153 in all other respects.

**154.**   On November 26, 2013, the DOJ announced that Toyo Tire & Rubber co. Ltd. had agreed to plead guilty and to pay a $120 million criminal fine for its

role in two separate conspiracies to fix the prices of automotive components involving anti-vibration rubber and driveshaft parts installed in automobiles in the United States and elsewhere.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it. Takata denies the allegations in Paragraph 154 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**155.** On November 27, 2013, the DOJ announced that Stanley Electric Co. Ltd. had agreed to plead guilty and to pay a $1.44 million criminal fine for its participation in a conspiracy to fix prices of automotive high-intensity discharge (HID) lamp ballasts installed in automobiles sold in the United States and elsewhere.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it. Takata denies the allegations in Paragraph 155 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**156.** On January 16, 2014, the DOJ announced that Koito Manufacturing Co., Ltd. had agreed to plead guilty and to pay a $56.6 million criminal fine for its

86

role in price-fixing conspiracies involving HID ballasts and automobile lighting fixtures installed in cars sold in the United States and elsewhere.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it. Takata denies the allegations in Paragraph 156 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

157. On February 3, 2014, the DOJ announced that Aisan Industry Co. Ltd. had agreed to plead guilty and to pay a $6.86 million criminal fine for its role in a price-fixing conspiracy involving electronic throttle bodies sold to an automobile manufacturer in the United States and elsewhere.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it. Takata denies the allegations in Paragraph 157 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

158. On February 13, 2014, the DOJ announced that Bridgestone Corp. had agreed to plead guilty and to pay a $425 million criminal fine for its role in a conspiracy to fix prices of automotive anti-vibration rubber parts installed in automobiles sold in the United States and elsewhere.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it. Takata denies the allegations in Paragraph 158 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

159. On April 23, 2014, the DOJ announced that Showa Corp. agreed to plead guilty and to pay a $19.9 million criminal fine for its role in a conspiracy to fix prices and rig bids for pinion-assist type electric powered steering assemblies installed in cars sold in the United States and elsewhere.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it. Takata denies the allegations in Paragraph 159 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

160. On August 19, 2014, the DOJ announced that NGK Sparkplug Co. Ltd. agreed to plead guilty and to pay a $52.1 million criminal fine for its role in a conspiracy to fix prices and rig bids for spark plugs, standard oxygen sensors, and air fuel ratio sensors installed in cars sold to automobile manufacturers in the United States and elsewhere.

**ANSWER:** Takata refers to the referenced document for its content and

denies any characterization of it.  Takata denies the allegations in Paragraph 160 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

161.   On September 29, 2014, the DOJ announced that Defendant Toyoda Gosei Co. Ltd. agreed to plead guilty and to pay a $26 million criminal fine for its involvement in the conspiracy alleged herein as well as its involvement in a conspiracy to fix and rig bids for automotive hoses installed in cars sold to automobile manufacturers in the United States and elsewhere.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 161 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

162.   On October 31, 2014, the DOJ announced that Hitachi Metals Ltd. agreed to plead guilty and to pay a $1.25 million criminal fine for its role in a conspiracy to fix prices and rig bids for automotive brake hose installed in cars sold in the United States and elsewhere.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 162

for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**163.** On November 13, 2014, the DOJ announced that Aisin Seiki Co. Ltd. agreed to plead guilty and to pay a $35.8 million criminal fine for its role in a conspiracy to allocate customers of variable valve timing devices installed in cars sold to automobile manufacturers in the United States and elsewhere.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 163 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**164.** To date, thirty-one companies pleaded guilty or agreed to plead guilty and forty-six executives have been charged in the Antitrust Division's ongoing investigation into price-fixing and bid-rigging in the automotive parts industry. Each of the twenty-nine companies has agreed to plead guilty and altogether, they have agreed to pay more than $2.4 billion in criminal fines.

**ANSWER:** Takata denies the allegations in Paragraph 164 for lack of knowledge or information sufficient to form a belief as to their truth.

**165.** "This criminal activity has a significant impact on the automotive manufacturers in the United States, Canada, Japan and Europe and has been occurring at least a decade. The conduct had also affected commerce on a global scale in almost every market where automobiles are manufactured and/or sold," said FBI's Special Agent in Charge Andrew G. Arena. "When companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system," Arena also said. "The FBI is committed to aggressively pursuing any company involved in antitrust crimes."

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 165 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**166.** Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"): All persons and entities who, during the Class Period, purchased or leased a new vehicle in the United States not for resale which included one or more Occupant Safety Restraint System(s) as a component part which were manufactured or sold by a Defendant, any current or former subsidiary of a

Defendant or any co-conspirators of the Defendants.

**ANSWER:** The allegations in Paragraph 166 call for a legal conclusion and characterize Plaintiffs' purported claims and the putative "Nationwide Class," to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata admits that Paragraph 166 purports to state Plaintiffs' definition of the "Nationwide Class," but denies the remaining allegations in Paragraph 166, denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 166 regarding purported class members.

167.    Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the state antitrust, unfair competition, consumer protection laws, and the common law of unjust enrichment on behalf of the following class (the "Damages Class"): All persons and entities who, during the Class Period, purchased or leased a new vehicle in the Indirect Purchaser States1 not for resale which included one or more Occupant Safety Restraint System(s) as a component part which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant or any co-conspirator of the Defendants.

**ANSWER:** The allegations in Paragraph 167 call for a legal conclusion and

characterize Plaintiffs' purported claims and the putative "Damages Class," to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata admits that Paragraph 167 purports to state Plaintiffs' definition of the "Damages Class," but denies the remaining allegations in Paragraph 167, denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 167 regarding purported class members.

**168.** The Nationwide Class and the Damages Class are referred to herein as the "Classes." Excluded from the Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Occupant Safety Restraint Systems directly or for resale.

**ANSWER:** Takata admits that the allegations contained in Paragraph 168 purport to state Plaintiffs' definition of the "Classes" and description of persons excluded from Plaintiffs' purported class definitions, denies that any class properly may be certified, and denies the allegations in Paragraph 168 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**169.**   While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are (at least) thousands of members in each Class.

**ANSWER:**   Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 169 regarding purported class members.  Takata denies the allegations in Paragraph 169 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**170.**   Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

(a) Whether the Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Occupant Safety Restraint Systems sold in the United States;

(b) The identity of the participants of the alleged conspiracy;

(c) The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

94

(d) Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e) Whether the alleged conspiracy violated state antitrust and unfair competition law, as alleged in the Second and Third Claims for Relief;

(f) Whether the Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Third Claim for Relief;

(g) Whether the conduct of the Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(h) The effect of the alleged conspiracy on the prices of Occupant Safety Restraint Systems sold in the United States during the Class Period;

(i) Whether Plaintiffs and members of the Classes had any reason to know or suspect the conspiracy, or any means to discovery the conspiracy;

(j) Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from the Plaintiffs and the members of the Classes;

(k) The appropriate injunctive and related equitable relief for the Nationwide Class;                                                                                   and

(l) The appropriate class-wide measure of damages for the Damages Class.

95

**ANSWER:** The allegations in Paragraph 170 call for a legal conclusion and characterize Plaintiffs' purported claims, to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies the allegations in Paragraph 170 and denies that this action is appropriate for class certification.

**171.** Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for Occupant Safety Restraint Systems purchased indirectly from the Defendants and/or their co-conspirators.

**ANSWER:** The allegations in Paragraph 171 call for a legal conclusion and characterize Plaintiffs' purported claims, to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies the allegations in Paragraph 171 and denies that this action is appropriate for class certification.

**172.** Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests

are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

**ANSWER:** The allegations in Paragraph 172 call for a legal conclusion and characterize Plaintiffs' purported claims, to which no response is required, and on that basis Takata denies these allegations.  To the extent any response is required, Takata denies the allegations in Paragraph 172 and denies that this action is appropriate for class certification.

173.   The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

**ANSWER:** The allegations in Paragraph 173 call for a legal conclusion and characterize Plaintiffs' purported claims, to which no response is required, and on that basis Takata denies these allegations.  To the extent any response is required, Takata denies the allegations in Paragraph 173 and denies that this action is appropriate for class certification.

174.   Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will

permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

**ANSWER:** The allegations in Paragraph 174 call for a legal conclusion and characterize Plaintiffs' purported claims, to which no response is required, and on that basis Takata denies these allegations.  To the extent any response is required, Takata denies the allegations in Paragraph 174 and denies that this action is appropriate for class certification.


**175.**  The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

**ANSWER:** The allegations in Paragraph 175 call for a legal conclusion and characterize Plaintiffs' purported claims, to which no response is required, and on that basis Takata denies these allegations.  To the extent any response is required, Takata denies the allegations in Paragraph 175 and denies that this action is

appropriate for class certification.

**176.**  The Defendants' price-fixing conspiracy had the following effects, among others:

(a) Price competition has been restrained or eliminated with respect to Occupant Safety Restraint Systems;

(b) The prices of Occupant Safety Restraint Systems have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c) Indirect purchasers of Occupant Safety Restraint Systems have been deprived of free and open competition;

(d) Indirect purchasers of Occupant Safety Restraint Systems paid artificially inflated prices.

**ANSWER:** Takata denies the allegations in Paragraph 176 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 176 regarding purported class members.  Takata denies the allegations in Paragraph 176 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**177.**  During the Class Period, Plaintiffs and the members of the Classes

paid supra-competitive prices for Occupant Safety Restraint Systems. OEMS and automotive dealers passed on inflated prices to Plaintiffs and the members of the Classes. Those overcharges have unjustly enriched Defendants.

**ANSWER:** The allegations in Paragraph 177 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 177 regarding purported class members. Takata denies the allegations in the first sentence of Paragraph 177 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies all allegations in the second sentence of Paragraph 177.

**178.** The markets for Occupant Safety Restraint Systems and the market for cars are inextricably linked and intertwined because the market for Occupant Safety Restraint Systems exists to serve the vehicle market. Without the vehicles, the Occupant Safety Restraint Systems have little to no value because they have no independent utility. Indeed, the demand for vehicles creates the demand for Occupant Safety Restraint Systems. As stated in the 2010 Annual Report of Lear Corporation, an automobile parts supplier: "Our sales are driven by the number of vehicles produced by the automotive manufacturers, which is ultimately dependent

100

on consumer and fleet demand for automotive vehicles."

**ANSWER:** Takata denies that there are legally meaningful or cognizable "markets for Occupant Safety Restraint Systems." Takata refers to the referenced document for its content and denies any characterization of it. Takata denies the allegations in Paragraph 178 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**179.** Occupant Safety Restraint Systems are identifiable, discrete physical products that remain essentially unchanged when incorporated into a vehicle. As a result, Occupant Safety Restraint Systems follow a traceable physical chain of distribution from the Defendants to Plaintiffs and the members of the Classes, and cost changes attributable to Occupant Safety Restraint Systems can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

**ANSWER:** Takata denies that this action is appropriate for class certification and denies the allegations in Paragraph 179.

**180.** Just as Occupant Safety Restraint Systems can be physically traced through the supply chain, so can their price be traced to show that changes in the prices paid by direct purchasers of Occupant Safety Restraint Systems affect prices paid by indirect purchasers of new motor vehicles containing Occupant Safety

Restraint Systems and of Occupant Safety Restraint Systems purchased for repair purposes.

**ANSWER:** Takata denies the allegations in Paragraph 180.

**181.** While even a monopolist would increase its prices when the cost of its inputs increased, the economic necessity of passing through cost changes increases with the degree of competition a firm faces. The OEM and dealer markets for new motor vehicles are subject to vigorous price competition. The OEMs and dealers have thin net margins, and are therefore at the mercy of their component costs, such that increases in the price of components such as Occupant Safety Restraint Systems lead to corresponding increases in prices for new motor vehicles at the OEM and dealer levels. When downstream distribution markets are highly competitive, as they are in the case of new motor vehicles containing Occupant Safety Restraint Systems as components, overcharges are passed through to ultimate consumers, such as the indirect-purchaser Plaintiffs and members of the Classes.

**ANSWER:** Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 181 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 181 to the

extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 181 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

182.  Hence, the inflated prices of Occupant Safety Restraint Systems both in new motor vehicles and those purchased for repair resulting from Defendants' bid rigging and price-fixing conspiracy have been passed on to Plaintiffs and the other members of the Classes by OEMs and dealers.

**ANSWER:** Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 182 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 182 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 182 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

183.  The economic and legal literature has recognized that unlawful overcharges in a component normally result in higher prices for products

containing that price-fixed component.  Two antitrust scholars – Professors Robert

G. Harris (Professor Emeritus and former Chair of the Business and Public Policy

Group at the Haas School of Business at the University of California at Berkeley)

and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern

Law School and author of the Handbook of the Law of Antitrust) – have observed

that "in a multiple-level chain of distribution, passing on monopoly overcharges is

not the exception: it is the rule."

**ANSWER:** Takata refers to the referenced documents for their content and

denies any characterization of them.  Takata denies the allegations in Paragraph

183 for lack of knowledge or information sufficient to form a belief as to their truth

in all other respects.


**184.**  As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor

for Information and Computer Science and Professor of Economics and Public

Policy at the University of Michigan), an expert who presented evidence in a

number of the indirect purchaser cases involving Microsoft Corporation, said (in a

passage quoted in the judicial decision in that case granting class certification): As

is well known in economic theory and practice, at least some of the overcharge will

be passed on by distributors to end consumers. When the distribution markets are

highly competitive, as they are here, all or nearly the entire overcharge will be

passed on through to ultimate consumers…Both of Microsoft's experts also agree upon the economic phenomenon of cost pass through, and how it works in competitive markets. This general phenomenon of cost pass through is well established in antitrust laws and economics as well.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 184 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**185.**   The purpose of the conspiratorial conduct of the Defendants and their co-conspirators was to raise, fix, rig or stabilize the price of Occupant Safety Restraint Systems and, as a direct and foreseeable result, the price of new motor vehicles containing Occupant Safety Restraint Systems and the price of Occupant Safety Restraint Systems purchased for repair purposes. Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously. That analysis - called regression analysis - is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is

an assemblage of costs. Thus, it is possible to isolate and identify only the impact of an increase in the price of Occupant Safety Restraint Systems on prices for new motor vehicles even though such products contain a number of other components whose prices may be changing over time. A regression model can explain how variation in the price of Occupant Safety Restraint Systems affects changes in the price of new motor vehicles. In such models, the price of Occupant Safety Restraint Systems would be treated as an independent or explanatory variable. The model can isolate how changes in the price of Occupant Safety Restraint Systems impact the price of new motor vehicles containing Occupant Safety Restraint Systems while controlling for the impact of other price-determining factors.

**ANSWER:** Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in the first sentence of Paragraph 185 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 185 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**186.**   The precise amount of the overcharge impacting the prices of new motor vehicles containing Occupant Safety Restraint Systems can be measured and quantified. Commonly used and well-accepted economic models can be used to

measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution. Thus, the economic harm to Plaintiffs and the class members can be quantified.

**ANSWER:** Takata denies the allegations in Paragraph 186 for lack of knowledge or information sufficient to form a belief as to their truth.


**187.** In addition to the regression analysis discussed above demonstrating impact on consumers, the Department of Justice's Antitrust Division, which has been investigating this cartel for some time, has concluded that there is "no doubt" that consumers were hurt financially.  Sharis A. Pozen, Acting Assistant Attorney General in charge of the Department of Justice's Antitrust Division said: "By rigging bids . . . the three companies inflated what some of their auto manufacturing clients paid, and indirectly, what consumers paid for some cars. Pozen said." "As a result of this international price-fixing and bid-rigging conspiracy, automobile manufacturers paid noncompetitive and higher prices for parts in cars sold to U.S. consumers," Pozen said. "This cartel harmed an important industry in our nation's economy, and the Antitrust Division with the Federal Bureau of Investigation will continue to work together to ensure that these kinds of conspiracies are stopped." Pozen went on to say that there was no doubt that consumers were hurt financially by the cartel's activity. In a separate press

statement, Pozen vowed to continue the investigation into "pernicious cartel conduct that results in higher prices to American consumers . . . ."

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it. Takata denies the allegations in Paragraph 187 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

188. The scheme drove up costs for consumers since the prices were illegally fixed on expensive electrical parts and have risen in cost as cars have come more complex in recent years, Jim Gillette, an analyst with the firm HIS Automotive, has said. Gillette estimated that the price-fixing of wire harnesses alone cost carmakers hundreds of millions of dollars. Climate control units are even more expensive because they have become more than just dials and switches in recent years. Even entry-level cars have digital controls that allow drivers and passengers to set their own temperatures.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it. Takata denies the allegations in Paragraph 188 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 188 for lack of knowledge or information sufficient to form a belief as to their truth in all other

respects.

**189.**   On February 15, 2013, Scott Hammond, the deputy assistant attorney general in the DOJ's Antitrust Division, discussed DOJ's ongoing automotive parts investigation in a Thomson Reuters article. He said "[t]he investigation is broader than what we've announced so far . . . . [The investigation] is still very much ongoing, but it already appears to be the biggest criminal antitrust investigation that we've ever encountered. *I say biggest with respect to the impact on U.S. businesses and consumers, and the number of companies and executives that are subject to the investigation.*" (emphasis added).

   **ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 189 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**190.**   On September 26, 2013, United States Attorney General Eric Holder in the Antitrust Division presented the DOJ's then most recent findings in the ongoing automotive parts investigation. He stated "[t]hese international pricefixing conspiracies affected more than $5 billion in automobile parts sold to U.S. car manufacturers. In total, more than 24 million cars purchased by American

consumers were affected by the illegal conduct." Holder also described how the conspiracies worked: "[c]company executives met face to face in the United states and Japan – and talked on the phone – to reach collusive agreements to rig bids, fix prices and allocate the supply of auto parts sold to U.S. car companies. In order to keep their illegal conduct secret, they used code names and met in remote locations. Then they followed up with each other regularly to make sure the collusive agreements were being adhered to." Attorney General Holder explained that the automotive parts conspiracies "targeted U.S. manufacturing, U.S. businesses and U.S. consumers. As a result of these conspiracies, Americans paid more for their cars."

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 190 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**191.**   On May 25, 2014, news sources reported that Brent Snyder, a deputy assistant attorney general in the Antitrust Division, said with respect to the automotive parts conspiracies, "[i]t's a very, very safe assumption that U.S. consumers paid more, and sometimes significantly more, for their automobiles as a result of this conspiracy."

110

**ANSWER:** Takata refers to the referenced documents for their content and denies any characterization of them.  Takata denies the allegations in Paragraph 191 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

192.   By reason of the alleged violations of the antitrust laws, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for Occupant Safety Restraint Systems than they would have paid in the absence of the Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

**ANSWER:** The allegations in Paragraph 192 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 192 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 192 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations for lack of

knowledge or information sufficient to form a belief as to their truth in all other respects.

**193.** Plaintiffs repeat and re-allege the allegations set forth above.

**ANSWER:** Takata incorporates by reference its responses set forth above and adopts the same as though fully set forth herein.

**194.** Plaintiffs and members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until the public announcements of the government investigations into price-fixing of Occupant Safety Restraint Systems began in February 2011.

**ANSWER:** The allegations in Paragraph 194 call for a legal conclusion, to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 194 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 194 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph

112

194 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**195.** Plaintiffs and members of the Classes are consumers who purchased or leased vehicles. They had no direct contact or interaction with the Defendants and had no means from which they could have discovered the combination and conspiracy described in this Complaint before the public announcements of the government investigations began in February 2011.

**ANSWER:** Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 195 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 195 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 195 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**196.** No information in the public domain was available to Plaintiffs and members of the Classes prior to the public announcements of the government investigations beginning in February 2011 that revealed sufficient information to

suggest that the Defendants were involved in a criminal conspiracy to price-fix Occupant Safety Restraint Systems. Plaintiffs and members of the Classes had no means of obtaining any facts or information concerning any aspect of the Defendants' dealings with OEMs or other direct purchasers, much less the fact that they and their co-conspirators had engaged in the combination and conspiracy alleged herein.

**ANSWER:** Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 196 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 196 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 196 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**197.**  For these reasons, the statute of limitations as to Plaintiffs and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and members of the Classes have alleged in this Complaint.

**ANSWER:** The allegations in Paragraph 197 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations.

To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 197 regarding purported class members.  Takata denies the allegations in Paragraph 197 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**198.** In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes. Plaintiffs and members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until February 2011, when the public announcements of the government investigations into Occupant Safety Restraint Systems price-fixing began.

**ANSWER:** The allegations in Paragraph 198 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 198 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 198 to the extent they are directed at Takata or intended to reference

actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 198 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**199.**   Before that time, Plaintiffs and members of the Classes were unaware of Defendants' unlawful conduct, and did not know before then that they were paying supra-competitive prices for Occupant Safety Restraint Systems throughout the United States during the Class Period. No information, actual or constructive, was ever made available to Plaintiffs and members of the Classes that even hinted to Plaintiffs that they were being injured by the Defendants' unlawful conduct.

**ANSWER:** The allegations in Paragraph 199 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 199 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 199 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 199 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**200.**   The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

**ANSWER:** The allegations in Paragraph 200 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 200 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 200 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**201.**   By its very nature, the Defendants' anticompetitive conspiracy and unlawful combinations were inherently self-concealing. Occupant Safety Restraint Systems are not exempt from antitrust regulation and, thus, Plaintiffs and members of the Classes reasonably considered the Occupant Safety Restraint Systems industry to be a competitive industry. Defendants met and communicated in secret and agreed to keep the facts about their collusive conduct from being discovered by any member of the public or by the OEMs and other direct purchasers with

117

whom they did business. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' Occupant Safety Restraint Systems prices before the public announcements of the government investigations began in February 2011.

**ANSWER:** The allegations in Paragraph 201 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 201 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 201 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

202. Plaintiffs and members of the Classes could not have discovered the alleged combination or conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination or conspiracy.

**ANSWER:** The allegations in Paragraph 202 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations.

To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 202 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 202 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 202 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

203.  Throughout the course of the conspiracy, the Defendants met and communicated in secret in order to conceal their conspiracy from the public and avoid detection thereof. Above and beyond their acts in furtherance of the conspiracy, such as acts of bid rigging, Defendants engaged in surreptitious activity such as using code names and meeting at private residences or remote locations. The conspirators also coordinated their pricing in a manner to avoid detection by the OEMs. The exact dates and times of these meetings are within the knowledge of the Defendants, including those Defendants and executives of those Defendants who have pleaded guilty to criminal violations of the Sherman Act.

ANSWER: Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 203 to the extent

119

they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 203 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**204.** Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until the public announcements of the government investigations began in February 2011.

**ANSWER:** The allegations in Paragraph 204 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 204 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 204 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 204 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**205.**  For these reasons, the statute of limitations applicable to Plaintiffs' and the Classes' claims was tolled and did not begin to run until February 2011.

**ANSWER:** The allegations in Paragraph 205 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 205 regarding purported class members.  Takata denies the allegations in Paragraph 205 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**206.**  Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

**ANSWER:** Takata incorporates by reference its responses set forth above and adopts the same as though fully set forth herein.

**207.**   Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

**ANSWER:** The allegations in Paragraph 207 call for a legal conclusion to

which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 207 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 207 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

208. The acts done by each of the Defendants as part of, and in furtherance of, their and their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

ANSWER: The allegations in Paragraph 208 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 208 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 208 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**209.**  During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Occupant Safety Restraint Systems, thereby creating anticompetitive effects.

**ANSWER:** The allegations in Paragraph 209 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 209 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 209 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**210.**  The anti-competitive acts were intentionally directed at the United States market for Occupant Safety Restraint Systems and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Occupant Safety Restraint Systems throughout the United States.

**ANSWER:** The allegations in Paragraph 210 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations.

To the extent any response is required, Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems," denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the remaining allegations in Paragraph 210 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 210 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**211.** The conspiratorial acts and combinations have caused unreasonable restraints in the market for Occupant Safety Restraint Systems.

**ANSWER:** The allegations in Paragraph 211 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems," denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the remaining allegations in Paragraph 211 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 211 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**212.** As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Occupant Safety Restraint Systems have been harmed by being forced to pay inflated, supra-competitive prices for Occupant Safety Restraint Systems.

**ANSWER:** The allegations in Paragraph 212 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 212 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 212 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 212 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**213.** In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

**ANSWER:** Takata denies that it was involved in the conspiracy as alleged

125

in Plaintiffs' complaint and denies the allegations in Paragraph 213 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 213 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

214.    Defendants and their co-conspirators'conspiracy had the following effects, among others:

(a) Price competition in the market for Occupant Safety Restraint Systems has been restrained, suppressed, and/or eliminated in the United States;

(b) Prices for Occupant Safety Restraint Systems sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c) Plaintiffs and members of the Nationwide Class who purchased Occupant Safety Restraint Systems indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

**ANSWER:** Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems." Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 214 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies that this action is

126

appropriate for class certification, and Takata therefore denies all allegations in Paragraph 214 regarding purported class members.  Takata denies the allegations in Paragraph 214 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

215.    Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Occupant Safety Restraint Systems purchased indirectly from Defendants and the co-conspirators than they would have paid and will pay in the absence of the conspiracy.

**ANSWER:**  Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 215 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 215 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 215 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

216.   The alleged contract, combination, or conspiracy is a *per se* violation

127

of the federal antitrust laws.

**ANSWER:** The allegations in Paragraph 216 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 216 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 216 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**217.** Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

**ANSWER:** Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 217 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 217 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 217 for lack of knowledge or information sufficient to form a belief as to their truth in all other

128

respects.

**218.** Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

**ANSWER:** Takata incorporates by reference its responses set forth above and adopts the same as though fully set forth herein.

**219.** During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of Occupant Safety Restraint Systems in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

**ANSWER:** The allegations in Paragraph 219 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 219 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 219 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**220.** The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Occupant Safety Restraint Systems and to allocate customers for Occupant Safety Restraint Systems in the United States.

**ANSWER:** The allegations in Paragraph 220 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 220 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 220 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**221.** In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

(a) participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Occupant Safety

Restraint Systems at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Occupant Safety Restraint Systems sold in the United States;

(b) allocating customers and markets for Occupant Safety Restraint Systems in the United States in furtherance of their agreements; and

(c) participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

**ANSWER:** The allegations in Paragraph 221 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems," denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 221 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 221 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

222.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain,

decrease, or stabilize prices and to allocate customers with respect to Occupant Safety Restraint Systems.

**ANSWER:** The allegations in Paragraph 222 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 222 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 222 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.


**223.** Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of the following state antitrust statutes.

**ANSWER:** The allegations in Paragraph 223 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 223 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph

223 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**224.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq*. Accordingly,

Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq*.

**ANSWER:** The allegations in Paragraph 224 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 224 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 224 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 224 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**225.**  Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq*.

(a) During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, and each of them, have acted in violation of Section

134

16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Occupant Safety Restraint Systems at supracompetitive levels.

(b) The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Occupant Safety Restraint Systems.

(c) For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following: (1) Fixing, raising, stabilizing, and pegging the price of Occupant Safety Restraint Systems; and (2) Allocating among themselves the production of Occupant Safety Restraint Systems.

(d) The combination and conspiracy alleged herein has had, inter alia, the following effects: (1) Price competition in the sale of Occupant Safety Restraint Systems has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for Occupant Safety Restraint Systems sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased Occupant Safety Restraint

135

Systems directly or indirectly from Defendants and their coconspirators have been deprived of the benefit of free and open competition.

(e) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for Occupant Safety Restraint Systems than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

**ANSWER:** The allegations in Paragraph 225 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 225 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 225 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 225 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

136

**226.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28- 4501, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq*.

**ANSWER:** The allegations in Paragraph 226 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 226 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 226 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 226 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**227.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint

138

Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq*.

**ANSWER:** The allegations in Paragraph 227 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 227 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 227 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 227 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**228.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

(c) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq*.

140

**ANSWER:** The allegations in Paragraph 228 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 228 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 228 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 228 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**229.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Maine; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid

141

supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq*.

**ANSWER:** The allegations in Paragraph 229 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 229 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 229 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 229 for lack of knowledge or information sufficient to form a belief as to their truth

142

in all other respects.

**230.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available

under Michigan Comp. Laws Ann. §§ 445.771, *et seq*.

**ANSWER:** The allegations in Paragraph 230 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 230 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 230 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 230 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**231.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the

Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

(c) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq*.

**ANSWER:** The allegations in Paragraph 231 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 231 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 231 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 231 for lack of knowledge or information sufficient to form a belief as to their truth

in all other respects.

**232.**   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available

146

under Mississippi Code Ann. § 75-21-1, *et seq.*

**ANSWER:** The allegations in Paragraph 232 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 232 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 232 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 232 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**233.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid

supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq*.

**ANSWER:** The allegations in Paragraph 233 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 233 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 233 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 233 for lack of knowledge or information sufficient to form a belief as to their truth

148

in all other respects.

**234.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available

under Nevada Rev. Stat. Ann. §§ 598A, *et seq*.

**ANSWER:** The allegations in Paragraph 234 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 234 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 234 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 234 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**235.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the

Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

(c) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.*

(e) Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

**ANSWER:** The allegations in Paragraph 235 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 235 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 235 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 235 for lack of knowledge or information sufficient to form a belief as to their truth

in all other respects.

**236.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available

under Nevada Rev. Stat. Ann. §§ 598A, *et seq.*

**ANSWER:** The allegations in Paragraph 236 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 236 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 236 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 236 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**237.**  Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New York; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the

Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems when they purchased vehicles containing Occupant Safety Restraint Systems, or purchased products that were otherwise of lower quality, than would have been absent the conspirators illegal acts, or were unable to purchase products that they would have otherwise have purchased absent the illegal conduct.

(b) During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq*. The conduct set forth above is a per se violation of the Act. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

**ANSWER:** The allegations in Paragraph 237 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 237

154

regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 237 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 237 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**238.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq.*

**ANSWER:** The allegations in Paragraph 238 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 238 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 238 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 238 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**239.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1)

156

Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq*.

**ANSWER:** The allegations in Paragraph 239 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 239

157

regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 239 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 239 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**240.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq*.

**ANSWER:** The allegations in Paragraph 240 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 240 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 240 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 240 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**241.**  Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1)

Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37- 1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq*.

**ANSWER:** The allegations in Paragraph 241 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 241

regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 241 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 241 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**242.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq*.

**ANSWER:** The allegations in Paragraph 242 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 242 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 242 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 242 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**243.**  Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-911, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1)

Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Utah; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, defendants' illegal conduct had a substantial effect on Utah commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq*.

**ANSWER:** The allegations in Paragraph 243 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 243

163

regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 243 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 243 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**244.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq*.

**ANSWER:** The allegations in Paragraph 244 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 244 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 244 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 244 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**245.**  Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1)

Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§ 47-18-1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia §§ 47-18-1, *et seq*.

**ANSWER:** The allegations in Paragraph 245 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 245

166

regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 245 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 245 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**246.**  Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.

**ANSWER:** The allegations in Paragraph 246 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 246 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 246 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 246 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**247.** Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement. Plaintiffs and members

of the Damages Class have paid more for Occupant Safety Restraint Systems than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

**ANSWER:** The allegations in Paragraph 247 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 247 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 247 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 247 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**248.** In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of members of the Plaintiffs and the members of the Damages Class.

**ANSWER:** The allegations in Paragraph 248 call for a legal conclusion to

which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 248 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 248 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 248 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

249. Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

**ANSWER:** Takata admits Plaintiffs seeks damages as stated in Paragraph 249. Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 249 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 249 to the extent they

170

are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 249 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**250.** Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

**ANSWER:** Takata incorporates by reference its responses set forth above and adopts the same as though fully set forth herein.

**251.** Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

**ANSWER:** The allegations in Paragraph 251 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 251 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 251 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**252.** Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et seq*.

(a) The Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b) The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

(c) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint System price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Occupant Safety Restraint System prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(d) During the Class Period, the Defendants' illegal conduct substantially

172

affected Arkansas commerce and consumers.

(e) As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

**ANSWER:** The allegations in Paragraph 252 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 252 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 252 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 252 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**253.** Defendants have engaged in unfair competition or unfair,

unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq*.

(a) During the Class Period, defendants marketed, sold, or distributed Occupant Safety Restraint Systems in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq*. of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b) This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(c) The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq*., including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq*., of the California Business and Professions Code, set forth above;

174

(d) Defendants' acts, omissions, misrepresentations, practices, an nondisclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(e) Defendants' acts or practices are unfair to consumers of Occupant Safety Restraint Systems (or vehicles containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code; and

(f) Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(g) Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by defendants as a result of such business acts or practices.

(h) The illegal conduct alleged herein is continuing and there is no indication that defendants will not continue such activity into the future.

(i) The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supra-competitive and artificiallyinflated prices for Occupant Safety Restraint Systems (or vehicles containing them).

175

Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(j) The conduct of defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

(k) As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by defendants' unfair competition. Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

**ANSWER:** The allegations in Paragraph 253 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 253 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 253 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 253 for lack of knowledge or information sufficient to form a belief as to their truth

in all other respects.

**254.** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq*.

(a) Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed or obtained in the District of Columbia.

(b) The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Occupant Safety Restraint Systems. Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing Occupant Safety Restraint Systems because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs could avoid the overcharges. Defendants' conduct with regard to sales of Occupant Safety Restraint Systems, including their illegal

conspiracy to secretly fix the price of Occupant Safety Restraint Systems at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for Occupant Safety Restraint Systems.

(c) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems. (d) As a direct and proximate result of the Defendants' conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief

178

available under that statute.

**ANSWER:** The allegations in Paragraph 254 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 254 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 254 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 254 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**255.** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*.

(a) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Florida; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free

179

and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq*., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**ANSWER:** The allegations in Paragraph 255 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 255 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 255 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph

180

255 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**256.** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq*.

(a) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d) Defendants have engaged in unfair competition or unfair or deceptive

acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq*., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**ANSWER:** The allegations in Paragraph 256 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 256 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 256 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 256 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**257.** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Mass. G.L. c. 93A, §2.

(1) Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

(2) Defendants agreed to, and did in fact, act in restraint of trade or

182

commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and noncompetitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(3) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(4) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class were injured and are threatened with further injury.

(5) Certain of the Defendants have been served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within

the Commonwealth. More than thirty days has passed since such demand letters were served, and each Defendant served has failed to make a reasonable settlement offer.

(6) By reason of the foregoing, Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. Defendants' and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiffs and members of the Damages Class to multiple damages.

**ANSWER:** The allegations in Paragraph 257 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 257 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 257 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 257 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**258.** Defendants have engaged in unfair competition or unfair,

unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*

(a) Missouri Plaintiff and members of this Damages Class purchased Occupant Safety Restraint Systems for personal, family, or household purposes.

(b) Defendants engaged in the conduct described herein in connection with the sale of Occupant Safety Restraint Systems in trade or commerce in a market that includes Missouri.

(c) Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

(d) Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning defendants' unlawful activities and artificially inflated prices for Occupant Safety Restraint Systems. The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Damages Class as they related to the cost of Occupant Safety Restraint Systems they purchased.

(e) Defendants misrepresented the real cause of price increases and/or the

185

absence of price reductions in Occupant Safety Restraint Systems by making public statements that were not in accord with the facts.

(f) Defendants' statements and conduct concerning the price of Occupant Safety Restraint Systems were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Damages Class to believe that they were purchasing Occupant Safety Restraint Systems at prices established by a free and fair market.

(g) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Missouri; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(h) The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

(i) As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property.

(j) Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq*., 15 CSR 60- 8.010, *et seq*., and 15 CSR 60-9.010, *et seq*., and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

**ANSWER:** The allegations in Paragraph 258 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 258 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 258 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 258 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**259.** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, *et seq.*

(a) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Montana; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, defendants marketed, sold, or distributed Occupant Safety Restraint Systems in Montana, and defendants' illegal conduct substantially affected Montana commerce and consumers.

(c) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-101, *et seq.* and,

188

accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**ANSWER:** The allegations in Paragraph 259 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 259 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 259 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 259 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

260. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq*.

(a) Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at noncompetitive and artificially inflated levels, the prices at which Occupant Safety Restraint Systems were sold, distributed or obtained in New Mexico and took efforts to

conceal their agreements from Plaintiffs and members of the Damages Class.

(b) The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, inter alia, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Occupant Safety Restraint Systems as set forth in N.M.S.A., § 57-12-2E. Plaintiffs were not aware of Defendants' pricefixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Occupant Safety Restraint Systems. Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing Occupant Safety Restraint Systems because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs' could avoid the overcharges. Defendants' conduct with regard to sales of Occupant Safety Restraint Systems, including their illegal conspiracy to secretly fix the price of Occupant Safety Restraint Systems at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs. The suppression of competition that has resulted

190

from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for Occupant Safety Restraint Systems.

(c) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(d) During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(e) As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured and are threatened with further injury.

(f) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

**ANSWER:** The allegations in Paragraph 260 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 260 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 260 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 260 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**261.** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq*.

(a) Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b) Defendants and their co-conspirators made public statements about the

prices of Occupant Safety Restraint Systems and products containing Occupant Safety Restraint Systems that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for Occupant Safety Restraint Systems and products containing Occupant Safety Restraint Systems; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

(c) Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased Occupant Safety Restraint Systems were misled to believe that they were paying a fair price for Occupant Safety Restraint Systems or the price increases for Occupant Safety Restraint Systems were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

(d) Defendants knew that their unlawful trade practices with respect to pricing Occupant Safety Restraint Systems would have an impact on New York consumers and not just the Defendants' direct customers.

(e) Defendants knew that their unlawful trade practices with respect to pricing Occupant Safety Restraint Systems would have a broad impact, causing consumer class members who indirectly purchased Occupant Safety Restraint

Systems to be injured by paying more for Occupant Safety Restraint Systems than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(f) The conduct of the defendants described herein constitutes consumeroriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(g) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New York; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(h) During the Class Period, defendants marketed, sold, or distributed Occupant Safety Restraint Systems in New York, and defendants' illegal conduct substantially affected New York commerce and consumers.

(i) During the Class Period, each of the Defendants named herein, directly,

194

or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Occupant Safety Restraint Systems in New York.

(j) Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349(h).

**ANSWER:** The allegations in Paragraph 261 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 261 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 261 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 261 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**262.** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*.

(a) Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-

competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b) Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware. Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. Defendants' public statements concerning the price of Occupant Safety Restraint Systems created the illusion of competitive pricing controlled by market forces rather than supra-competitive pricing driven by Defendants' illegal conspiracy.  Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

(c) The conduct of the defendants described herein constitutes consumeroriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at

large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

(d) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(e) During the Class Period, defendants marketed, sold, or distributed Occupant Safety Restraint Systems in North Carolina, and defendants' illegal conduct substantially affected North Carolina commerce and consumers.

(f) During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Occupant Safety Restraint Systems in North Carolina.

(g) Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. §

197

75-1.1, *et seq*., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**ANSWER:** The allegations in Paragraph 262 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 262 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 262 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 262 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**263.** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq*.

(a) Members of this Damages Class purchased Occupant Safety Restraint Systems for personal, family, or household purposes.

(b) Defendants agreed to, and did in fact, act in restraint of trade or

198

commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in Rhode Island.

(c) Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Occupant Safety Restraint Systems. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that defendants' Occupant Safety Restraint Systems prices were competitive and fair.

(d) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(e) As a direct and proximate result of the Defendants' violations of law,

Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by defendants' willful and deceptive conduct, as described herein.

(f) Defendants' deception, including its affirmative misrepresentations and omissions concerning the price of Occupant Safety Restraint Systems, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing Occupant Safety Restraint Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of Occupant Safety Restraint Systems they purchased.

(g) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq*., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**ANSWER:** The allegations in Paragraph 263 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 263 regarding purported class members.  Takata denies that it was involved in the

conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 263 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 263 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**264.** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

(a) Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in Vermont.

(b) Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Occupant Safety Restraint Systems. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that defendants' Occupant Safety Restraint Systems prices were competitive and fair.

(c) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(d) As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by defendants' willful and deceptive conduct, as described herein.

(e) Defendants' deception, including its affirmative misrepresentations and omissions concerning the price of Occupant Safety Restraint Systems, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing Occupant Safety Restraint Systems at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq*., and, accordingly, Plaintiffs and members of the

202

Damages Class seek all relief available under that statute.

**ANSWER:** The allegations in Paragraph 264 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 264 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 264 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 264 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

265.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

**ANSWER:** Takata incorporates by reference its responses set forth above and adopts the same as though fully set forth herein.

266.   Plaintiffs bring this claim under the laws of all states listed in the Second and Third Claims, supra, except for the state of California. Plaintiffs also bring this claim under the laws of South Carolina.

**ANSWER:** Takata admits Plaintiffs purport to bring the claims as stated in

Paragraph 266. Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 266 regarding purported class members. Takata denies the allegations in Paragraph 266 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**267.** As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Occupant Safety Restraint Systems.

**ANSWER:** The allegations in Paragraph 267 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 267 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 267 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**268.** Defendants have benefited from their unlawful acts and it would be

204

inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs of the members of the Damages Class for Occupant Safety Restraint Systems.

**ANSWER:** The allegations in Paragraph 268 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 268 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 268 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 268 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

269.    Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

**ANSWER:** The allegations in Paragraph 269 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 269 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 269 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 269 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**270.**  Pursuit of any remedies against the firms from which Plaintiffs and the members of the Damages Class purchased vehicles containing Occupant Safety Restraint Systems and Occupant Safety Restraint Systems subject to Defendants' conspiracy would have been futile, given that those firms did not take part in Defendants' conspiracy.

**ANSWER:** The allegations in Paragraph 270 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 270

regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 270 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 270 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

To the extent any response to Plaintiffs' "Prayer for Relief" is required, Takata denies all allegations of that section and specifically denies that Plaintiffs, or any other person, are entitled to any relief sought in the complaint or to any other relief sought in this action.

Takata expressly denies all allegations, claims, and other statements contained in the complaint that are not specifically admitted herein and denies that Plaintiffs are entitled to any of the requested relief.

### AFFIRMATIVE AND OTHER DEFENSES TO END-PAYOR SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Takata states the following affirmative and other defenses without assuming the burden of proof for such defenses that would otherwise rest on Plaintiffs:

## FIRST AFFIRMATIVE DEFENSE

## (FAILURE TO STATE A CLAIM)

Plaintiffs' claims and those of the putative class should be dismissed because the complaint fails to state facts sufficient to plausibly suggest the conspiracy it alleges and also because Plaintiffs fail to state a claim under the relevant laws upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

## (Lack of Injury)

Plaintiffs' claims and those of the putative class should be dismissed because Plaintiffs and/or one or more members of the proposed class have suffered no injury or damages as a result of the matters alleged in the complaint.

## THIRD AFFIRMATIVE DEFENSE

## (Statute of Limitations)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, by the applicable statute(s) of limitations.

## FOURTH AFFIRMATIVE DEFENSE

## (No Fraudulent Concealment)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, because Plaintiffs and/or one of

208

more members of the proposed class may not rely upon the doctrine of fraudulent concealment as they cannot show concealment, actual and reasonable reliance on such affirmative acts of concealment, and/or due diligence in discovery of their claim.

## FIFTH AFFIRMATIVE DEFENSE

### (No Antitrust Injury)

Plaintiffs' claims and those of the putative class should be dismissed because Plaintiffs and/or one or more members of the proposed class have not suffered actual, cognizable antitrust injury of the type antitrust laws are intended to remedy.

## SIXTH AFFIRMATIVE DEFENSE

### (Uncertainty of Damages)

Plaintiffs' claims and those of the putative class should be dismissed because the alleged damages sought are too speculative and uncertain, and because of the impossibility of the proof of these alleged damages, and because these alleged damages cannot be practicably ascertained or allocated.

## SEVENTH AFFIRMATIVE DEFENSE

### (Lack of Proximate Cause)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, due to the absence of any injury or damage for which Takata's actions, conduct, or omissions were the proximate

cause, including, without limitation, damages suffered due to the acts or omissions of others.

## EIGHTH AFFIRMATIVE DEFENSE

### (Adequate Remedy at Law)

Plaintiffs' claims and those of the putative class for injunctive relief should be dismissed because Plaintiffs and/or one or more members of the proposed class have available an adequate remedy at law.

## NINTH AFFIRMATIVE DEFENSE

### (Privilege)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, because any action taken by or on behalf of Takata was justified, constituted bona fide business competition, and was taken in pursuit of its own legitimate business and economic interests, and is therefore privileged.

## TENTH AFFIRMATIVE DEFENSE

### (Lack of Standing to Sue for Injuries Alleged)

Plaintiffs' claims and those of the putative class should be dismissed, in whole or in part, to the extent Plaintiffs and/or one or more members of the proposed class lack standing to sue for the injuries alleged in the complaint.

## ELEVENTH AFFIRMATIVE DEFENSE

210

**(Improper Joinder)**

Plaintiffs' claims and those of the putative class are improperly joined within the meaning of Rule 20 of the Federal Rules of Civil Procedure because they did not arise out of the same transaction, occurrence or series of transactions or occurrences, and/or do not involve questions of law or fact common to all Defendants.

## TWELFTH AFFIRMATIVE DEFENSE

### (Due Process)

Plaintiffs' claims and those of the putative class are barred in whole or in part because an award of treble damages or punitive or exemplary damages against Takata based on the alleged conduct would be excessive and, therefore, violate the Due Process Clauses of the Fifth and Fourteenth Amendments of the Constitution of the United States.  In addition, to the extent Plaintiffs' claims would result in Takata paying damages to more than one claimant for the same alleged overcharge, they are barred because such multiple liability would violate rights guaranteed to Takata by the United States Constitution, including, without limitation, rights guaranteed under the Due Process Clause of the Fourteenth Amendment.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Ultra Vires)

Plaintiffs' claims and those of the putative class are barred to the extent that

such conduct was committed by any individual acting ultra vires.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Duty to Arbitrate)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that any Plaintiff has an agreement to arbitrate its claims.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

Without admitting liability, Plaintiffs and/or one or more of the members of the proposed class cannot recover damages, in whole or in part, because and to the extent of, their failure to mitigate their alleged damages.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Competition Not Harmed)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, because Takata's actions did not lessen competition in any relevant properly defined market.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Intervening or Superseding Acts of Third Parties)

The damages of Plaintiffs and/or one or more members of the proposed class, if any, resulted from the acts or omissions of third parties over whom Takata had no control or responsibility.  The acts of such third parties constitute

intervening or superseding causes of harm, if any, suffered by Plaintiffs and/or one or more members of the proposed class.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Injury or Damages Offset by Benefits Received)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, because any claimed injury or damage has been offset by benefits received by Plaintiffs and/or one or more members of the proposed class with respect to the challenged conduct.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Set Off)

Without admitting that Plaintiffs and/or one or members of the proposed class are entitled to recover damages in this matter, Takata is entitled to set off from any recovery Plaintiffs and/or one or more members of the proposed class may obtain against Takata any amount paid to Plaintiffs and/or one or more members of the proposed class by any other Defendants who have settled, or do settle, Plaintiffs' claims in this matter.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Lack of Jurisdiction)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, because any alleged conduct of

Takata occurred outside of the jurisdiction of the Court. Among other things, the Court lacks subject matter jurisdiction because the claims relate to conduct outside the jurisdiction of the United States and individual states based on the application of the Foreign Trade Antitrust Improvement Act, comity and other principles of law.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Other Defenses Incorporated by Reference)

Takata adopts and incorporates by reference any and all other additional or affirmative defenses asserted or to be asserted by any other Defendant in this proceeding to the extent that Takata may share in such affirmative defenses.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Failure to Meet Requirements for Class Action)

Plaintiffs' request for class certification is barred because Plaintiffs cannot meet the requirements for class certification under Fed. R. Civ. P. 23 and any applicable state laws.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Personal Jurisdiction)

Takata asserts that, to the extent that Plaintiffs and/or one or more members of the proposed class seek to assert claims outside of the Eastern District of Michigan, such claims should be dismissed and barred for lack of personal

jurisdiction.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Venue)

Takata asserts that, to the extent that Plaintiffs and/or one or more members of the proposed class seek to assert claims outside of the Eastern District of Michigan, such claims should be dismissed and barred for improper venue.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Duplicative Recovery)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, because they would constitute duplicative recovery.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Indirect Purchasers Barred)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, by the direct-purchaser requirement of *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Commerce Clause/Constitutionality)

Some or all of Plaintiffs' claims and those of the putative class cannot be applied extraterritorially to conduct by Takata without violating the Commerce

Clause and Takata's due process rights and equal protection of laws guaranteed by the United States Constitution.  Plaintiffs' claims and those of the putative class are barred in whole or in part because an award of treble damages or punitive or exemplary damages against Takata based on the alleged conduct would be excessive and, therefore, violate the Due Process Clauses of the Fifth and Fourteenth Amendments of the Constitution of the United States.  In addition, to the extent Plaintiffs' and those of the putative class claims would result in Takata paying damages to more than one claimant for the same alleged overcharge, they are barred because such multiple liability would violate rights guaranteed to Takata by the United States Constitution, including, without limitation, rights guaranteed under the Due Process Clause of the Fourteenth Amendment.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Waiver, Estoppel, Good Faith, and/or Laches)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, by the doctrines of waiver, good faith, unclean hands, failure to mitigate, estoppel, and/or laches.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Failure to Join)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, for failure to join indispensable parties.

216

## THIRTIETH AFFIRMATIVE DEFENSE

### (Passed on Injury)

Plaintiffs' claims for damages and those of the putative class are barred, in whole or in part, to the extent that injury or damage alleged in the complaint was absorbed by, passed on to, or incurred by third parties, including direct or indirect purchasers of Occupant Safety Restraint System Products.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Acts of Other Defendants)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, because Takata is not liable for the acts of any other Defendant.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (Insufficiently Alleged Market)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, because the complaint has insufficiently alleged a product and geographic market, and is so vague and ambiguous as to deny Takata notice of the markets alleged by Plaintiffs.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Withdrawal from Alleged Conspiracy)

Without admitting liability, Plaintiffs' claims and those of the putative class are barred, in whole or in part, because to the extent that Takata is deemed to have

joined any conspiracy alleged in the complaint, it withdrew from such conspiracy.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

### (Duty to Minimize)

Plaintiffs and/or one or more members of the proposed class had a duty to take reasonable action to minimize any damage, injury, or loss allegedly sustained as a result of the conduct alleged in the complaint, and they are barred from recovering any damages that might have been reasonably avoided.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

### (Doctrine of Release)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, by the doctrines of release and/or accord and satisfaction.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

### (Settled Claims)

The claims asserted in the complaint are barred to the extent that they have been settled, compromised, released, or otherwise discharged.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

### (Interstate Commerce)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that they are based on alleged acts, conduct, or statements that did not affect interstate commerce.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### (Remote Injury)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, because the alleged injury is indirect and too remote.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

### (Independent Entities Market)

To the extent any actionable conduct occurred, it occurred by entities independent from and not controlled by Takata.

## FORTIETH AFFIRMATIVE DEFENSE

### (Injunction)

Plaintiffs and/or one or more members of the proposed class have failed to state a claim for injunctive relief insofar as Plaintiffs seek to enjoin alleged events that already have transpired without the requisite showing of threatened harm or continuing harm.

## FORTY-FIRST AFFIRMATIVE DEFENSE

### (Acts or Omissions of Others)

Any damages suffered by Plaintiffs and/or by one or more members of the proposed class were caused, in whole or in part, by the acts or omissions of persons or entities other than Takata, and Takata is entitled to a reduction of the damages, if any, to which it may be liable to the extent such damages were the result of the

219

acts or omissions of persons or entities other than Takata.

## FORTY-SECOND AFFIRMATIVE DEFENSE

### (Tolling)

Plaintiffs' claims and those of the putative class are barred because Plaintiffs cannot prove the requisite elements of fraudulent concealment, equitable estoppel, statutory tolling provisions, or any other theory under which Plaintiffs seek to toll the applicable statute of limitations.

## FORTY-THIRD AFFIRMATIVE DEFENSE

### (Ratification)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, by reason of Plaintiffs' ratification of, acquiescence in, agreement with, or consent to Takata's conduct, and/or by reason of same by one or more members of the proposed class.

## FORTY-FOURTH AFFIRMATIVE DEFENSE

### (Waiver to Seek Certain Remedies)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that they and/or one or more members of the proposed class have waived, under any applicable contract, their rights to seek certain remedies, including but not limited to, treble damages and attorneys' fees.

## FORTY-FIFTH AFFIRMATIVE DEFENSE

**(Unclean Hands)**

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, by the doctrine of unclean hands.

## FORTY-SIXTH AFFIRMATIVE DEFENSE

### (Reservation of Defenses)

Takata has not knowingly or intentionally waived any applicable defenses, and it reserves the right to assert and rely upon other applicable defenses that may become available or apparent during discovery in this matter.  Takata reserves the right to amend or seek to amend its Answer and/or affirmative defenses.

## FORTY-SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Plead Fraud and/or Fraudulent Concealment With Particularity)

Plaintiffs have failed to allege fraud and/or fraudulent concealment with particularity.

## FORTY-EIGHTH AFFIRMATIVE DEFENSE

### (Comparative Fault)

Plaintiffs' claims are barred, in whole or in part, to the extent the injuries alleged in the Complaint, the fact and extent of which are expressly denied by Takata, were directly and proximately caused by or contributed to by the statements, acts or omissions of third persons or entities unaffiliated with Takata.

## FORTY-NINTH AFFIRMATIVE DEFENSE

221

**(Failure To Exhaust Remedies)**

Plaintiffs' claims for unjust enrichment are barred, in whole or in part, because Plaintiffs failed to exhaust all remedies against the parties with whom each plaintiff is in privity.

### FIFTIETH AFFIRMATIVE DEFENSE

**(No Benefit Conferred)**

Plaintiffs' claim for unjust enrichment is barred, in whole or in part, because Plaintiffs did not confer a benefit on Takata.

### FIFTY-FIRST AFFIRMATIVE DEFENSE

**(No Retention of Benefit)**

Plaintiffs' claim for unjust enrichment is barred, in whole or in part, because Takata did not retain any benefit allegedly conferred on it by Plaintiffs.

### FIFTY-SECOND AFFIRMATIVE DEFENSE

**(No Unjust Retention of Benefit)**

Plaintiffs' claim for unjust enrichment is barred, in whole or in part, because any alleged retention of a benefit conferred by Plaintiffs on Takata was not unjust.

### FIFTY-THIRD AFFIRMATIVE DEFENSE

**(Dependent on Other Flaws)**

Plaintiffs' claim for unjust enrichment is barred, in whole or in part, because Plaintiffs' claim is dependent on the allegations supporting their state law antitrust

claims and thus suffers from the same flaws that preclude Plaintiffs from stating an antitrust claim.

## FIFTY-FOURTH AFFIRMATIVE DEFENSE

### (No Privity)

Plaintiffs' claim for unjust enrichment is barred, in whole or in part, because Plaintiffs do not and cannot allege that privity exists between Plaintiffs and Takata.

## FIFTY-FIFTH AFFIRMATIVE DEFENSE

### (Adequate Remedy at Law)

Plaintiffs' claim for unjust enrichment is barred, in whole or in part, because to the extent that Plaintiffs succeed on their statutory claims, Plaintiffs have an adequate remedy at law.

## FIFTY-SIXTH AFFIRMATIVE DEFENSE

### (Consideration Given)

Plaintiffs' claim for unjust enrichment is barred, in whole or in part, because Takata gave consideration.

## FIFTY-SEVENTH AFFIRMATIVE DEFENSE

### (No Pass Through)

Plaintiffs' antitrust claims under the laws of California, New Mexico, the District of Columbia, and any other applicable state claims for any illegal overcharge are barred, in whole or in part, to the extent that such overcharge, the

existence of which Takata expressly denies, was absorbed, in whole or in part, by others, and was not passed through to plaintiffs or passed on by plaintiffs to other parties, so as to avoid the duplication of recovery of compensatory damages.

## FIFTY-EIGHTH AFFIRMATIVE DEFENSE

### (Alleged Conduct Was Not Consumer-Oriented)

Plaintiffs' antitrust claim under the law of New York should be dismissed to the extent that it is barred, in whole or in part, because Defendants' alleged conduct was not 'consumer-oriented' within the meaning of N.Y. Gen. Bus. Law § 349.

## FIFTY-NINTH AFFIRMATIVE DEFENSE

### (No Fraudulent Concealment)

Plaintiffs' antitrust claims under the laws of Iowa, Michigan, Minnesota, Mississippi, New Hampshire, North Carolina, North Dakota, South Dakota, Tennessee, and West Virginia and consumer protection claims under the laws of Florida, and any other applicable state claims should be dismissed to the extent that they are barred, in whole or in part, because plaintiffs may not rely upon the doctrine of fraudulent concealment as they cannot show concealment, actual and reasonable reliance on such affirmative acts of concealment, or due diligence in discovery of their claim.

## SIXTIETH AFFIRMATIVE DEFENSE

**(Duplicative Recovery)**

Plaintiffs' antitrust claims under the laws of Arizona, Minnesota, Wisconsin, and any other applicable state claims should be dismissed to the extent that they are barred, in whole or in part, because they would constitute duplicative recovery in violation of applicable law.

## SIXTY-FIRST AFFIRMATIVE DEFENSE

### (No Actionable Conduct)

Plaintiffs' antitrust claim under Wisconsin law should be dismissed to the extent that it is barred, in whole or in part, because no actionable conduct occurred within the state of Wisconsin and no alleged conduct had a substantial effect on the people of Wisconsin.

## SIXTY-SECOND AFFIRMATIVE DEFENSE

### (No Substantial Effects)

Plaintiffs' antitrust claims under the laws of North Carolina, Tennessee, Wisconsin, and any other applicable state claims should be dismissed to the extent that they are barred, in whole or in part, because the conduct complained of did not have a substantial effect commerce within those states.

## SIXTY-THIRD AFFIRMATIVE DEFENSE

### (No Effect on Minnesota Commerce)

Plaintiffs' antitrust claim under Minnesota law should be dismissed to the

225

extent that it is barred, in whole or in part, by Minn. Stat. § 325D.54, as no contract combination or conspiracy was created, formed, or entered into within the state of Minnesota nor did any contract combination or conspiracy that was allegedly created, formed, or entered into elsewhere affect commerce within the state of Minnesota.

## SIXTY-FOURTH AFFIRMATIVE DEFENSE

### (Acts Not flagrant)

Plaintiffs' request for treble damages under the Arizona Antitrust Act, Arizona Revised Statutes, §§ 44-1401, et seq., is barred on the ground that the alleged violations of that act are not flagrant.

## SIXTY-FIFTH AFFIRMATIVE DEFENSE

### (Not Intrastate Commerce)

Plaintiffs' antitrust claims under the laws of California, Mississippi, Tennessee, and any other applicable state claims, should be dismissed because the claims do not involve intrastate commerce within those states as required by the applicable state statutes.

## SIXTY-SIXTH AFFIRMATIVE DEFENSE

### (No Class Action)

Plaintiffs' antitrust claim under Mississippi and Illinois law, consumer protection claim under Montana law, and any other applicable state claims, should

226

be dismissed because class actions are barred under the applicable state laws.

## SIXTY-SEVENTH AFFIRMATIVE DEFENSE

### (Indirect Purchasers Barred)

Plaintiffs' antitrust claims under New Hampshire law should be dismissed because plaintiffs are indirect purchasers and indirect purchaser antitrust claims are barred under New Hampshire law.

## SIXTY-EIGHTH AFFIRMATIVE DEFENSE

### (Damages Not Recoverable)

Plaintiffs' claims under the Florida Deceptive & Unfair Trade Practices Act are barred to the extent that Plaintiffs seek to recover punitive, special, consequential, statutory, nominal, or incidental damages.

## SIXTY-NINTH AFFIRMATIVE DEFENSE

### (Other Defenses Incorporated)

Takata incorporates all affirmative defenses alleged for any and all claims that are the predicate claims for any unlawful conduct claim brought by Plaintiffs under California Business & Professions Code Section 17200, *et seq.*

## SEVENTIETH AFFIRMATIVE DEFENSE

### (Not Deceptive)

To the extent that Plaintiffs' claim of a violation of California Business & Professions Code Sections 17200, *et seq.*, is based on any allegedly fraudulent

conduct, Plaintiffs' claim is barred because the conduct was not likely to deceive and/or was mere puffing.

## SEVENTY-FIRST AFFIRMATIVE DEFENSE

### (Federalism)

Plaintiffs' state-law claims and those of the putative class are barred, in whole or in part, by the principle of federalism.

## SEVENTY-SECOND AFFIRMATIVE DENSE

### (No Intrastate Commerce)

Plaintiffs' state-law claims and those of the putative class are barred, in whole or in part, because, to the extent the alleged, unlawful conduct occurred predominantly or entirely outside the state at issue and/or predominantly outside the United States, and did not involve intrastate commerce.

## SEVENTY-THIRD AFFIRMATIVE DEFENSE

### (No Effect on People or Commerce in State)

Plaintiffs' state-law claims and those of the putative class are barred, in whole or in part, because the alleged conduct did not substantially affect the people or commerce of the respective states at issue.

## SEVENTY-FOURTH AFFIRMATIVE DEFENSE

### (No Application of State Laws to Class-Actions)

Some or all of the respective state laws at issue cannot be, and were not

intended to be, applied in the class-action context.

## SEVENTY-FIFTH AFFIRMATIVE DEFENSE

### (Not Efficient Enforcers)

Plaintiffs are not efficient enforcers of the antitrust laws and other laws at issue.

## SEVENTY-SIXTH AFFIRMATIVE DEFENSE

### (No Harm to Competition)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, because the alleged conduct did not cause harm to competition with respect to the Plaintiffs' class.

## SEVENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Lawful and Legitimate Business)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, because any and all of Takata's conduct challenged by Plaintiffs was lawful, justified and pro-competitive; constituted a bona fide business practice consistent with the industry carried out in furtherance of legitimate business interests; and was an essential part of Takata's lawful business operations.

## SEVENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Not Consumer Oriented)

Plaintiffs' claims and those of the putative class are barred, in whole or in

part, because Takata's alleged conduct was not "consumer oriented."

## SEVENTY-NINTH AFFIRMATIVE DEFENSE

### (Benefits Outweigh Harm)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, because the benefits of the alleged conduct outweigh any possible harm, including, without limitation, harm to competition.

## EIGHTIETH AFFIRMATIVE DEFENSE

### (Economic Loss Doctrine)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, by the economic loss doctrine, because Plaintiffs did not suffer any personal injury or property damage.

## EIGHTY-FIRST AFFIRMATIVE DEFENSE

### (Not for Personal, Family or Household Purposes)

Plaintiffs' claims under applicable state laws are barred, in whole or in part, because Plaintiffs did not purchase any relevant products primarily for personal, family or household purposes.

## EIGHTY-SECOND AFFIRMATIVE DEFENSE

### (Failure to Define a Market)

Plaintiffs and any putative class members are barred from recovery of any damages because the Complaint fails to allege sufficiently or properly define any

230

market for the purpose of asserting a claim against Takata.

## EIGHTY-THIRD AFFIRMATIVE DEFENSE

## (FTAIA)

Plaintiffs' claims are barred, in whole or in part, by the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a.

## EIGHTY-FOURTH AFFIRMATIVE DEFENSE

## (Not Flagrant)

Plaintiffs' request for treble damages under the Michigan Antitrust Reform Act, MCL 445.771, *et seq.*, is barred on the ground that the alleged violations of that Act are not flagrant.

## EIGHTY-FIFTH AFFIRMATIVE DEFENSE

## (No Treble Damages)

Plaintiffs' claims under the Mississippi Antitrust Act for treble damages and attorneys' fees are barred because treble damages and attorneys' fees may not be recovered under said statute.

## EIGHTY-SIXTH AFFIRMATIVE DEFENSE

## (No Deceptive Practice)

Plaintiffs' claims under the Missouri Merchandising Practices Act are barred because plaintiffs have not alleged that any deceptive practice was used in connection with the sale of wire harness products to plaintiffs as required by the

statute.

## EIGHTY-SEVENTH AFFIRMATIVE DEFENSE

### (No "Connection")

Plaintiffs' claims under the Missouri Merchandising Practices Act are barred because plaintiffs have not alleged a "connection" between any defendant's conduct and their purchases of automobiles in Missouri.

## EIGHTY-EIGHTH AFFIRMATIVE DEFENSE

### (No Affirmative False Statements)

Plaintiffs' claims under the New Mexico Unfair Practices Act are barred because plaintiffs have not alleged that Takata made any affirmative false statements with regard to the costs or pricing of the parts at issue.

## EIGHTY-NINTH AFFIRMATIVE DEFENSE

### (Full and Adequate Remedy at Law)

Plaintiffs cannot seek equitable relief under Nevada law, because such claims are barred, in whole or in part, to the extent that plaintiffs possess a full and adequate remedy at law.

## NINTIETH AFFIRMATIVE DEFENSE

### (No Ascertainable Loss)

Plaintiffs' claims under the Rhode Island Deceptive Trade Practices Act are barred because Plaintiffs cannot show that they suffered any ascertainable loss of

232

money or property as required under the plain language of the statute.

## NINETY-FIRST AFFIRMATIVE DEFENSE

### (No Retroactive Claim)

Plaintiffs' antitrust claims under New Hampshire and Utah law fail, in whole or in part, because they may not assert damages for alleged conduct that pre-dates the enactment of the respective statutes.

## NINETY-SECOND AFFIRMATIVE DEFENSE

### (Benefit of the Bargain)

Plaintiffs' claims and those of the putative class are barred in whole or in part because they accepted the benefit of the bargain.

## NINETY-THIRD AFFIRMATIVE DEFENSE

### (Motion to Dismiss)

Takata incorporates by reference any affirmative defenses to Plaintiffs' state law claims that it made in Defendants' Collective Motion to Dismiss End-Payors' Consolidated Amended Class Action Complaint and the Automobile Dealers' Consolidated Class Complaint (Oct. 21, 2013).

## NINETY-FOURTH AFFIRMATIVE DEFENSE

### (Order on Motion to Dismiss)

Plaintiffs' claims are barred, in whole or in part, to the extent they are inconsistent with Judge Battani's Opinion and Order Granting in Part and Denying

in Part Defendants' Collective Motion to Dismiss Indirect Purchaser Actions (Sept. 25, 2014).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Takata prays as follows:

1.    That this suit be determined unable to be maintained as a class action;

2.    That this action be dismissed with prejudice and that Plaintiffs take nothing by their complaint;

3.    That judgment be entered in favor of Takata and against Plaintiffs with respect to the causes of action asserted in the complaint;

4.    That Plaintiffs take nothing by the complaint;

5.    That the Court award Takata reasonable costs and expenses, including, but not limited to, attorneys' fees and costs of defense; and

6.    That the Court award such other relief as may be appropriate.

## **JURY DEMAND**

Takata admits that Plaintiffs purport to request a trial by jury for all of the claims asserted in the complaint so triable.  Pursuant to the Seventh Amendment and Rule 38(b) of the Federal Rules of Civil Procedure, Takata demands a trial by jury of all issues so triable.

Dated: December 22, 2014      Respectfully submitted,

By: /s/ Robert J. Wierenga
Robert J. Wierenga (P59785)
Suzanne L. Wahl (P71364)
**Schiff Hardin LLP**
340 S. Main Street, Suite 210
Ann Arbor, MI  48104
734-222-1500
Fax: 734-222-1501
rwierenga@schiffhardin.com
swahl@schiffhardin.com

David M. Zinn
John E. Schmidtlein
Samuel Bryant Davidoff
**Williams & Connolly LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
202-434-5000
Fax: 202-434-5029
dzinn@wc.com
jschmidtlein@wc.com
sdavidoff@wc.com

*Counsel for Defendants Takata*
*Corporation and TK Holdings Inc.*

235

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2014 a copy of the foregoing was filed with the Court using the ECF system which will send notification of such filing to all attorneys of record.

By: /s/ Robert J. Wierenga
Robert J. Wierenga

236