# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION

MASTER FILE NO. 12-md-02311
Hon. Marianne O. Battani

_____

| | |
|---|---|
| In Re: Wire Harness Systems | 12-cv-00103 |
| In Re:  Instrument Panel Clusters | 12-cv-00203 |
| In Re:  Fuel Senders | 12-cv-00303 |
| In Re:  Heater Control panels | 12-cv-00403 |
| In Re: Occupant Safety Systems | 12-cv-00603 |
| In Re: Alternators | 13-cv-00703 |
| In Re: Radiators | 13-cv-01003 |
| In Re: Starters | 13-cv-01103 |
| In Re: Switches | 13-cv-01303 |
| In Re: Ignition Coils | 13-cv-01403 |
| In Re: Motor Generators | 13-cv-01503 |
| In Re: Steering Angle Sensors | 13-cv-01603 |
| In Re: HID Ballasts | 13-cv-01703 |
| In Re: Inverters | 13-cv-01803 |
| In Re: Air Flow Meters | 13-cv-02003 |
| In Re: Fuel Injection Systems | 13-cv-02203 |
| In Re: Automatic Transmission Fluid Warmers | 13-cv-02403 |
| In Re: Valve Timing Control Devices | 13-cv-02503 |
| In Re: Electronic Throttle Bodies | 13-cv-02603 |

_____

THIS DOCUMENT RELATES TO:

End- Payor Actions
_____/


# OPINION AND ORDER GRANTING FINAL
# APPROVAL OF CLASS ACTION SETTLEMENT

Before the Court is End-Payor Plaintiffs ("EPPs") Motion for Final Approval of

Settlements With Certain Defendants (Doc. Nos. 434 in 12-103, 154 in 12-203, 127 in

12-303, 161 in 12-403, 123 in 12-603, 71 in 13-703, 123 in 13-1003, 88 in 13-1103, 73

in 13-1303, 71 in 13-1403, 77 in 13-1503, 35 in 13-1603, 136 in 13-1703, 70 in 13-1803, 35 in 13-2003, 192 in 13-2203, 42 in 13-2403, 127 in 13-2503, and 35 in 13-2603.  The Court heard oral argument on May 11, 2016, and at the conclusion of the hearing, took this matter under advisement.  For the reasons that follow, the Court finds the settlements provide an excellent result given the substantial risks of litigation, and the motion is **GRANTED**.

## I.  BACKGROUND

These actions arise from credible allegations of conspiracies among the automotive industry's largest manufacturers, marketers, and sellers of numerous component parts to fix the prices, rig bids, and allocate the market and customers in the United States for their products.  End-Payor Plaintiffs assert claims for relief under the Sherman Antitrust Act, 15 U.S.C. § 1, and various state antitrust, unjust enrichment, and consumer protection laws.

The Court preliminarily approved each of the settlements (the "Settlements"). The Settlements involve nine defendants and their affiliates (collectively, "Settling Defendants") and nineteen automotive parts (the "Settled Parts") that EPPs contend were the subject of illegal bid-rigging and price-fixing.  The Settling Defendants are: Nippon Seiki Company Ltd., N.S. International, Ltd., and New Sabina  Industries, Inc. (collectively, "Nippon Seiki"); Lear Corporation ("Lear");  Kyungshin-Lear  Sales and Engineering, LLC ("KL  Sales");  Autoliv, Inc., Autoliv  ASP, Inc., Autoliv  B.V. & Co. KG, Autoliv Safety Technology, Inc., and Autoliv Japan  Ltd  (collectively, "Autoliv"); TRW Deutschland Holding GmbH and ZF TRW Automotive Holdings Corp. (f/k/a TRW Automotive Holdings Corp.) (collectively, "TRW"); Yazaki  Corporation and Yazaki North

2

America, Inc. (collectively, "Yazaki"); Panasonic Corporation and Panasonic Corporation of North America (collectively, "Panasonic"); Hitachi Automotive Systems, Ltd. ("HIAMS"); T. RAD Co., Ltd. and T.RAD North America, Inc. (collectively, "T.RAD"); Fujikura Ltd. and Fujikura Automotive America LLC (collectively, "Fujikura"), and Sumitomo Electric Industries, Ltd., Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc. (incorporating K&S Wiring Systems, Inc.); Sumitomo Wiring Systems (U.S.A.) Inc. (collectively, "Sumitomo").

These Settlements combined make available nearly $225 million in cash for the benefit of the settlement classes. Those classes are comprised of EPPs, defined as persons and entities who, for the last ten or more years depending on the Settlement Agreement, purchased or leased a new motor vehicle in the United States not for resale that included at least one of the Settled Parts, or indirectly purchased one or more of the Settled Parts as a replacement part, which were manufactured or sold by a Settling Defendant, any current or former parent, subsidiary, or affiliate of Defendant or any co-conspirator of the Defendants. Further, Settling Defendants must provide significant cooperation to the EPPs in the continued prosecution of EPPs' claims against the nonsettling defendants. The Settlements also provide that certain Settling Defendants will not engage in certain specified conduct--that would violate the antitrust laws involving the automotive parts that are at issue in these lawsuits--for a period of two years.

**A. Settlement Amounts**

The chart below sets forth the Settlements before the Court. It identifies Settling Defendants, Settled Parts, and settlement amounts.

| Settling Defendant | Automotive Parts Case | Settlement Fund |
|---|---|---|
| Autoliv | Occupant Safety Systems | $19,000,000 |
| Fujikura | Automotive Wire Harness Systems | $7,144,000 |
| HIAMS | Air Flow Meters | $5,047,920 |
| | Alternators | $6,216,420 |
| | Electronic Throttle Bodies | $6,870,780 |
| | Fuel Injection Systems | $8,693,640 |
| | Ignition Coils | $7,431,660 |
| | Inverters | $2,337,000 |
| | Motor Generators | $2,337,000 |
| | Starters | $3,832,680 |
| | Valve Timing Control Devices | $3,972,900 |
| KL Sales | Automotive Wire Harness Systems | $228,000 |
| Lear | Automotive Wire Harness Systems | $3,040,000 |
| Nippon Seiki | Instrument Panel Clusters | $4,560,000 |
| Panasonic | HID Ballasts | $5,510,596 |
| | Steering Angle Sensors | $6,293,229 |
| | Switches | $5,296,175 |
| Sumitomo | Automotive Wire Harness Systems | $35,817,220 |
| | Heater Control Panels | $2,182,780 |
| T.RAD | ATF Warmers | $741,000 |
| | Radiators | $6,669,000 |
| TRW | Occupant Safety Systems | $5,446,350 |
| Yazaki | Automotive Wire Harness Systems | $73,267,000 |
| | Fuel Senders | $58,000 |
| | Instrument Panel Clusters | $2,675,000 |

| TOTAL | $224,668,350 |
|-------|-------------|

As part of the settlement negotiations, EPPs considered several factors, including the evidence regarding Defendants' conduct, the estimated dollar amount of commerce affected by that conduct, and the value of the other settlement terms, especially the value of discovery cooperation offered by Settling Defendants.  (See Exh. 1, Joint Declaration  of Steven N. Williams, Hollis Salzman, and Marc M. Seltzer in Support of End-Payor Plaintiffs' Motion for Final Approval of Settlement with Certain Defendants and for Certification of Settlement Classes ("Joint Decl.")).

### B.  Cooperation and Other Terms

Settling Defendants must provide cooperation.  Specifically, they must (1) produce documents and data relevant to the ongoing claims of EPPs against the nonsettling defendants; (2) make witnesses available for interviews with EPPs' representatives; (3) provide assistance in understanding certain data and other information produced to EPPs; and (4) facilitate the use of the data and information at trial.  Further, certain Settling Defendants have agreed not to engage in certain specified conduct for a period of two years that would violate the antitrust laws involving the Settled Parts.

In exchange for the settlement payments and cooperation, the Settlements include "Released Claims" against Settling Defendants.  The Settlement Agreements will not affect other current or future Defendants' joint and several liability for the Settling Defendants' alleged wrongdoing.  Settling Defendants' sales remain in their respective cases.  Nonsettling defendants, with the exception of those who are

5

ultimately entitled to the reduced liability provisions of the Antitrust Criminal Penalty Enhancement and Reform  Act, remain jointly and severally liable for damages applicable to those sales, less only the amounts paid in settlement.  Consequently, the Settlement Agreements will not limit the Settlement Classes' right to recover the full amount of the damages available under the law from the nonsettling defendants, against whom EPPs continue to prosecute their claims.

### C.  Notice Plan

In this case, the Settlements provide substantial cash benefits to consumers and other class members, who purchased or leased new motor vehicles, not for resale, containing the automotive parts subject to the settlements, or who indirectly purchased one or more of those automotive parts as a replacement part.  It identifies those jurisdictions that allow EPPs, who are indirect purchasers, to seek money damages or restitution:  Arizona, Arkansas, California, District  of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas,  Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (the "IPP States").

EPPs, through the class action notice consultant, Kinsella Media, LLC ("Kinsella"), implemented  a class-notice program utilizing paid and earned media. Notice was published in *Sports Illustrated*, *Time*, *The Wall Street Journal,* and *Automotive News,* and online media efforts through banner advertisements on outlets like Facebook and Yahoo!.  (See Interim Declaration of Katherine Kinsella ("Kinsella

Decl.," Exhibit 2).   The banner advertisements, which ran until March 20, 2016, have been seen a total estimated 304,136,564 times. The earned media component of this notice program included a multimedia news release distributed on PR Newswire's US1 National Circuit on February 16, 2016.  (Id.)  As of March 8, 2016, the release was republished across 252 news websites and received over 14,487 views. (Id.)  A total of 421 journalists engaged with the multimedia news release, and major national outlets that covered the Settlement, include:  Reuters, *USA Today*, *NBC Money*, *Consumer Reports,* and *Automotive Weekly*.  (Id.)  Other earned media efforts, which continued through May 11, 2016, included statewide press releases in the IPP States as well as outreach to 411 national and local reporters for print and television that generated two national news stories and 19 local outlet reprints.  (Id.)  As of February 8, 2016, Kinsella registered sponsored keywords and phrases (e.g., "Auto Parts Settlement") with all major search engines, including Google AdWords, Bing Microsoft Advertising, and their search partners. (Id.)

Members of the Settlement Classes are able to contact a toll-free helpline or register online at the settlement website, www.AutoPartsClass.com.  The website provides answers to frequently asked questions, deadlines, a list of the Settling Defendants, as well as the long form notice.  The website has been operational since October 12, 2015, and is accessible 24 hours a day, seven days a week.

## II.  STANDARD OF REVIEW

Rule 23(e) governs settlement, and under the Rule, "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).   Moreover, when a proposed

settlement binds class members, "the court may approve it only after a hearing and on a finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e)(2); Sheick v. Auto. Component Carrier LLC, No. 2:09-cv-14429, 2010 WL 4136958, at *14 (E.D. Mich. Oct. 18, 2010); see also In re Packaged Ice Antitrust Litig, No. 08-MD–1952, 2011 WL 717519, at *8 (E. D. Mich. Feb. 22, 2011).

Approval involves a three steps process: "(1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement."  In Re Telectronics Pacing Sys. Inc., 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir. 1983)); In re Packaged Ice Antitrust Litig., No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010).  Under the third step, the court assesses whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." Lessard v. City of Allen Park, 372 F. Supp.  2d  1007, 1009 (E.D. Mich. 2005) (citing Vukovich, 720 F.2d  at 921-23).  This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued."  In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted); Sheick, 2010 WL 4136958, at *14-15.

In exercising its discretion, the district court gives deference to the view of experienced counsel as to the merits of an arm's-length settlement.  Dick v. Spring Commc'ns, 297 F.R.D. 283, 297 (W.D. Ky. 2014).  Because a settlement represents an exercise of judgment by the negotiating parties, a judge reviewing a settlement will not

8

"substitute his or her judgment for that of the litigants and their counsel," IUE-CWA v. General Motors Corp., 238 F.R.D. 583, 593 (E.D. Mich. 2006), or "decide the merits of the case or resolve unsettled legal questions." Carson v. Am. Brands, Inc., 450 U.S. 79, 88 n.14 (1981). Because the purpose of settlement is to avoid the determination of contested issues, the approval process is not simply an abbreviated trial on the merits. Van Horn v. Trickey, 840 F.2d 604, 607 (8th Cir. 1988). Because of the uncertainties and risks inherent in any litigation, courts take a common sense approach and approve class action settlements if they fall within a "range of reasonableness." Sheick, 2010 WL 4136958, at *15 (citation omitted). The court should be mindful that a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co., No. 0574730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted).

## III. ANALYSIS

At the outset, the Court observes that courts within the Sixth Circuit "have recognized that the law favors the settlement of class action lawsuits." Griffin v. Flagstar Bancorp, Inc., No. 2:10cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013); see also In re Packaged Ice Antitrust Litig., No. 08- MD-01952, 2011 WL 717519, at *7 (E.D. Mich. Feb. 22, 2011); UAW v. General Motors Corp., 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions). "Given that class settlements are favored, the role of the district court is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

9

settlement taken as a whole, is fair, reasonable and adequate to all concerned."

IUE–CWA v. Gen. Motors Corp., 238 F.R.D. 583, 594 (E.D. Mich. 2006) (internal

quotation marks and citations omitted).

### A.  Factors Governing Final Approval

The Settlements before the Court meet the criteria required for final approval

under Rule 23 of the Federal Rules of Civil Procedure.  They provide meaningful

benefits and were reached after negotiations between experienced counsel, who

understood the merits to and defenses against the claims advanced.  The settlements

reflect a reasonable compromise in light of the liability, damages, and procedural

uncertainties facing both EPPs and Settling Defendants.

Here, the Court has considered a number of factors in reaching its conclusion

that the settlements should be granted final approval:  (1) the likelihood of success on

the merits weighed against the amount and form of the relief offered in the settlement;

(2) the complexity, expense, and likely duration of further litigation; (3) the opinions  of

class counsel and class representatives; (4) the amount of discovery engaged in by the

parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and

(7) the public interest.  In re Packaged Ice, 2011 WL 717519, at *8.  No one factor is

determinative; each is discussed below.

### 1.  Likelihood of Success on the Merits

The court assesses class action settlements "with regard to a 'range of

reasonableness,' an assessment that 'recognizes the uncertainties of law and fact in

any particular case and the concomitant risks and costs inherent in taking any litigation

to completion.' "  Sheick, 2010 WL 4136958, at *15 (quoting IUE-CWA, 238 F.R.D. at

594); <u>Int'l Union</u>, 2006 WL 1984363, at *21.  When the interests of the class as a whole

are better served by settlement, the standard is met.  <u>Sheick</u>, 2010 WL 4136958, at *16

(citing <u>IUE-CWA</u>, 238 F.R.D. at 595).

 Even though many Settling Defendants pleaded guilty in the criminal

prosecutions brought by the Department of Justice to the very conduct alleged by EPPs

in their complaints, EPPs' success is not guaranteed.  Simply put, EPPs have to prove

classwide impact from the conspiracy; the Department of Justice did not.   The

resolution of this issue will turn in large measure on a battle of experts–at great cost,

and at great risk to the class members' chances of success.   The End-Payor Plaintiffs

must show they suffered damages as a result of the defendants' conduct, and given the

nature of the automobile industry, the damages methodologies advanced by the parties

will vary greatly.  In sum, EPPs face significant challenges to liability and an uphill battle

as to proof of the amount of damages.  Settling Defendants have vigorously and ably

defended these cases and will continue to do so in the event the Court were to reject

the Settlements.  These Settlements avoid the risks of further litigation and ensure

recovery for members of the Settlement Classes.

 Of great importance in the Court's assessment is the provision in the

Settlements requiring discovery cooperation of certain Settling Defendants.  The

cooperation agreed to included, for example, identifying all current and former

employees, directors, and officers interviewed by any of the government entities

investigating antitrust activity in the industry, document production, including English

translations, regarding the investigations, not only by the Department of Justice, but by

government entities in other countries, pricing, employee training on biding and pricing,

11

transactional data regarding sales to Original Equipment Manufacturers, bids,
cooperation with attorney proffers, witness interviews, depositions, and trial testimony.
See e.g. Doc. No. 354 in 12-102).  This benefit to the classes "strongly militates toward
approval" of the settlements.  See In re Linerboard Antitrust Litig., 292 F. Supp. 2d 631,
643 (E.D. Pa. 2003).  This cooperation strengthens EPPs' prosecution of claims against
those defendants that continue to litigate these cases.  Id.  Finally, certain Settling
Defendants have agreed not to engage in certain specified conduct that would violate
the antitrust laws involving the automotive parts for a period of two years.

Therefore, the Court finds that after weighing the benefits of the Settlements
against the risks of continued litigation, the scale tilts heavily toward final approval.

## 2.  The Complexity, Expense, and Likely Duration of Continued Litigation

A settlement "should represent 'a compromise which has been reached after the
risks, expense and delay of further litigation have been assessed.' "  In re Cardizem,
218 F.R.D. at 523 (quotation omitted).  "[T]he prospect of a trial necessarily involves the
risk that Plaintiffs would obtain little or no recovery."  Id.

The Court agrees with Class Counsels' assessment that antitrust class actions of
the size and magnitude of the Auto Parts Action are among the most difficult and
complex actions to prosecute.  EPPs' Class Counsel represent nearly 60 class
representatives, pursuing claims under federal law and the laws of 30 states and the
District of Columbia on behalf of classes of consumers and businesses that purchased
or leased new motor vehicles not for resale containing certain automotive parts.  Given
the difficulty and protracted nature of antitrust cases, the Court finds that any final

12

adjudicated recovery for the EPPs would almost certainly be many years away.  Class certification motions on the first three parts to be heard are not scheduled until 2018. Discovery requires review of foreign language documents, and discovery motions have been contested.  Further, continued litigation would be expensive, time consuming, complex, and likely involve testimony from multiple expert witnesses.  The Court is cognizant that even if EPPs achieve a favorable trial outcome, appeal is likely.  Indeed, each subsequent step in the litigation process would require EPPs to incur additional expenses without any assurances of a more favorable outcome than achieved in these settlements.

The Court itself has had substantial opportunity to consider the claims and defenses in this litigation and knows that complex antitrust litigation of this scope and magnitude has many inherent risks that settlements extinguish.  Here, EPPs have negotiated substantial recoveries that eliminate all risks of continued litigation while ensuring substantial payments for the benefit of the classes.  An analysis of this factor, therefore, overwhelmingly supports final approval of the Settlements.

### 3.  Judgment of Experienced Counsel

In deciding whether a proposed settlement warrants approval, the Court considers "the judgment of counsel and the presence of good faith bargaining between the contending parties."  In re Delphi Corp. Sec., Deriv. & "ERISA" Litig., 248 F.R.D. 483, 498 (E.D. Mich. 2008).  Counsels' judgment "that settlement is in the best interest of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'"  Packaged Ice, 2011 WL 717519, at *11  (quoting Sheick,  2010 WL 4136958, at *18).

In this case, the Settlements were reached by experienced counsel, with decades of experience, after arm's-length negotiations.  Settlement Class Counsel believe that the Settlements each provide an excellent result for the Settlement Classes given the circumstances of each Settling Defendant's conduct and potential liability. Settlement Class Counsel thoroughly investigated the legal and factual issues, discovery has been ongoing, especially in the wire harness systems component part case.  (See Joint Decl. at ¶ 9-13).  The information revealed in the discovery process is useful to all the subsequently filed cases, and the facts of these cases, and, especially, the strength and weaknesses of the claims asserted by EPPs are well known.  See Sheick, 2010 WL 4136958, at *19.  The Court finds that the judgment of experienced counsel supports final approval of the Settlements.

### 4.  Discovery

Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline required to satisfy this factor. Packaged Ice, 2010 WL 3070161,  at  *5-6.  The "question is whether the parties had adequate information about their claims."  Griffin, 2013 WL 6511860, at *4 (quoting In re Global  Crossing  Sec.  &  ERISA  Litig., 225  F.R.D.  436, 458 (S.D.N.Y.  2004)).

Progress in discovery varies in each component part.  Nevertheless, Settlement Class Counsel had access to documents produced to the United States Department of Justice and proffers of information by cooperating Defendants.  The Court is satisfied that they had sufficient information to reach this settlement.

### 5.  Reaction of Absent Class Members

14

The deadline for class members to exclude themselves from the proposed Settlement Classes passed without any exclusions; however, several objections to the Settlements have been filed.

On May 6, 2016, George W. Cochran filed his Notice of Appearance pursuant to Michigan Local Rul 83.25, and Rule 2.1(c) of the MDL Judicial Panel's Rules and Procedures, on behalf of Class Member-Objectors Olen York, Amy York, and Nancy York (collectively "York Objectors").  The Court also received objections from Steven F. Helfand and Patrick S. Sweeney.  Finally, William Thompson, Benjamin Feury, Shawn Odweyer, Sylvia Thompson, and Thomas Saris, who are represented by David Dishman (collectively "Dishman Objectors"), also filed objections.  Before addressing the merits of the objections, the Court directs its attention to some preliminary matters.

### a. Preliminary Matters

First, the Court considers standing to object.  Shawn Odweyer purchased a demo car with 12,000 miles, not a new car.  To gain membership in the Class on the basis of purchase of a passenger vehicle, Odweyer had to purchase a new car.  He did not, and, consequently, he lacks standing to object.  Likewise, William Thompson purchased used vehicles; therefore, he too lacks standing to challenge the settlements.

The second issue involves Cochran's contention that he properly appeared at the fairness hearing on behalf of the York Objectors.  Counsel for EPPs objected to his appearance on the ground that Cochran had not been admitted to the Eastern District. After Cochran represented to the Court that he had received special admission, the Court allowed him to argue on behalf of the York Objectors.

Under the Local Rules of the United States District Court for the Eastern District

15

of Michigan, *pro hac vice* is not permitted.  E.D. Mich. LR 83.20(c)(1).  The Comment to

the Rule, however, informs that it is "subordinate to any provision of federal law or rules

to the contrary" and identifies the "Rules of Procedure of the Judicial Panel on

Multidistrict Litigation promulgated pursuant to 28 U.S.C. § 1407(f)."  Id.

Pursuant to Rule 2.1(c) of the Rules of Procedure of the United States Judicial

Panel on Multidistrict Litigation:

> Admission to Practice before the Panel.  Every member in
> good standing of the Bar of any district court of the United
> States is entitled to practice before the Panel, provided,
> however, that he or she has established and maintains a
> CM/ECF account with any United States federal court. **Any
> attorney of record in any action transferred under
> Section 1407 may continue to represent his or her client
> in any district court of the United States to which such
> action is transferred.** Parties are not required to obtain
> local counsel.

(Emphasis added).

The Eastern District of Michigan also publishes an Attorney Admissions Manual

which addresses attorneys that have not been admitted to practice in the district.

Because most multidistrict cases involve out-of-state attorneys, who never appear in

person, the Eastern District grants limited admission.  Therefore, these attorneys can

register to receive a login and password for e-filing once certain criteria are met.

Because the admission is limited, should an attorney need to appear before the Judge,

he or she must abide by the general admission process.  Cochran did not.

Based on the governing rules, Cochran was precluded from arguing before the

Court. The Court has considered the Objection he filed on behalf of York Objectors.

### b.  Merits

16

### i. Class Definition/ Membership

Objectors contend that the definition of the Class is so broad, it results in a dilution to class members, such as the Objectors, with legitimate claims. Objectors argue that inclusion of every make and model of every motor vehicle purchased between 1998 and 2015 brings in millions of individuals, who may not actually be connected to the precise liability, causation, and damages issues raised in the various complaints. There is no question that the class is broadly defined, but the definition is a function of Defendants' conduct, which was far reaching.

Objectors also assert that EPPs' definition of the class is too indefinite to determine whether a particular individual is a member of the proposed class. Specifically, a class member is unlikely to know who manufactured the component parts of his or her car(s) so class membership cannot be established in a reasonable or efficient way.

Rule 23(a) includes no language requiring that a class be definite to be certified. The crux of these objections is the court-imposed requirement of ascertainability. In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig., 209 F.R.D. 323, 336 (S.D.N.Y.2002) (internal quotes and citations omitted). The class that plaintiffs seek to certify must be readily identifiable so that the court can determine who is in the class, and thus, who is bound by the ruling. See Dunnigan v. Metropolitan Life Ins. Co., 214 F.R.D. 125, 135 (S.D. N. Y. 2003) ("Plaintiffs must. . .demonstrate that the aggrieved class can be readily identified.").

A class is ascertainable when defined by objective, administratively feasible criteria, for which a subjective determination is not needed. See Manual for Complex

17

Litigation § 21.222 at 270 (4th ed. 2004) ("Although the identity of individual class members need not be ascertained before class certification, the membership of the class must be ascertainable."); MTBE Prods. Liability, 209 F.R.D. at 336. Further, a court "must be able to make this determination without having to answer numerous fact-intensive inquiries." Id. at 336 n.20 (quoting Daniels v. City of New York, 198 F.R.D. 409, 414 (S. D. N. Y. 2001)). Membership need not be ascertained before the class certification; however, it "must be ascertainable at some point in the case." MTBE Prods. Liability, 209 F.R.D. at 337 (quoting Rios v. Marshall, 100 F.R.D. 395, 403 (S. D. N. Y. 1983); Ashe v. Board of Elections in the City of New York, 124 F.R.D. 45, 47 (E. D. N. Y. 1989).

The Sixth Circuit, in Rikos v. Procter & Gamble Co., 799 F.3d 497, 525-26 (6th Cir. 2015), cert. denied, 136 S. Ct. 1493 (2016) (internal quotation marks omitted), observed that "[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." In this case, the standard is met. Class members are on notice that if they purchased a new motor vehicle they may be in the class. The Settlement Classes consist of indirect purchasers or lessees of new motor vehicles or purchasers of replacement parts in the United States that were purchased or leased within a certain time frame, not for resale, that included at least one of the Settled Parts, or purchased one or more of the Settled Parts as a replacement part, which were manufactured or sold by a Settling Defendant. The Settlement Agreements spell out class membership in terms of the precise years involved, geographical limitations, and the type of purchase for each part. End Payor Plaintiffs constitute a definite class

18

because membership could be determined by reviewing factors such as the year of manufacture of the car and the supplier of the component parts.  Although the identification process will necessitate additional review,  the Court will not have to resort to mini trials to determine membership.  The fact that an objector cannot personally identify whether his motor vehicle contained a part does not render the criteria subjective.  Class members will be required to submit some evidence to the claims administrator demonstrating qualified membership.  As data is provided from defendants and the Original Equipment Manufacturers, a determination of membership is the class will be simplified.

### ii.  Adequacy of the Notice

Objectors contend that the Notice of these settlements did not comply with Rule 23 or due process.  According to the Objectors, the Notice violates due process rights of members because it failed to provide individual notice and did not match component parts to vehicles or Settling Defendants.  The Court disagrees.

Federal Rule of Civil Procedure 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]."  Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."  UAW, 497 F.3d at 629 (quoting Mullane v. Cent. Hanover Bank & Trust Co.,  339 U.S. 306, 314 (1950)).  In addition, the notice must clearly and concisely state: (1) "the nature of the action;" (2) the class definition;  (3) "the class claims, issues, or defenses; (4) that  a class member may enter an appearance through" counsel; (5) "that the court will exclude from the

19

class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).  The purpose of notice in a class action is to "afford members of the class due-process, which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." Eisen  v. Carlisle  & Jacquelin, 417 U.S. 156, 173-74 (1974)).

Due process requires that absent class members be provided the best notice practicable, reasonably calculated to apprise them of the pendency of  the action, and affording them the opportunity to opt out or object. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985); Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. Fidel v. Farley, 534 F.3d 508, 514 (6th Cir. 2008);  Manual for Complex Litigation (Fourth) §  21.311, at 288 (2004). The mechanics of the notice process "are left to  the discretion of the court subject only to the broad 'reasonableness' standard imposed by due process." Grunin v. Int'l House of Pancakes, 513 F.2d 114, 121 (8th Cir. 1975). Each class member need not receive actual notice for the due-process standard to be met, "so long as class counsel acted reasonably in selecting means likely to inform persons affected." In re Prudential Sec. Inc. Ltd. P'ships Litig., 164 F.R.D. 362, 368 (S.D.N.Y. 1996).

The class notice program approved by the Court, (see, e.g., Doc. No. 421 in 12-103), and adhered to by Class Counsel used both paid and earned media, published

20

notice in several national publications, online media efforts through social media sites and search engines, as well as earned media efforts through press releases, television news coverage, and a website.  See Kinsella Decl.

Objectors contend that the Notice failed because it informed potential class members that in order to object to a particular settlement,

> [Y]ou **must specify which Settlement (including the specific motor vehicle part and the Settling Defendant(s)) you are objecting to** and a letter that also contains the following:
>
> •Your name, address, and telephone number;
>
> • Documents reflecting your purchase or lease of a new motor vehicle and/or purchase of the applicable replacement part. Purchase or lease documentation should include: (a) the date of purchase or lease, (b) the make and model year of the new motor vehicle, (c) the state where the new motor vehicle was purchased or leased, and (d) the amount paid. Replacement part documentation should include: (a) the date of purchase, (b) type of replacement part purchased, (c) the state where the replacement part was purchased, and (d) the amount paid;
>
> •**The name of the Settling Defendant whose Settlement you are objecting to or commenting on;**
>
> •**The automotive part case that is the subject of your objection(s) or comments;**
>
> •The reasons you object to the Settlement, along with any supporting materials; and
>
> •Your signature.

(Emphasis added).  Although the Notice directed class members to identify component parts and Settling Defendants, it is beyond dispute that the Court received objections lacking this information.

The Court finds that the Notice satisfied Rule 23(e)(1), in that it informed the class members of the nature of the pending actions, the terms of the settlement, and how to proceed to get more information.  The Notice explained how to object to the settlement and how to request exclusion.  It informed members of their right to attend the hearing.  After careful review, the Court finds that the Notice was the best notice practicable, given the circumstances of this case in that it was "reasonably calculated" to inform Class Members of the existence of the action and how to raise any objections to the settlements.  UAW v General Motors Corp., 479 F.3d 615, 629 (6th Cir. 2007). To the extent Objectors assert the notice was inadequate because it was not published in the local press, the Court disagrees.  Class members are from thirty states and the District of Columbia.  National publications were used.

The Court concludes that the notice program satisfied both Rule 23 and due process.  Specifically, the members of the class who sought to object had adequate information to advance their objections.  Compare Shane Group, Inc. v. Blue Cross Blue Shield of Michigan, __ F.3d __, No. 15-1544/1551/1552, 2016 WL 3163073 (6th Cir. June 7, 2016)

### iii.  Miscellaneous Objections

The Court finds no basis for rejecting the settlements because class members are unable to estimate their individual recoveries.  See 3 Alba Conte& Herbert B. Newberg, Newberg on Class Actions,§ 8.32 (4th ed. 2002) (noting that "it is not necessary for the settlement distribution formula to specify precisely the amount that each class member may expect to recover").  Further, the Court received an Objection raising cy pres.  There is no provision in the Settlement for unclaimed funds to revert to

22

Settling Defendants.  Moreover, Settlement class members will have the right to be heard on any proposed plan of allocation.  Therefore, objections raising distribution are premature.

The remaining objections raise challenges to the attorneys fees requested by Class Counsel.  Because the Court has requested additional briefing on the issue of attorney fees, the Court declines to address those objections until after it has reviewed the supplemental filings.

### 6.  Risk of Fraud or Collusion

Courts presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion unless there is contrary evidence.  In re Packaged Ice, 2011 WL 717519, at *12; Sheick, 2010 WL 4136958, at *19-20.  Here, the parties have been engaged in adversarial litigation and contentious discovery.  The negotiations leading to the Settlements were conducted entirely at arm's length and often the agreements were reached only after many months of hard bargaining. The Settlements were negotiated in good faith with counsel on each side zealously representing the interests of their clients. (See Joint Decl.).

### 7.  Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult  and  unpredictable' and settlement conserves  judicial  resources."  In re Cardizem, 218 F.R.D. at 530 (quotation omitted).  Information giving rise to these Settlements has been in the public arena since February 2011, when the Department of Justice conducted its first raids, seeking information of anticompetitive conduct.  In light of the conduct at issue and

23

guilty pleas related to the claims here, there is no countervailing public interest that provides a reason to disapprove the Settlements.  Griffin v. Flagstar Bancorp, Inc., No. 2:10-cv-10610, 2013 WL 6511860, at *5 (E. D. Mich. Dec. 12, 2013).  This factor also supports final approval.

In addition to addressing the merits of the proposed Settlements, the Court must determine that the requirements for class certification under Rule 23(a) and (b) are met. In its preliminary approval orders, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of settlement only, Settlement Classes relating to the parties and parts covered by the Settlements.  It is well established that a class may be certified for purposes of settlement.  See, e.g., Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997); Int'l Union, 2006 WL 1984363, at *3, *18; In re Cardizem, 218 F.R.D. at 516-19.   The Settlements meet the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(2) and 23(b)(3) for settlement purposes.

## B.  The Settlement Classes Satisfy Rule 23(a).

To certify a class Rule 23(a) and one subsection of Rule 23(b) must be met.  In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 722  F.3d 838, 850-51 (6th Cir. 2013).  Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class."  Fed. R. Civ. Pro. 23(a)

24

The Court finds that each factor is met for the reasons summarized below.

### 1. Numerosity

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Here the Settlement Class includes millions of end-payors, geographically dispersed throughout the United States. The number and the geographical distribution throughout the United States makes joinder impracticable. Therefore, this factor is satisfied.

### 2. Commonality.

Next, a class action must implicate "questions of law or fact common to the class." Fed. R. Civ. Pro. 23(a)(2). "A certifiable class claim must arise out of the same legal or remedial theory," Patterson v. General Motors Corp., 631 F.2d 476, 481 (7th Cir.1980) (citation omitted), which can be satisfied if the class members' claims share "[a] common nucleus of operative fact," that is, some "common question. . .at the heart of the case," Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir.1992) (citation omitted).

Antitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual question about the existence, scope, and effect of the alleged conspiracy. These cases are no different. For example, an issue common to the Class is whether Settling Defendants engaged in a combination and conspiracy among themselves to fix, raise, maintain, or stabilizes the prices of component parts sold in the United States. The Court finds that the commonality requirement is met here.

### 3. Typicality

To satisfy the third prerequisite to class certification, "claims. . .of the

representative parties [must be] typical of the claims. . .of the class." Fed. R. Civ. Pro.

23(a)(3).  A proposed class representative can satisfy this prerequisite if his or her

claim "from the same event or practice or course of conduct that gives rise to the claims

of other class members."  Beattie v. Century Tel, Inc., 511 F.3d 554, 561 (6th Cir.

2007).  Here, typicality is satisfied because EPPs' injuries arise from the same wrong

that is allegedly injuring the class as a whole.  They all were victims of the same

conspiracy.

### 4.  Adequacy of Representation

To satisfy the fourth prerequisite for class-action status, the Court must find that

"the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. Pro. 23(a)(4).  This two-pronged inquiry, requires the Court to assess "the

adequacy of the named plaintiffs' representation of the class and requires that there be

no conflict between the interests of the representative and those of the class in general,

and the adequacy of class counsel's representation."  In re Ready-Mixed Concrete

Antitrust Litig., 261 F.R.D. at 154, 168 (S. D. Ind. 2009) (citation omitted).

The representatives share the same interests as other class members and will

fairly and adequately protect the interests of the class.  In addition, class counsel is

qualified, experienced and able to conduct the litigation.   Accordingly, the Court finds

that the Individual Plaintiffs are adequate class representatives and that their counsel

should be appointed to represent the class pursuant to Federal Rule of Civil Procedure

23(g).

### C.  The Settlement Classes Satisfy Rule 23(b)(3)

Because EPPs meet the requirements of Rule 23(a), the Court turns to the

26

additional requirement of Rule 23(b)(3)--that class plaintiffs demonstrate that common questions predominate over questions affecting only individual members and that class resolution is superior to other methods for the fair and efficient adjudication of the controversy.  Amchem Prods. v. Windsor, 521 U.S. 591, 615 (1997).  Horizontal price-fixing cases are well-suited for class certification because proof of a conspiracy presents a common, predominating question, In re Scrap Metal Antitrust Litig., 527 F.3d 517, 535 (6th Cir. 2008), that forms the basis from which all proposed Settlement Class Members' injuries arise.  An antitrust claim involves the existence of shared issues relative to the scope of the conspiracy, the market impact, the aggregate amount of damage suffered by the class as a result of the alleged antitrust violations and shared issues predominate over any individual questions.  Notably, the anticompetitive conduct is not dependent on the separate conduct of the individual Settlement Class Members.

Finally, a class action is the superior method to adjudicate these claims.  MDL litigation has been centralized in this Court.  The interest of Settlement Class Members in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism.  Therefore, for purposes of these Settlements, the Court finds that the prerequisites for a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure have been met.

## V.  CONCLUSION

For the reasons stated above, the Court hereby **CERTIFIES** the Settlement Classes for End-Payor Purchaser Plaintiffs.  **IT IS HEREBY ORDERED** that Cotchett, Pitre & McCarthy, L.L.P., Robin Kaplan, L.L.P., and Susman Godfrey, L.L.P. are

appointed class counsel.

Finally, the Court **GRANTS** Final Approval of the Settlements.

**IT IS SO ORDERED.**

June 20, 2016                                    s/Marianne O. Battani
                                                 MARIANNE O. BATTANI
                                                 United States District Judge


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on June 20, 2016.

                                                 s/ Kay Doaks
                                                 Case Manager