## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : : | Master File No. 2:12-md-02311 Honorable Marianne O. Battani |
| IN RE OCCUPANT SAFETY RESTRAINT SYSTEMS | : : : | Case No. 2:12-cv-00603 |
| THIS DOCUMENT RELATES TO: END-PAYOR ACTION | : : : : | |

## END-PAYOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH TRUSTEE OF THE REORGANIZED TK HOLDINGS TRUST AND PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that as soon as this motion may be heard before the Honorable Marianne O. Battani, End-Payor Plaintiffs ("EPPs") will and do hereby respectfully move the Court for an order preliminarily approving a proposed settlement between EPPs and Joseph J. Farnan, Jr., solely as Trustee of the Reorganized TK Holdings Trust, allowing EPPs a general unsecured non-priority claim in the amount of $53,200,000 under a Chapter 11 plan of reorganization and provisional certification of the proposed Settlement Class in the above-entitled action.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support thereof, all filings in this litigation, and such other arguments, as may be presented to the Court.

i

Date: January 7, 2019

Respectfully submitted,

*/s/ William V. Reiss*
Hollis Salzman
William V. Reiss
David B. Rochelson
Noelle Feigenbaum
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
WReiss@RobinsKaplan.com
DRochelson@RobinsKaplan.com
NFeigenbaum@RobinsKaplan.com

Adam J. Zapala
Elizabeth T. Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Floyd G. Short
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue
Suite 3800
Seattle, WA 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
fshort@susmangodfrey.com

Terrell W. Oxford
Chanler Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed End-Payor Plaintiff Class*

E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-Payor Plaintiff Class*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| | : | |
| IN RE AUTOMOTIVE PARTS | : | Master File No. 2:12-md-02311 |
| ANTITRUST LITIGATION | : | Honorable Marianne O. Battani |
| | : | |
| | : | Case No. 2:12-cv-00603 |
| IN RE OCCUPANT SAFETY | : | |
| RESTRAINT SYSTEMS | : | |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| END-PAYOR ACTION | : | |

**MEMORANDUM OF LAW IN SUPPORT OF END-PAYOR PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT
WITH TRUSTEE OF THE REORGANIZED TK HOLDINGS TRUST AND
<u>PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS</u>**

i

## STATEMENT OF ISSUES PRESENTED

1. Whether End-Payor Plaintiffs' ("EPPs") settlement with Joseph J. Farnan, Jr., solely as Trustee of the Reorganized TK Holdings Trust, embodied in the Settlement Agreement entered into on November 27, 2018 ("Settlement Agreement") and attached hereto as Exhibit 1, is fair, reasonable, and adequate, and should be preliminarily approved?

   Answer: Yes.

2. Whether the Court should provisionally certify the Settlement Class under Federal Rules of Civil Procedure ("Rules") 23(a) and (b)(3)?

   Answer: Yes.

3. Whether the Court should authorize End-Payor Plaintiffs to provide notice of the Settlement Agreement to Settlement Class members at a later date, in a form to be approved in advance by this Court?

   Answer: Yes.

4. Whether the Court should appoint Interim Co-Lead Class Counsel for the EPPs as Settlement Class Counsel for this settlement?[1]

   Answer: Yes.

---

[1] Unless otherwise defined, capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013)

*Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528 (E.D. Mich. 2013), *vacated*, Case No. 13-0113, 2014 U.S. App. LEXIS 4447 (6th Cir. Jan. 6, 2014), *reinstated in full*, Case No. 06-15601, 2014 U.S. Dist. LEXIS 29447 (E.D. Mich. Mar. 7, 2014)

*Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12, 2013)
*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*In re Corrugated Container Antitrust Litig.*, MDL 310, 1981 U.S. Dist. LEXIS 9687 (S.D. Tex. June 4, 1981)

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003)

*In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)

*Sheick v. Auto Component Carrier LCC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES PRESENTED ..................................................................... i

TABLE OF CONTENTS ......................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT .......... 4

ARGUMENT ........................................................................................................ 6

I.     The Court Should Grant Preliminary Approval Because The Proposed Settlement Falls Well Within the Range of Possible Approval ............................ 6

II.    The Court Should Grant Preliminary Approval Because the Proposed Settlement Satisfies the Requirements of Rule 23(e) and Sixth Circuit Precedent ................................................................................................... 8

      A.     The Class Representatives and Class Counsel Have Adequately Represented the Class (Rule 23(e)(2)(A)) ................................................. 10

      B.     The Settlement Agreement is the Result of Thorough Arm's-Length Negotiations (Rule 23(e)(2)(B)) and is Fair, Adequate and Reasonable in the Opinion of Highly Experienced Class Counsel (Sixth Circuit's Third Factor) ................................................................ 11

      C.     The Proposed Settlement Provides The Best Possible Relief for the Class ....................................................................................................... 13

            i.     The Proposed Settlement Achieves an Excellent Result for the Class, Particularly Given the "Costs, Risks and Delay of Trial and Appeal" (Rule 23(e)(2)(C)(i) and Sixth Circuit's First and Second Factors), and Treats Class Members Equitably (Rule 23(e)(2)(D)) ............................................. 13

            ii.     Class Counsel Proposes an Effective Method of Distributing Relief to the Class and Processing Class-Member Claims (Rule 23(e)(2)(C)(ii)) ........................................ 15

            iii.    The Settlement Does Not Propose An Award of Attorney's Fees At This Time (Rule 23(e)(2)(C)(iii)) .................................... 16

            iv.    EPPs Have Attached the Only Agreement in Connection With the Proposed Settlement (Rule 23(e)(2)(C)(iv)) .................. 17

III.    The Proposed Settlement Class Should Be Provisionally Certified Pursuant to Rule 23.................................................................................... 17

    A.    The Proposed Settlement Class Meets the Requirements of Rule 23(a).................................................................................. 18

        i.    The Proposed Settlement Class Is So Numerous That It Is Impracticable To Bring All Class Members Before the Court ..................................................................... 19

        ii.    End-Payor Plaintiff Class Representatives and the Proposed Settlement Class Share Common Legal and Factual Questions..................................................... 20

        iii.    End-Payor Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Class.............................................. 21

        iv.    Proposed Settlement Class Counsel and End-Payor Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Class ............................ 22

    B.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).......................................................................... 22

        i.    Common Questions of Law and Fact Predominate ..................... 23

        ii.    A Class Action is the Superior Method to Adjudicate These Claims. ............................................................... 25

IV.    Notice to the Settlement Class Members ............................................... 26

CONCLUSION................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agretti v. ANR Freight Sys., Inc.*,
   982 F.2d 242 (7th Cir. 1992) ...................................................6

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...............................................22, 23, 26

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013)...............................................18, 23

*Blades v. Monsanto Co.*,
   400 F.3d 562 (8th Cir. 2005) ...................................................24

*Bobbitt v. Acad. of Reporting*,
   Case No. 07-10742, 2009 U.S. Dist. LEXIS 62365 (E.D. Mich. Jul. 21, 2009) ......................7

*Bowers v. Windstream Ky. East, LLC*,
   Case No. 3:09-cv-440-H, 2013 U.S. Dist. LEXIS 157242 (W.D. Ky. Nov. 1,
   2013) ...................................................12

*Cason-Merenda v. VHS of Mich., Inc.*,
   296 F.R.D. 528 (E.D. Mich. 2013), *vacated*, Case No. 13-0113, 2014 U.S. App.
   LEXIS 4447 (6th Cir. Jan. 6, 2014), *reinstated in full*, Case No. 06-15601, 2014
   U.S. Dist. LEXIS 29447 (E.D. Mich. Mar. 7, 2014) ...................................18, 20, 21, 23

*Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*,
   803 F.2d 878 (6th Cir. 1986) ...................................................7

*Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007)...................................................24

*Date v. Sony Elecs., Inc.*,
   Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095 (E.D. Mich. July 31,
   2013) ...................................................20

*Golden v. City of Columbus*,
   404 F.3d 950 (6th Cir. 2005) ...................................................19

*Griffin v. Flagstar Bancorp, Inc.*,
   Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12,
   2013) ...................................................6, 20, 21

v

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018)......................16

*Hefler v. Wells Fargo & Co.*,
    No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045 (N.D. Cal. Dec. 17,
    2018) .............................................................................................................................8

*Hyland v. Homeservices of Am., Inc.*,
    Case No. 3:05-cv-612-R, 2008 U.S. Dist. LEXIS 90892 (W.D. Ky. Nov. 6,
    2008) ...........................................................................................................................19

*In re Aluminum Phosphide Antitrust Litig.*,
    160 F.R.D. 609 (D. Kan. 1995)...................................................................................20

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ...............................................................................19, 21

*In re Ampicillin Antitrust Litig.*,
    82 F.R.D. 652 (D.D.C. 1979).....................................................................................15

*In re Automotive Parts Antitrust Litigation*,
    Master File Case No. 2:12-md-02311 ..........................................................................1

*In re Blood Reagents Antitrust Litig.*,
    283 F.R.D. 222 (E.D. Pa. 2012), *vacated* 783 F.3d 183 (3d Cir. 2015), *class
    certification granted*, No. 09-2081, 2015 U.S. Dist. LEXIS 141909 (E.D. Pa.
    Oct. 19, 2015) ............................................................................................................24

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) .....................................................12, 13, 17, 25

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ...............................................................................10, 15

*In re Delphi Corp. Sec.*,
    248 F.R.D. 483 (E.D. Mich. 2008) .......................................................................14, 17

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    Case No. 02-md-1486, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006)...................20

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*,
    481 F.3d 1119 (9th Cir. 2007) ...................................................................................14

*In re Foundry Resins Antitrust Litig.*,
    242 F.R.D. 393 (S.D. Ohio 2007)..............................................10, 19, 21, 23, 24, 25, 26

*In re Packaged Ice Antitrust Litig.*,
  Case No. 08-md-01952, 2010 U.S. Dist. LEXIS 140235 (E.D. Mich. Sept. 2,
  2010) ...........................................................................................................................17

*In re Packaged Ice Antitrust Litig.*,
  Case No. 08-md-01952, 2010 U.S. Dist. LEXIS 77645 (E.D. Mich. Aug. 2,
  2010) .............................................................................................................................8

*In re Packaged Ice Antitrust Litig.*,
  Case No. 08-md-01952, 2011 U.S. Dist. LEXIS 150427 (E.D. Mich. Dec. 13,
  2011) ...........................................................................................................................13

*In re Packaged Ice Antitrust Litig.*,
  Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22,
  2011) .....................................................................................................6, 10, 13, 21, 22, 24

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MDL-01952, 2012 U.S. Dist. LEXIS 162459 (E.D. Mich. Nov. 13,
  2012) ...........................................................................................................................14

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003)........................................................................14

*In re Scrap Metal Antitrust Litig.*,
  527 F.3d 517 (6th Cir. 2008) ..........................................................................22, 23, 24

*In re Southeastern Milk Antitrust Litig.*,
  Case No. 2:09-md-1000, 2010 U.S. Dist. LEXIS 94223 (E.D. Tenn. Sept. 7,
  2010) .....................................................................................................................18, 19

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
  Case No. 1:01-cv-9000, 2001 U.S. Dist. LEXIS 26714 (E.D. Ohio Oct. 19,
  2001) ..........................................................................................................................7, 8

*In re: TK Holdings Inc.*,
  Case No. 17-11375 (Bankr. Del. Dec. 13, 2018), ECF No. 3514.........................3, 5

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
  219 F.R.D. 661 (D. Kan. 2004)...................................................................................25

*In re Uranium Antitrust Litig.*,
  617 F.2d 1248 (7th Cir. 1980) ....................................................................................15

*In re Urethane Antitrust Litig.*,
  251 F.R.D. 629 (D. Kan. 2008)...................................................................................24

*In re Vitamins Antitrust Litig.*,
  209 F.R.D. 251 (D.D.C. 2002).....................................................................................24

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)............................................................................14

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ...........................................................18, 20, 23, 24, 25

*Int'l Union, UAW v. Ford Motor Co.*,
    Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471 (E.D. Mich.
    July 13, 2006).........................................................................................7, 21

*IUE-CWA v. Gen. Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) ..................................................................6

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008).........................................................12

*Marcus v. Dep't of Revenue*,
    206 F.R.D. 509 (D. Kan. 2002).......................................................................11

*Miller v. Univ. of Cincinnati*,
    241 F.R.D. 285 (S.D. Ohio 2006) ..................................................................19

*Rankin v. Rots*,
    Case No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706 (E.D. Mich. June 28,
    2006) ...................................................................................................7

*Reed v. Advocate Health Care*,
    268 F.R.D. 573 (N.D. Ill. 2009)......................................................................24

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) .....................................................................14

*Sheick v. Auto Component Carrier LCC*,
    Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18,
    2010) ...................................................................................................11

*Stout v. J.D. Byrider*,
    228 F.3d 709 (6th Cir. 2000) .........................................................................21

*Thacker v. Chesapeake Appalachia, L.L.C.*,
    259 F.R.D. 262 (E.D. Ky. 2009)......................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)..................................................................................18

**Statutes**

United States Code Title 11 Chapter 11 ...........................................................2, 15

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ passim

**Other Authorities**

6A Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure
§ 1522 (2d ed. 1990) ...........................................................................................6

Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 13.45 (5th ed.
2014) § 13.45 ...................................................................................7, 8, 11, 13, 20

John M. Barkett, "The 2018 Amendments to the Federal Class Action Rule" ..............................9

Manual For Complex Litigation (Fourth) (2004) .................................................6, 7, 17

The End-Payor Plaintiffs ("EPPs"), on behalf of themselves and all others similarly situated, by and through the undersigned Interim Co-Lead Class Counsel, respectfully submit this memorandum in support of their motion seeking preliminary approval of a settlement with Joseph J. Farnan, Jr., solely as Trustee of the Reorganized TK Holdings Trust, and provisional certification of the proposed Settlement Class in the above-entitled action ("Action").

## PRELIMINARY STATEMENT

Occupant safety restraint systems are among the parts at issue in these coordinated multi-district proceedings, *In re Automotive Parts Antitrust Litigation* (the "MDL Litigation"), Master File Case No. 2:12-md-02311. For the purpose of the proposed settlement, the term "Occupant Safety Restraint Systems" ("OSS") has the meaning set forth in Paragraph 2 of EPPs' Third Amended Class Action Complaint ("Compl."), No. 2:15-cv-00603 (March 30, 2017), ECF No. 181. *See* Settlement Agreement ¶ 5. OSS are generally comprised of the parts in an automotive vehicle that protect drivers and passengers from bodily harm. Compl. ¶ 2. They include seat belts, air bags, steering wheels or steering systems, and safety electronic systems. *Id.*

The Complaint in the Action was brought against the following Defendants: Takata Holdings, Inc. ("TKH"); its parent, Takata Corporation; and others, including Autoliv, Inc., Autoliv ASP, Inc., Autoliv B.V. & Co. KG, Tokai Rika Co., Ltd., TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc., TRW Deutschland Holding GMBH, TRW Automotive Holdings Corp., Toyoda Gosei Co., Ltd., Toyoda Gosei North America Corp., and TG Missouri Corp., and unnamed coconspirators, manufacturers and/or suppliers of OSS globally and in the United States, for engaging in a long-running conspiracy to unlawfully fix, raise, maintain and/or stabilize prices, rig bids for and allocate the market and customers in the United States for OSS.  With this settlement, EPPs will have settled with all Defendants in the Action except Takata Corporation.

According to the United States Department of Justice ("DOJ"), Defendants' conspiracy successfully targeted the long-struggling United States automotive industry, raising prices for car manufacturers and consumers alike. TKH denied such allegations and asserted defenses thereto. EPPs' case and related antitrust actions were premised on, among other things, (a) Criminal Informations that were filed against Takata Corporation and others, and (b) plea agreements subsequently entered into by Takata Corporation, certain executives, and others.

On August 7, 2012, the Court appointed the undersigned firms as Interim Co-Lead Class Counsel and Interim Liaison Class Counsel for all End-Payor Plaintiffs' Actions in this Multi-District Litigation. No. 2311. *See* Case Management Order No. 3, Master File Case No. 2:12-md-2311, ECF No. 271. From the inception of these cases, Interim Co-Lead Class Counsel have represented the interests of the EPP classes, including overseeing and directing the prosecution and settlement of the claims brought against TKH. This proposed settlement is a result of those efforts.

On June 25, 2017, TKH—along with certain affiliated entities—filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Settlement Agreement at 2. On November 27, 2017, EPPs timely filed a proof of claim in the bankruptcy court, denoted as Claim No. 3611. *Id.* at 3. On February 21, 2018, the Bankruptcy Court entered an order confirming the *Fifth Amended Joint Chapter 11 Plan of Reorganization of TK Holdings and its Affiliated Debtors* (the "Plan"). *Id.* The Plan established a Trust for the purpose of reconciling certain claims, administering the trust assets and making distributions to the trust beneficiaries, all as provided for under the Plan. *Id.* On November 27, 2018, the Trustee (the "Trustee") of the Reorganized TK Holdings Trust (the "Trust") and EPPs, on behalf of themselves and a class of indirect purchasers of OSS, entered the Settlement Agreement. *Id.* at 1.

The Settlement Agreement allows EPPs' claim, Claim No. 3611, as a general unsecured non-priority claim in the amount of $53,200,000 under the Plan. Settlement Agreement ¶¶ 10, 18. On December 13, 2018, the Bankruptcy Court approved the Settlement Agreement. *In re: TK Holdings Inc.*, Case No. 17-11375 (BLS) (Bankr. Del. Dec. 13, 2018), ECF No. 3514. No appeal has been taken from the Bankruptcy Court's Order and the period to appeal has expired.

The allowed claim of $53,200,000 is a meaningful settlement and a significant achievement in this litigation. It is the result of extended arm's length negotiations; reflects the costs, risks and delay of continued litigation, particularly against a Defendant in bankruptcy; and treats all class members equitably. It bears noting that the Settlement Agreement provides that sales by TKH of OSS will remain in the Action for purposes of computing the treble damages claim against any Defendant with which EPPs do not reach a finally approved settlement or any new Defendant added to the Action in accordance with governing law and shall be part of any joint and several liability claims. Settlement Agreement ¶ 38. EPPs and the members of the proposed Settlement Class will retain their ability to recover from Takata Corp. and any future Defendant the entire amount of damages caused by the alleged conspiracy, even those attributable to TKH, less only the amount paid by the Trustee pursuant to the Settlement Agreement.

It is respectfully submitted that, for all the reasons set forth herein, the settlement with the Trustee is in the best interest of the proposed Settlement Class and merits the Court's preliminary approval. EPPs therefore request the entry of an Order:

1. Preliminarily approving the settlement;

2. Provisionally certifying the proposed Settlement Class;

3. Authorizing End-Payor Plaintiffs to provide notice of the Settlement Agreement to Settlement Class Members at a later date, in a form and manner to be approved in advance by this Court; and

4. Appointing Interim Co-Lead Class Counsel for EPPs as Settlement Class Counsel

3

for this settlement.

## THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT

The Settlement Agreement with the Trustee arises from extensive arm's length and good faith negotiations. Over the course of more than a year, EPPs' Interim Co-Lead Class Counsel participated in extensive negotiations with TKH and then the Trustee. EPPs also engaged in extensive informal discovery before entering into the settlement with the Trustee.

**Settlement Class**: The Settlement Agreement defines the Settlement Class as:

> All persons and entities that, from January 1, 2003, through the Execution Date, purchased or leased a new Vehicle[2] in the United States not for resale, which included one or more Occupant Safety Restraint Systems as a component part, or indirectly purchased one or more Occupant Safety Restraint Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Occupant Safety Restraint Systems directly or for resale.

Settlement Agreement ¶ 11.

**Settlement Amount**: Pursuant to the Settlement Agreement, EPPs' Claim No. 3611 is allowed as a general unsecured, non-priority claim in the amount of U.S. $53,200,000.00 under the Plan. *See id.* ¶¶ 10, 18.

**Distribution**: The Settlement Agreement provides that the Trust shall make distributions with respect to Claim No. 3611 at the same time and in the same manner as distributions are made to other holders of allowed Class 6 claims under the Plan. Settlement Agreement ¶ 19.

---

[2] "Vehicles" are defined in the Settlement Agreement as "new four-wheeled passenger automobiles, vans, sports utility vehicles, and crossover or pick-up trucks." *See* Settlement Agreement ¶ 14.

**Released Claims**: The Settlement Agreement releases only (i) TKH; (ii) the Trust; and (iii) each of TKH and the Trust's respective present and former principals, partners, officers, directors, supervisors, employees, agents, members, representatives, insurers, attorneys, heirs, executors, administrators, and assigns (including but not limited to the Trustee, the Trustee's representatives, attorneys, and financial advisors, and the Trust's Claims Oversight Committee and its individual members), each solely in their capacity as such. *Id.* ¶ 8. "Releasees" do not include Takata Corporation or any other defendant in the MDL Litigation other than TKH. *Id.*

The release does not include: (1) any claims made by direct purchasers of OSS; (2) any claims made by automotive dealerships that are indirect purchasers of OSS; (3) any claims made by any State, State agency, or instrumentality or political subdivision of a State as to government purchases and/or penalties; (4) claims involving any negligence, personal injury, property damage, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to OSS; (5) claims concerning any automotive part other than OSS; (6) claims under laws other than those of the United States relating to purchases of OSS made by any Releasor outside of the United States; and (7) claims under federal law or the state or local laws of any jurisdiction other than an Indirect Purchaser State. *Id.* ¶ 23. Releasors shall not, after the date of the Settlement Agreement, seek to establish liability against any Releasee as to, in whole or in part, any of the Released Claims unless the Settlement Agreement is terminated or not finally approved. *Id.* The Settlement Agreement also provides that sales shall remain in the Action against the remaining Defendant Takata Corporation, or any future Defendant, all of which remain jointly and severally liable for all damages caused by the conspiracy. *Id.* ¶ 38.

## ARGUMENT

The Settlement Agreement is not only fair, reasonable, and adequate—resulting from extensive arm's length negotiations by experienced counsel—but also a thoughtfully conceived resolution of the proposed Settlement Class's claims that maximizes its recovery.

**I.**     **The Court Should Grant Preliminary Approval Because The Proposed Settlement Falls Well Within the Range of Possible Approval**

It is well-established in the Sixth Circuit that there is an overriding public interest in settling and quieting litigation, particularly class actions. *See Griffin v. Flagstar Bancorp, Inc.*, Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *6 (E.D. Mich. Dec. 12, 2013) (citing *UAW v. Gen. Motors. Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions")); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). "This policy applies with equal force whether the settlement is partial, involving only some of the defendants, or complete." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255, at *44 (E.D. Mich. Feb. 22, 2011) ("*Packaged Ice*"); *see also Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions'" (quoting Manual For Complex Litigation (Second) § 30.46 (1986)). In fact, "settlement should be facilitated at as early a stage of the litigation as possible." 6A Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 1522, at 225-26 (2d ed. 1990) (citing 1983 Advisory Committee Notes); *see also* Manual For Complex Litigation (Fourth) § 13.12 (2004) ("Manual") ("[S]ettlement should be explored early in the case.").

Approval of a proposed class action settlement proceeds in two steps. First, the court grants preliminary approval to the settlement and provisionally certifies a settlement class. Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court

may grant final approval of the settlement. *See* Manual § 21.63; *see also Bobbitt v. Acad. of Reporting*, Case No. 07-10742, 2009 U.S. Dist. LEXIS 62365, at *1 (E.D. Mich. Jul. 21, 2009) (citing authorities).

A proposed settlement agreement should be preliminarily approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval." Manual § 30.41; *see also Int'l Union, UAW v. Ford Motor Co.*, Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471, at *11 (E.D. Mich. July 13, 2006). The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*, 803 F.2d 878, 880 (6th Cir. 1986). Because courts "prefer settlement to litigation . . . a court will presume that a proposed class action settlement is fair when certain factors are present, particularly evidence that the settlement is the product of arms-length negotiation, untainted by collusion." 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 13.45 (5th ed. 2014) ("Newberg") (collecting cases); *cf. Rankin v. Rots*, Case No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006) ("[T]he only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.") (internal quotation marks omitted).

In considering whether to grant preliminary approval, the court is not required to make a final determination of the adequacy of the settlement or to delve extensively into the merits of the settlement. *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, Case No. 1:01-cv-9000, 2001 U.S. Dist. LEXIS 26714, at *17 (E.D. Ohio Oct. 19, 2001) ("*Sulzer Hip*"). These inquiries

are reserved for the final approval stage of the class settlement approval process. Nor will any class member's substantive rights be prejudiced by preliminary approval because the court's "primary objective at that point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." Newberg § 13.10; *see also Sulzer Hip*, 2001 U.S. Dist. LEXIS 26714 at *17. Consequently, courts generally engage only in a limited inquiry to determine whether a proposed settlement falls within the range of possible approval and thus should be preliminarily approved. *Sulzer Hip*, 2001 U.S. Dist. LEXIS 26714, at *17–18 (preliminary approval may be based on "informal presentations" because of "substantial judicial processes that remain") (quoting Manual For Complex Litigation (Fourth) § 21.662 at p. 460 (2004)). *See also In re Packaged Ice Antitrust Litig.*, Case No. 08-md-01952, 2010 U.S. Dist. LEXIS 77645, at *35 (E.D. Mich. Aug. 2, 2010), (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (inquiry limited to settlement's potential for final approval and propriety of class notice and fairness hearing).

## II.     The Court Should Grant Preliminary Approval Because the Proposed Settlement Satisfies the Requirements of Rule 23(e) and Sixth Circuit Precedent

Effective December 2018, Rule 23(e) has been amended to codify the factors that affect whether a court should approve a class action settlement, including for a class that has not yet been certified.[3] Specifically, in the context of preliminary approval, the amendments direct interim class

---

[3] *See, e.g.*, Advisory Committee Notes at 28 ("The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate. Courts have generated lists of factors to shed light on this concern . . . . The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."); *see also Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *13-14 (N.D. Cal. Dec. 17, 2018) (quoting the Advisory Committee Notes to the 2018 amendments and stating that "the Court applies the framework set forth in Rule 23, while continuing to draw guidance from the [jurisdiction's] factors and relevant precedent").

counsel to provide the court with information sufficient to enable the court to determine that the settlement is fair, reasonable and adequate; that certification for purposes of settlement is warranted; and that notice is justified because the court will likely grant final approval to the settlement.[4] These amendments largely mirror current practice under applicable law. As discussed in more detail below, courts in the Sixth Circuit have applied similar principles as part of its analysis of preliminary approval motions for many years. All such factors weigh in favor of preliminary approval here.

According to the amendments to Rule 23, before authorizing EPPs to disseminate notice of the Settlement Agreement to the Settlement Class, EPPs must demonstrate "that the Court will likely be able to (i) approve the [Settlement Agreement] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the [Settlement Agreement]." Fed. R. Civ. P. 23(e)(1)(B). Under Rule 23(e)(2), a Court may only approve a settlement based on a finding that the proposed settlement is "fair, reasonable and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e). These factors overlap with the factors that courts in the Sixth Circuit have

---

[4] *See* John M. Barkett, "The 2018 Amendments to the Federal Class Action Rule," available at https://www.americanbar.org/content/dam/aba/administrative/litigation/materials/2017-2018/2018-sac/written-materials/miami-class-actions-amendments-to-the-federal-class.pdf.

considered on preliminary and final approval, which include:

> (1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement;
> (2) the complexity, expense and likely duration of the litigation;
> (3) the opinions of class counsel and class representatives;
> (4) the amount of discovery engaged in by the parties;
> (5) the reaction of absent class members;
> (6) the risk of fraud or collusion; and
> (7) the public interest.

*Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *46–47 (quotation marks and citations omitted). "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Id.*

A court is not required at the preliminary approval stage to determine whether it will ultimately approve the settlement, but only whether "the proposed settlement will *likely* earn final approval." *See* Adv. Comm. Note at 27 (emphasis added). As set forth in detail below, preliminary consideration of the Rule 23(e) factors and the Sixth Circuit factors support preliminary approval here.

### A. The Class Representatives and Class Counsel Have Adequately Represented the Class (Rule 23(e)(2)(A))

The Sixth Circuit has articulated two criteria for determining adequacy of representation: "'1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 407 (S.D. Ohio 2007) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). EPPs submit that there are no conflicts between them and the proposed Settlement Class because EPPs and members of the proposed Settlement Class: (i) purchased or leased in the United States Vehicles containing OSS; and/or (ii) indirectly purchased OSS as a replacement part and have the same interest in establishing liability. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir.

10

1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes" (internal quotation marks and citation omitted)).

There can be no doubt that the Class Representatives and Interim Co-Lead Class Counsel have vigorously prosecuted the interests of the class. Here, EPPs are represented by counsel with extensive experience in antitrust and class action litigation. The Court appointed Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel in this Action and the other automotive parts antitrust cases, *see* Case No. 2:12-md-02311, ECF No. 271, and has repeatedly appointed them as Settlement Class Counsel as well. Across all related actions in the *Auto Parts* MDL, Class Counsel have secured approximately $1.2 billion in settlements for the EPP class—a sum that, in the aggregate, is among the top three largest antitrust indirect purchaser settlements in history. They have vigorously prosecuted the class claims, and they will continue to do so through all phases of the litigation, including trial. *See generally Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation.").

### B.   The Settlement Agreement is the Result of Thorough Arm's-Length Negotiations (Rule 23(e)(2)(B)) and is Fair, Adequate and Reasonable in the Opinion of Highly Experienced Class Counsel (Sixth Circuit's Third Factor)

This settlement is entitled to "an initial presumption of fairness" because it is the result of arm's-length negotiations among experienced counsel. Newberg § 13.45. The judgment of proposed Settlement Class Counsel that the settlement is in the best interest of the proposed Settlement Class "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick v. Auto Component Carrier LCC*, Case No. 2:09-cv-14429, 2010 U.S. Dist.

LEXIS 110411, at *51 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 597); *see also Cardizem*, 218 F.R.D. at 525. Courts give great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of a settlement.

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) (quoting *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990)). The Settlement Agreement here is the result of lengthy and hard-fought negotiations between counsel experienced in complex antitrust and consumer class action litigation. The settlement was negotiated for months and involved multiple discussions between Interim Co-Lead Class Counsel and counsel for the Trustee.

Interim Co-Lead Class Counsel were well-informed about the facts and the strengths and weaknesses of the claims asserted when it negotiated the terms of the Settlement Agreement. Interim Co-Lead Class Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation and consulted with experienced economists before negotiating the Settlement Agreement. Moreover, these negotiations were adversarial and conducted in the utmost good faith. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *Bowers v. Windstream Ky. East, LLC*, Case No. 3:09-cv-440-H, 2013 U.S. Dist. LEXIS 157242, at *5 (W.D. Ky. Nov. 1, 2013). There is nothing in the course of the negotiations or the substance of the settlement that discloses grounds to doubt its fairness – "[w]here a class settlement has been reached . . . after arm's length negotiation,

12

conducted by capable counsel, it is presumptively fair." Manual § 21.662 at 464.[5]

    **C.**    **The Proposed Settlement Provides The Best Possible Relief for the Class**

        **i.**    **The Proposed Settlement Achieves an Excellent Result for the Class, Particularly Given the "Costs, Risks and Delay of Trial and Appeal" (Rule 23(e)(2)(C)(i) and Sixth Circuit's First and Second Factors), and Treats Class Members Equitably (Rule 23(e)(2)(D))**

Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, Case No. 08-md-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (quoting *Linerboard*, 292 F. Supp.2d at 639); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("*Cardizem*") ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex.").

Were this litigation to proceed, the Trust would assert various defenses with both the Bankruptcy Court and this Court, and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly with regard to damages, making the outcome uncertain for both parties. *See, e.g.*, *Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery" and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *53–54 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracy as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages").

---

[5] Thus, there is no "risk of fraud or collusion," the sixth factor in the Sixth Circuit analysis.

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial may be overturned on appeal. *See*, *e.g.*, *In re Farmers Ins. Exchange*, *Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant). Even if class members were willing to assume all of the litigation risks, the passage of time would introduce still more risk in terms of appeals and possible changes in the law that would, in light of the time value of money, make future recoveries less valuable. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Class than receiving the benefits of the proposed Settlement at this time").

The claims against the Trust are particularly uncertain given that TKH is in bankruptcy. This court has found that a defendant's bankruptcy creates "significant risk to any ultimate recovery" for the class. *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008); *see also In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2012 U.S. Dist. LEXIS 162459, at *39 (E.D. Mich. Nov. 13, 2012) (finding settlement with bankrupt defendant "falls within the range of reasonableness, fairness and adequacy required under Fed. R. Civ. P. 23" in light of, *inter alia*, "the multitude of factual and legal hurdles which are presented by [defendant's] recent bankruptcy").

Against this background, a settlement providing the substantial benefits afforded here

represents an excellent result for the members of the proposed Settlement Class. TKH's allowed claim of $53,200,000.00—which the Bankruptcy Court presiding over TKH's Chapter 11 proceeding has approved—provides for significant compensation to the proposed Settlement Class that will be available years earlier than would be the case if litigation against the Trust continued through trial and appeal.

The Settlement Agreement also specifically provides that it does not alter any other Defendant's joint and several liability for the full damages caused by the alleged conspiracy, including all sales made by TKH. *See* Settlement Agreement ¶ 38. In this regard, the Settlement Agreement is similar to one of the settlements approved in *Corrugated Container*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from the remaining Defendant, less the actual amount of the initial settlement. 1981 WL 2093, at *17; *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1262 (7th Cir. 1980); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability). Here, too, EPPs will be able to pursue their full damages against any future Defendant, with no diminution other than deduction of the actual settlement amount with the Trustee.

Finally, prior to the Court's holding a final approval hearing concerning this settlement, EPPs intend to submit for the Court's approval, a plan of allocation substantially identical to the plan the Court has approved on three previous occasions.  *See, e.g.*, *Wire Harness*, No. 2:12-cv-00103 (E.D. Mich.), ECF Nos. 537, 577, 628.

### ii.    Class Counsel Proposes an Effective Method of Distributing Relief to the Class and Processing Class-Member Claims (Rule 23(e)(2)(C)(ii))

Garden City Group ("GCG"), a premier provider of class action settlement administration services and the Court-appointed settlement administrator, has created an easy-to-use and intuitive

settlement website (www.autopartsclass.com) for claim submission.[6] The website includes a drop down menu that allows potential settlement class members to confirm whether they are eligible to recover as part of any of the *Auto Parts* settlements by inputting their Vehicle purchase information. The website provides answers to frequently asked questions, important deadlines, a list of defendants, and access to important documents, such as the long form notice and relevant Court filings. The website, which has been operational since October 12, 2015, is accessible 24 hours a day, seven days a week and has received nearly 2 million visitors. *See* Decl. of Brian A. Pinkerton, Case No. 2:12-cv-00130, ECF No. 607, ¶¶ 18–19. It also provides information that would allow potential class members to submit information via mail or toll-free telephone call. In short, "Class members need only submit a relatively simple claim form with basic questions about class membership." *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *19 (S.D. Ill. Dec. 13, 2018) (applying Rule 23(e)(2)(C)(ii) as amended and finding that the claim process weighs in favor of settlement approval). The procedure EPPs and GCG have worked together to create is "claimant-friendly, efficient, cost-effective, proportional and reasonable under the particular circumstances of this case." *Id.*

### iii.     The Settlement Does Not Propose An Award of Attorney's Fees At This Time (Rule 23(e)(2)(C)(iii))

Interim Co-Lead Class Counsel are not seeking a proposed award of attorney's fees at this time but expect to move for an award of attorney's fees in the future. The Court has on three previous occasions approved Interim Co-Lead Class Counsel's requests for fee awards, on each occasion finding that "[t]he award requested is within the range of fee awards made by courts in this Circuit." *See, e.g.*, Case No. 2:12-cv-00103, ECF No. 626 (Nov. 7, 2018) ¶ 8; ECF No. 578 (July 10, 2017) ¶ 8; and ECF No. 498 (June 20, 2016).  Interim Co-Lead Counsel will seek an

---

[6] In 2018, GCG was acquired by Epiq Global and is now known as Epiq.

attorneys' fee award of no more than 25% of the TKH Settlement Fund net of any reimbursement of expenses awarded by the Court in connection with this settlement.

              **iv.**    **EPPs Have Attached the Only Agreement in Connection With the Proposed Settlement (Rule 23(e)(2)(C)(iv))**

       EPPs have attached the Settlement Agreement entered into between the parties as Exhibit 1. There are no additional agreements between the parties concerning the settlement for which EPPs seek approval.[7]

**III.**    **The Proposed Settlement Class Should Be Provisionally Certified Pursuant to Rule 23.**

       The Manual notes the propriety of certifying a class solely for purposes of settlement, *see Manual* § 21.32, and courts in this Circuit routinely provisionally approve a proposed settlement class before deciding plaintiffs' motion for class certification. *See*, *e.g.*, *In re Delphi Corp. Sec. Derivatives & ERISA Litig.*, 248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008) (granting final approval to both ERISA and Securities settlement classes in a case involving a bankrupt defendant, noting the court's earlier, preliminary approval of the settlement classes granted prior to a hearing on defendants' motions to dismiss); *Cardizem*, 218 F.R.D. at 516-17, 530 (granting final approval of proposed settlement, noting its earlier preliminary approval of both the proposed settlement class and the proposed settlement agreement granted prior to class certification and prior to hearing on motions to dismiss). A court may grant provisional certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality

---

[7] The Sixth Circuit's Fifth Factor, "reaction of absent class members," is not yet relevant as the Court has not yet authorized notice of the Proposed Settlement. The Sixth Circuit's Seventh Factor, "the public interest," weighs in favor of approval for the reasons described above. *See supra*, § I. The Sixth Circuit's Fourth Factor, "the amount of discovery engaged in by the parties," weighs in favor of the settlement because EPPs have benefited from significant discovery in the *OSS* action, including but not limited to documents, informal cooperation and depositions. This discovery has informed the settlement and counsel's opinion that it is fair, reasonable and adequate.

and adequacy), as well as one of the three subsections of Rule 23(b). *See In re Packaged Ice Antitrust Litig.*, Case No. 08-md-01952, 2010 U.S. Dist. LEXIS 140235, at *27–28 (E.D. Mich. Sept. 2, 2010).

While in the context of a litigated class certification motion, a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), even in that context, "the requisite 'rigorous analysis' of the record and consideration of the merits must be focused on and limited to the question whether the Rule's requirements have been established." *Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528 (E.D. Mich. 2013), *vacated*, Case No. 13-0113, 2014 U.S. App. LEXIS 4447 (6th Cir. Jan. 6, 2014), *reinstated in full*, Case No. 06-15601, 2014 U.S. Dist. LEXIS 29447 (E.D. Mich. Mar. 7, 2014) (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013)). Permissible inquiry into the merits of plaintiffs' claims at the class certification stage is limited:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013) ("*Amgen*") (citing *Dukes*, 131 S. Ct. at 2552 n.6). "In other words, district courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Whirlpool*, 722 F.3d at 851-52 (internal quotation marks and citation omitted). Here, as demonstrated below, even under a "rigorous analysis," the requirements of Rule 23 are easily met.

### A.   The Proposed Settlement Class Meets the Requirements of Rule 23(a).

Horizontal price fixing class actions are routinely certified by courts in this District and elsewhere. EPPs' allegations of "a per se violation of the antitrust laws are exactly the kind of

allegations which may be proven on a class-wide basis through common proof." *In re Southeastern Milk Antitrust Litig.*, Case No. 2:09-md-1000, 2010 U.S. Dist. LEXIS 94223, at *35 (E.D. Tenn. Sept. 7, 2010). "Courts have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present." *Id.* at *33 (internal quotation marks and citations omitted). "As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment." *Foundry Resins*, 242 F.R.D. 393, 409 (S.D. Ohio 2007); *see also Hyland v. Homeservices of Am., Inc.*, Case No. 3:05-cv-612-R, 2008 U.S. Dist. LEXIS 90892, at *12 (W.D. Ky. Nov. 6, 2008).

### i.    The Proposed Settlement Class Is So Numerous That It Is Impracticable To Bring All Class Members Before the Court

No magic number is required to satisfy the numerosity requirement of Rule 23(a)(1). *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006). A class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Foundry Resins*, 242 F.R.D. at 403 (citing *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Here, the proposed Settlement Class consists of all persons and entities that, from January 1, 2003 through the Execution Date of the Settlement Agreement, purchased or leased a new Vehicle in the United States not for resale which included one or more OSS as a component part or indirectly purchased one or more OSS as a replacement part. *See* Settlement Agreement ¶ 11. Within this period, it is beyond dispute that millions of persons and entities throughout the United States have purchased or leased Vehicles containing OSS not for resale or indirectly purchased

OSS as a replacement part. As a result of the large number of putative class members and their geographic distribution throughout the United States, joinder is highly impracticable, if not impossible.

>    ii.    **End-Payor Plaintiff Class Representatives and the Proposed Settlement Class Share Common Legal and Factual Questions.**

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While Rule 23(a)(2) speaks of questions of law or fact in the plural, "there need be only one common question to certify a class." *Whirlpool*, 722 F.3d at 853; *see also Cason-Merenda*, 296 F.R.D. at 536 (one common question of law or fact is sufficient); *Griffin*, 2013 U.S. Dist. LEXIS 173702 (same); *Date v. Sony Elecs.*, *Inc.*, Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095, at *10 (E.D. Mich. July 31, 2013) (same).

This prerequisite is readily satisfied here because "[a]ntitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995). Thus, in price-fixing cases, courts "have consistently held that the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, Case No. 02-md-1486, 2006 U.S. Dist. LEXIS 39841, at *29 (N.D. Cal. June 5, 2006); *see also* Newberg § 3:10 at 278 (explaining that courts routinely define common questions of fact broadly, "such as 'did the defendants in fact collude in setting prices?'").

Here, EPPs contend that the following issues are common to the proposed Settlement Class:

- Whether the Defendants engaged in a combination and conspiracy among themselves to fix, raise, maintain, or stabilize the prices of OSS sold in the United States;

- Whether the Defendants engaged in a combination and conspiracy among themselves to rig bids quoted to customers of OSS sold in the United States;

- Whether the Defendants engaged in a combination and conspiracy to allocate customers and the markets for OSS sold in the United States;

- The duration of the illegal conspiracy; and

- Whether Defendants' conduct resulted in unlawful overcharges on the prices of OSS.

Any one of these substantive issues would, standing alone, establish the requisite commonality under Rule 23(a)(2).

### iii. End-Payor Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Class

Third, Rule 23(a) requires typicality of the class representatives' claims. *See* Fed. R. Civ. P. 23(a)(3). "The [typicality] requirement is not onerous," *Int'l Union*, *UAW v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *54, and courts liberally construe it. *See Foundry Resins*, 242 F.R.D. at 403. "In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violation by defendants." *Cason-Merenda*, 296 F.R.D. at 537 (quoting *Foundry Resins*, 242 F.R.D. at 405); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000); *In re Am. Med. Sys.*, 75 F.3d at 1082; *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40–41. "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 U.S. Dist. LEXIS 173702, at *17–18 (quotation marks and citation omitted); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40 (same).

Because the End-Payor Plaintiff Class Representatives and the members of the proposed Settlement Class believe they are all victims of the conspiracy to fix prices, rig bids, and allocate the market and customers for OSS, Rule 23(a)(3) is satisfied. *See Cason-Merenda*, 296 F.R.D. at

537 (finding typicality met where "the claims of the named Plaintiffs and those of the remaining members of the proposed class all arise from the same conspiracy and are based on the same theory of liability under the Sherman Act") (internal quotation marks and citation omitted)); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40–41 ("Because all Class Members' claims arise from . . . a conspiracy to allocate markets in violation of the Sherman Act, their claims are based on the same legal theory and the typicality requirement . . . is met.").

### iv. Proposed Settlement Class Counsel and End-Payor Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Class

The Proposed Settlement satisfies the requirement of Rule 23(a) that the representative parties "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), for the same reasons described above. *See* supra § II.A. The Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel in this Action and the other automotive parts antitrust cases, *see* Case No. 2:12-md-02311, ECF No. 271, and should appoint them as Settlement Class Counsel here as well.

### B. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem Prods.*, *Inc. v. Windsor*, 521 U.S. 591, 615 (1997); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (internal citations omitted).

### i.      Common Questions of Law and Fact Predominate

"Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *Whirlpool*, 722 F.3d at 859. Instead, "'[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position.'" *Foundry Resins*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001)). Common questions need only predominate; they need not be dispositive of the litigation. *Id*. (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)); *cf. In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535-36 (holding issues regarding the amount of damages do not destroy predominance). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda*, 296 F.R.D. at 535-36 (quoting *Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007)). As pertinent to the EPPs' request here to provisionally certify the proposed Settlement Class under Rule 23(b)(3), the Supreme Court instructed that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 133 S. Ct. at 1191.

Because the EPPs allege conduct that injured the members of the proposed Settlement Class, issues common to the members of the proposed Settlement Class—for example, the existence and scope of the alleged price-fixing conspiracy among Defendants and the market impact of Defendants' conspiracy—predominate over any individual questions, and therefore class treatment of the claims is appropriate for purposes of this settlement. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws.");

*see also In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 254 (D.D.C. 2002) ("[A]s a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions[.]") (quoting Newberg § 18.28 at 18–98 (3d ed. 1992)). This Circuit has also held that "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws, because proof of the conspiracy is a common question that is thought to predominate over the other issues of the case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535 (quoting *Amchem*, 521 U.S. at 625).[8] Furthermore, here the evidence that will prove a violation as to one Settlement Class Member is common to the others and will be sufficient to prove it as to all—the anticompetitive conduct is not dependent on the separate conduct of the individual members of the proposed Settlement Class. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *43.

This is true even if there are individual state law issues, as long as the common issues still outweigh the individual ones; *e.g.*, as long as a common theory can be alleged as to liability and impact that can be pursued by the class. *See, e.g.*, *Whirlpool*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members" (internal quotation marks and citation omitted)); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability, fact that damages calculation may involve individualized issues does not defeat predominance). Issues common to the proposed Settlement Class predominate in this case. These

---

[8] Other courts have recognized that the existence and scope of an alleged antitrust conspiracy are matters susceptible to class-wide proof, and thus tend to support a finding that common issues predominate over individual ones as to at least the first element of an antitrust conspiracy claim. *See, e.g.*, *Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007); *Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005); *In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222, 234 (E.D. Pa. 2012), *vacated* 783 F.3d 183 (3d Cir. 2015), *class certification granted* No. 09-2081, 2015 U.S. Dist. LEXIS 141909 (E.D. Pa. Oct. 19, 2015); *Reed v. Advocate Health Care*, 268 F.R.D. 573, 581 (N.D. Ill. 2009); *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 634 (D. Kan. 2008); *Foundry Resins*, 242 F.R.D. at 408.

common issues of liability and impact predominate over any individual issues and strongly support

provisional certification of the proposed Settlement Class.

### ii.    A Class Action is the Superior Method to Adjudicate These Claims.

Rule 23(b)(3) also requires that a class action be superior to other available methods of

fairly adjudicating the controversy. The superiority of class certification over other available

methods is measured by consideration of certain factors, including: the class members' interests

in controlling the prosecution of individual actions; the extent and nature of any litigation

concerning the controversy already begun by or against class members; the desirability of

concentrating the litigation of various claims in the particular forum; and the likely difficulties in

managing a class action. Rule 23(b)(3); *see Whirlpool*, 722 F.3d at 861.

Courts consistently hold that class actions are a superior method of resolving antitrust

claims like those alleged here. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219

F.R.D. 661, 678 (D. Kan. 2004) (noting that individual litigation of antitrust claims would be

"grossly inefficient, costly, and time consuming"). Here, the interests of the members of the

proposed Settlement Class in individually controlling the prosecution of separate claims are

outweighed by the efficiency of the class mechanism. *Cardizem*, 200 F.R.D. at 325–26 (finding

that class action is superior because it ensures fair and efficient adjudication). Untold numbers of

members of the proposed Settlement Class purchased or leased new Vehicles containing OSS as a

component part or indirectly purchased OSS as a replacement part for a Vehicle during the

settlement class period; resolving these claims in the context of a class action would conserve both

judicial and private resources and would hasten the class members' recovery. *See, e.g.*, *Foundry*

*Resins*, 242 F.R.D. at 411-12 ("Repeatedly litigating the same issues in individual suits would

produce duplicate efforts, unnecessarily increase litigation costs, impose an unwarranted burden on this Court and other courts, and create a risk of inconsistent results").[9]

**IV.** **Notice to the Settlement Class Members**

Because it would be most cost-effective and efficient to disseminate notice of this settlement together with notice of other settlements reached by EPPs and Defendants in the *Auto Parts Litigation*, the parties have agreed to defer dissemination of notice. As set forth in the Settlement Agreement, "End-Payor Plaintiffs, at a time to be decided in their sole discretion, shall submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Settlement Class Members identified by End-Payor Plaintiffs ('Notice Motion')." Settlement Agreement ¶ 17. "The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice." *Id.* Accordingly, with the Court's permission, proposed Settlement Class Counsel will submit a Notice Motion at a later date.

**CONCLUSION**

For the foregoing reasons, EPPs respectfully request that the motion for preliminary approval be granted and that the Court enter the accompanying Proposed Order:

1. Preliminarily approving the Settlement Agreement;

2. Provisionally certifying the proposed Settlement Class;

3. Authorizing End-Payor Plaintiffs to provide notice of the Settlement Agreement to Settlement Class members at a later date, in a form to be approved in advance by this Court; and

4. Appointing Interim Co-Lead Class Counsel for the EPPs as Settlement Class Counsel for this settlement.

---

[9] Another criterion of Rule 23(b)(3) is manageability.  The Supreme Court has made clear that manageability need not be considered where, as here, a class is being certified for settlement purposes. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

Date: January 7, 2019             Respectfully submitted,

*/s/ William V. Reiss*

Hollis Salzman
William V. Reiss
David B. Rochelson
Noelle Feigenbaum
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
WReiss@RobinsKaplan.com
DRochelson@RobinsKaplan.com
NFeigenbaum@RobinsKaplan.com

Adam J. Zapala
Elizabeth T. Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Floyd G. Short
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue
Suite 3800
Seattle, WA 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
fshort@susmangodfrey.com

Terrell W. Oxford
Chanler Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed End-Payor Plaintiff Class*

E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-Payor Plaintiff Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ William V. Reiss*
William V. Reiss
