# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | No. 12-md-02311<br>Hon. Sean F. Cox |
| In Re: Heater Control Panels | : | Case No. 2:12-cv-00403 |
| In Re: Occupant Safety Systems | : | Case No. 2:12-cv-00603 |
| In Re: Switches | : | Case No. 2:13-cv-01303 |
| In Re: Ignition Coils | : | Case No. 2:13-cv-01403 |
| In Re: Steering Angle Sensors | : | Case No. 2:13-cv-01603 |
| In Re: Electric Powered Steering Assemblies | : | Case No. 2:13-cv-01903 |
| In Re: Fuel Injection Systems | : | Case No. 2:13-cv-02203 |
| In Re: Valve Timing Control Devices | : | Case No. 2:13-cv-02503 |
| In Re: Air Conditioning Systems | : | Case No. 2:13-cv-02703 |
| In Re: Automotive Constant Velocity Joint Boot Products | : | Case No. 2:14-cv-02903 |
| In Re: Automotive Hoses | : | Case No. 2:15-cv-03203 |
| In Re: Shock Absorbers | : | Case No. 2:15-cv-03303 |
| In Re: Body Sealing Products | : | Case No. 2:16-cv-03403 |
| In Re: Interior Trim Products | : | Case No. 2:16-cv-03503 |
| In Re: Automotive Brake Hoses | : | Case No. 2:16-cv-03603 |
| In Re: Exhaust Systems | : | Case No. 2:16-cv-03703 |
| In Re: Ceramic Substrates | : | Case No. 2:16-cv-03803 |
| In Re: Power Window Switches | : | Case No. 2:16-cv-03903 |
| In Re: Automotive Steel Tubes | : | Case No. 2:16-cv-04003 |
| In Re: Side-Door Latches | : : : | Case No. 2:17-cv-04303 |
| THIS DOCUMENT RELATES TO:<br>End-Payor Actions | : : | |

## ORDER GRANTING FINAL APPROVAL
## OF THE ROUND 4 SETTLEMENTS

End-Payor Plaintiffs ("EPPs") have moved the Court for final approval of settlements reached with certain defendants described below and previously moved the Court for approval of the Plan of Allocation of the settlements described below. Pursuant to notice given to the Settlement Classes in accordance with the Court's orders, a hearing by video conference was held on EPPs' motions on September 17, 2020, and at the conclusion of the hearing, based on the showing made by EPPs and the entire record of these proceedings, and in light of the fact that no objections were made to the settlements and there are no pending objections to the Plan of Allocation of the settlements, the Court granted EPPs' motion.[1] For the reasons stated by the Court at the telephonic hearing and as provided in this Order, the Court finds the settlements provide an excellent result for each of the Settlement Classes in light of, among other factors, the substantial risks of continued litigation and that each of the settlements is fair, reasonable, and adequate to the respective Settlement Classes. Although described collectively in this Order for purposes of administrative convenience, each settlement is independent of the others and this Order applies separately to each of the settlements. This Order will accordingly be separately entered as an order in each specific case docket to which it applies.

## I.  BACKGROUND

These actions arise from alleged conspiracies amongst the automotive industry's largest manufacturers, marketers, and sellers of numerous of automotive parts to fix the prices, rig bids, and allocate the markets and customers in the United States for their products. EPPs assert claims for relief under the Sherman Antitrust Act, 15 U.S.C. § 1, and various state antitrust, unjust enrichment, and consumer protection laws.

---

[1] Defined terms not otherwise defined herein shall have the meanings ascribed to those terms as noted in End-Payor Plaintiffs' Motion for Orders Granting Final Approval of the Round 4 Settlements and the papers associated with that motion.

The Court preliminarily approved each of the settlements (referred to herein as the "Round 4 Settlements") in separate orders of the Court. The Round 4 Settlements were reached with seventeen defendants and their affiliates (collectively, the "Settling Defendants") named in twenty-one cases involving different automotive parts (the "Settled Parts"). The Settling Defendants are: (1) Brose SchlieBsysteme GmbH & Co. Kommanditgesellschaft and Brose North America (collectively, "Brose"); (2) Corning International Kabushiki Kaisha and Corning Incorporated (collectively, "Corning"); (3) Delphi Technologies PLC, and Delphi Powertrain Systems, LLC (together, "Delphi"); (4) Green Tokai Co., Ltd. ("Green Tokai"); (5) Keihin Corporation and Keihin North America, Inc. (collectively, "Keihin"); (6) KYB Corporation (f/k/a Kayaba Industry Co., Ltd.) and KYB Americas Corporation (collectively, "KYB"); (7) Maruyasu Industries, Co., Ltd. and Curtis-Maruyasu America, Inc. (collectively, "Maruyasu"); (8) Meritor, Inc. f/k/a ArvinMeritor, Inc. ("Meritor"); (9) Mikuni Corporation ("Mikuni"); (10) Mitsubishi Heavy Industries, Ltd. and Mitsubishi Heavy Industries Climate Control, Inc. (collectively, "Mitsubishi Heavy"); (11) Panasonic Corporation ("Panasonic"); (12) Sanoh Industrial Co., Ltd. and Sanoh America, Inc. (collectively, "Sanoh"); (13) Showa Corporation and American Showa, Inc. (collectively, "Showa"); (14) Reorganized TK Holdings Trust ("TKH"); (15) Tokai Rika, Co. Ltd. and TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. (collectively, "Tokai Rika"); (16) Toyo Denso Co., Ltd. and Weastec, Inc. (collectively, "Toyo Denso"); and (17) Toyoda Gosei Co., Ltd., Toyoda Gosei North America Corp., TG Missouri Corp., TG Kentucky, LLC, TG Missouri Corp., and TG Fluid Systems USA Corp. (collectively, "Toyoda Gosei").

These settlements collectively make available approximately $183,958,000 million in cash for the benefit of the Settlement Classes (excluding the settlement with TKH Holding).[2] Those

---

[2] Pursuant to a settlement with the Reorganized TK Holdings Trust ("TKH") in its bankruptcy proceeding, Co-Lead Counsel have secured a $53,200,000 authorized claim against TKH, but they

classes are comprised of persons and entities who, at any time during the last ten or more years, depending on the terms of the respective Settlement Agreements, purchased or leased a new vehicle[3] in the United States not for resale that included at least one of the Settled Parts, or indirectly purchased one or more of the Settled Parts as a replacement part, which were manufactured or sold by a Defendant, any current or former parent, subsidiary, or affiliate of a Defendant or any named co-conspirator of a Defendant. Further, the Round 4 Settling Defendants must provide significant cooperation to the EPPs in the continued prosecution of EPPs' claims against the non-settling defendants. The settlements also provide that, with certain exceptions, the Round 4 Settling Defendants will not engage for a period of two years in certain specified conduct that would violate the antitrust laws involving the automotive parts that are at issue in these lawsuits.

### A.     Settlement Amounts

The following chart summarizes the Round 4 Settlements, and identifies the respective Round 4 Settling Defendants, Settled Parts cases, and settlement amounts.

| Auto Parts Round 4 Settlements and Settlement Funds | | |
| --- | --- | --- |
| **Round 4 Settling Defendant** | **Automotive Parts Case** | **Settlement Fund** |
| Brose | Side-Door Latches | $2,280,000.00 |
| Corning | Ceramic Substrates | $26,600,000.00 |
| Delphi | Ignition Coils | $760,000 |
| Green Tokai | Body Sealing Products | $950,000.00 |
| Keihin | Fuel Injection Systems | $836,000.00 |

expect to receive only a small fraction of this amount for distribution to the classes. Because the ultimate settlement amount in connection with the TKH settlement remains undetermined at this time, this figure was not included in Co-Lead Counsel's calculation of the Round 4 settlement proceeds. TKH is also the only Settling Defendant which is not required to provide cooperation under its settlement agreement.

[3] In general, the vehicles in question include four-wheeled passenger automobiles, cars, light trucks, pickup trucks, crossovers, vans, mini-vans, and sport utility vehicles (collectively, "Vehicles").

| Auto Parts Round 4 Settlements and Settlement Funds | | |
|---|---|---|
| **Round 4 Settling Defendant** | **Automotive Parts Case** | **Settlement Fund** |
| KYB | Shock Absorbers | $28,880,000.00 |
| Maruyasu | Fuel Injection Systems | $108,699.85 |
| | Automotive Steel Tubes | $5,211,300.15 |
| Meritor | Exhaust Systems | $760,000.00 |
| Mikuni | Fuel Injection Systems | $2,675,200.00 |
| | Valve Timing Control Devices | $668,800.00 |
| Mitsubishi Heavy | Air Conditioning Systems | $6,840,000.00 |
| Panasonic | Air Conditioning Systems | $760,000.00 |
| Sanoh | Automotive Steel Tubes | $8,360,000.00 |
| Showa | Electric Powered Steering Assemblies | $4,133,735.39 |
| | Shock Absorbers | $9,926,264.61 |
| Tokai Rika | Heater Control Panels | $1,366,578.08 |
| | Switches | $3,410,260.64 |
| | Steering Angle Sensors | $677,714.01 |
| | Occupant Safety Systems | $28,745,447.27 |
| Toyo Denso | Ignition Coils | $760,000.00 |
| | Power Window Switches | $4,408,000.00 |
| Toyoda Gosei | Occupant Safety Systems | $5,797,725.14 |
| | Automotive Constant Velocity Joint Boot Products | $716,505.10 |
| | Automotive Hoses | $5,428,166.52 |
| | Body Sealing Products | $27,148,653.36 |
| | Interior Trim Products | $5,089,493.68 |
| | Automotive Brake Hoses | $659,456.20 |
| | **Total (Excluding TKH)** | **$183,958,000.00** |

As part of the settlement negotiations, EPPs' co-lead counsel considered several factors, including the evidence regarding Settling Defendants' alleged conduct and the estimated dollar amount of commerce affected by that conduct, including the volume of commerce data used in calculating the amount of criminal fines imposed on certain of the defendants; information from parties and non-parties, and their consulting experts concerning impact, the overcharges, and passthrough rates; their knowledge about potential recoveries that might be available in this litigation obtained through many years of experience in litigating and settling antitrust class

actions; and academic studies on these subjects, and they also considered the value of the other settlement terms, including the value of discovery cooperation offered by the Settling Defendants.

### B.     Cooperation and Other Terms

Under the terms of the settlements, the Settling Defendants must provide cooperation to the EPPs. Specifically, they must (1) produce documents and data relevant to the ongoing claims of EPPs against the non-settling defendants, to the extent they have not already done so; (2) provide attorney proffers; (3) make witnesses available for interviews, depositions, and trial; (4) provide assistance in understanding certain data and other information produced to EPPs; and (5) facilitate the use of the data and information at trial. Further, with certain exceptions, the Round 4 Settling Defendants have agreed not to engage in certain specified conduct for a period of two years that would violate the antitrust laws involving the Settled Parts.

In exchange for the settlement payments and cooperation, EPPs and members of the respective Settlement Classes will release the "Released Claims" against the Round 4 Settling Defendants. The Settlement Agreements will not affect other current or future defendants' joint and several liability for the Round 4 Settling Defendants' alleged wrongdoing. The Round 4 Settling Defendants' sales remain in their respective cases. Non-settling defendants, with the exception of those that are ultimately determined to be entitled to the reduced liability provisions of the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"), Pub. L. No. 108–237, 118 Stat. 237, 661, 665 (2004), *as amended*, remain jointly and severally liable for treble damages applicable to the sales of all of the co-conspirators, less only the amounts paid in settlement. Consequently, the Settlement Agreements will not limit the Settlement Classes' right to recover the full amount of the damages available under the law from any non-settling defendants remaining in particular cases against whom EPPs continue to prosecute their claims.

C.       **Notice Plan**

In these cases, the Round 4 Settlements provide substantial cash benefits to consumers and other class members, who purchased or leased new Vehicles, not for resale, containing the automotive parts subject to the settlements, or who indirectly purchased one or more of those automotive parts as a replacement part. The Round 4 Settlements identify those jurisdictions that allow EPPs, who are indirect purchasers, to seek money damages or restitution, namely, Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (the "EPP States"). EPPs, through EPPs' class action notice provider, Kinsella Media, LLC ("Kinsella"), implemented a class notice program utilizing paid and earned media. *See, e.g.*, Declaration of Shannon R. Wheatman, Ph.D., on Implementation of the July 2019 Notice Program ("Wheatman Decl."), 2:16-cv-03703-MOB-MKM, ECF No. 171-3. Notice was published in *People*, *Sports Illustrated*, *Time*, and online media efforts through banner advertisements on outlets like Facebook/Instagram. *Id.* ¶¶ 14 & 15. The July 2019 Notice Program was effective, reaching an estimated 70.1% of new Vehicle owners or lessees, with an average frequency of 2.3 times. *Id.* ¶ 18. The earned media component of this notice program included a multimedia news release that distributed six unique stories. *Id.* ¶ 26. Kinsella also registered sponsored keywords and phrases (*e.g.*, "Auto Parts Settlement") with all major search engines, including Google AdWords, Bing Microsoft Advertising, and their search partners. *Id.* ¶ 27. Members of the Settlement Classes are able to contact a toll-free helpline or register online at the settlement website, www.AutoPartsClass.com. *Id.* ¶ 28. The website provides answers to frequently asked questions, deadlines, a list of the

Settling Defendants, court filings, and the long form notice. The website has been operational since October 12, 2015, and is accessible 24 hours a day, seven days a week.

In addition, the Supplemental Notice Program, which began in early January 2020, further increased the audience of the class notice and extended the claims deadline, allowing more individuals and entities to be exposed to notice and file claims. As part of the Supplemental Notice Program, Kinsella and Epiq, the Court-appointed claims administrator, published advertisements targeted to those located in non-damages states and who previously visited the settlement website; emailed those (or mailed a postcard to those) who began a claim form but did not finish it; mailed postcards to fleet purchasers; emailed or mailed postcards to those who previously registered or filed a claim on the settlement website (www.autopartsclass.com); and emailed, called, or mailed all third-party filers and fleet purchasers who filed a claim and, to the extent practicable, all those who inquired with Epiq about whether the place of purchase, residence, and/or principal place of business were relevant criteria in determining eligibility. Declaration of Shannon R. Wheatman, Ph.D. on Supplemental Notice Program, ¶¶ 9-19, dated December 9, 2019. That effort concluded successfully. *See, e.g.*, Declaration of Shannon R. Wheatman, Ph.D. on Implementation of the Supplemental Notice Program, ¶¶ 9-18; *see also* Declaration of Brian A Pinkerton Regarding Dissemination of Supplemental Notice and Settlement Administration, ¶¶ 36-41. In addition, the Claims deadline was extended once again until June 18, 2020, and notice of that extension was provided. *Auto Parts*, No. 2:12-md-02311-MOB-MKM, ECF No. 2044.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 23(e) governs class action settlements, and under the rule, "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Moreover, when a proposed

settlement binds class members, the court may approve it "on a finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e)(2); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14 (E.D. Mich. Oct. 18, 2010); *see also In re Packaged Ice Antitrust Litig.*, No. 08-MD-1952, 2011 WL 717519, at *8 (E. D. Mich. Feb. 22, 2011). Approval involves a three-step process: "(1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In Re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)); *In re Packaged Ice Antitrust Litig.*, No. 2:08-md-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). In the third step, the court assesses whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Vukovich*, 720 F.2d at 921-23).

This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted); *Sheick,* 2010 WL 4136958, at *14-15.

In exercising its discretion, the Court gives deference to the view of experienced counsel as to the merits of an arm's-length settlement. *Dick v. Spring Commc'ns*, 297 F.R.D. 283, 297 (W.D. Ky. 2014). Because a settlement represents an exercise of judgment by the negotiating parties, a judge reviewing a settlement will not "substitute his or her judgment for that of the litigants and their counsel," *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006) (citation omitted), or "decide the merits of the case or resolve unsettled legal questions."

*Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). Because the purpose of settlement is to avoid the determination of contested issues, the approval process is not simply an abbreviated trial on the merits. *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). Because of the uncertainties and risks inherent in any litigation, courts take a common sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick*, 2010 WL 4136958, at *15 (citation omitted). A court considering whether to approve a settlement should be mindful that a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co*., No. 2:05-cv-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted).

## III.   ANALYSIS

At the outset, the Court observes that courts within the Sixth Circuit "have recognized that the law favors the settlement of class action lawsuits." *Griffin v. Flagstar Bancorp, Inc*., No. 2:10cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013); *see also In re Packaged Ice*, 2011 WL 717519, at *7; *UAW v. General Motors Corp*., 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions). "Given that class settlements are favored, the role of the district court is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *IUE–CWA*, 238 F.R.D. at 594 (internal quotation marks and citations omitted).

### A.   Factors Governing Final Approval

The Round 4 Settlements meet the criteria required for final approval under Rule 23. They provide meaningful benefits and were reached as a result of arm's-length negotiations conducted

in good faith by experienced counsel for EPPs and Settling Defendants, who were knowledgeable about EPPs' claims and the defenses that might be asserted to those claims. The settlements reflect a reasonable compromise in light of the liability, damages, and uncertainties of continued litigation facing both EPPs and Settling Defendants.

Here, the Court has considered a number of factors in reaching its conclusion that the settlements should be granted final approval, including those factors required by Rule 23(e)(2): (1) that the class representatives and class counsel have adequately represented the class; (2) that the proposal was negotiated at arm's-length; (3) that the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (4) that the proposal treats class members equitably relative to each other. The Court finds all of these factors satisfied and specifically notes that no agreements were made in connection with this proposal that affect the fairness of the settlement.[4] *Gutierrez-Bejar v. SOS Int'l, LLC*, 2019 WL 5683901, at *7 (C.D. Cal. Nov. 1, 2019) (noting that the amendment of Rule 23 was designed to "focus the court and the lawyers on the core concerns of the fairness inquiry" (citing the Advisory Committee Comments to 2018 Amendments to Rule 23)); *see also* Manual Complex Lit. § 21.631 (4th ed.) ("The spirit of Rule 23(e)(2) is to compel identification of any agreement or understanding that might have affected the interests of class members by altering what they may be receiving or foregoing.").

---

[4] The Court notes that objections to the Plan of Allocation were withdrawn pursuant to agreements reached with Settlement Class Counsel to modify the Plan of Allocation to include the states of the place of purchase as an additional criterion for purchases to qualify for the submission of claims to share in the proceeds of the settlements.

The Court has also considered the following other factors: the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; the complexity, expense, and likely duration of further litigation; the opinions of class counsel and class representatives; the amount of discovery engaged in by the parties; the reaction of absent class members the risk of fraud or collusion; and the public interest. *In re Packaged Ice*, 2011 WL 717519, at *8. No one factor is determinative; each is discussed below, under *Likelihood of Success on the Merits.*

### 1. *Likelihood of Success on the Merits*

Courts assess class action settlements "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, at *15 (quoting IUE-CWA, 238 F.R.D. at 594); *Int'l Union*, 2006 WL 1984363, at *21. When the interests of the class as a whole are better served by settlement, the standard is met. *Sheick*, 2010 WL 4136958, at *16 (citing IUE-CWA, 238 F.R.D. at 595).

Even though certain of the Settling Defendants pled guilty in criminal proceedings brought by the United States Department of Justice ("DOJ") to the very conduct alleged by EPPs in their complaints and EPPs believe that they will prevail in the respective actions, the Court recognizes that EPPs' success is not assured. EPPs must prove several critical issues unique to Defendants' actions that the DOJ did not, including, but not limited to, (1) the amount of any overcharges resulting from the alleged conspiracies, (2) the nature and impact of the economic and business relationships between parties occupying different places in the chain of distribution and the relationship of defendants' sales to original equipment manufacturers ("OEMs"), OEMs' sales to automobile dealers, and dealers' automobile sales to end-users, (3) the pass-through of

overcharges, and (4) class-wide impact and the standing to sue of indirect purchasers. The resolution of these issues will turn in large measure on a battle of experts—at great cost and at great risk to the class members' chances of success. EPPs must show they suffered damages as a result of the defendants' conduct, and given the nature of the automobile industry, the damages methodologies advanced by the parties are expected to vary greatly. In addition, EPPs' cases are also significantly broader than the government's cases, including claims against some defendants that did not plead guilty and involving time periods broader than the ones set forth in indictments or guilty pleas that resulted from the government's investigation. Moreover, absent the Round 4 Settlements, the Round 4 Settling Defendants would oppose EPPs' motions for class certification, move for summary judgment on numerous issues, and raise defenses to EPPs' claims at trial, should the actions proceed to those states of the case. Indeed, one Settling Defendant, before settling, had moved for summary judgment on pass-through before any formal discovery had even occurred. In sum, EPPs face significant challenges to proving class-wide impact and the amount of damages they sustained. The Round 4 Settling Defendants have vigorously and ably defended these cases and will continue to do so in the event the Court were to reject the settlements. These settlements avoid the many risks of further litigation and ensure recovery for members of the Settlement Classes. Of importance in the Court's assessment of the benefits to the respective Settlement Classes of the Round 4 Settlements is the provision in the settlements requiring discovery cooperation of the Round 4 Settling Defendants. The cooperation agreed to includes, for example, identification of all current and former employees, directors, and officers interviewed by government entities investigating antitrust activity in the automobile industry, document production, including English translations, regarding the investigations, not only by the DOJ, but by government entities in other countries, production of information and documents concerning

pricing, employee training on bidding and pricing, production of transactional data regarding sales to OEMs, bids, attorney proffers, witness interviews, depositions, and trial testimony. *See, e.g.*, Settlement Agreement with Meritor at ¶ 28, Exhaust Systems, 2:16-cv-03703, ECF. No. 112-1. These benefits to the Settlement Classes "strongly militates toward approval" of the settlements. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). Those cooperation provisions have strengthened and continue to strengthen EPPs' ability to prosecute their claims against the one remaining defendant in the *Exhaust Systems* case and assisted EPPs in arriving at the settlements now before the Court. *Id.* Finally, with certain exceptions, the Round 4 Settling Defendants have agreed not to engage for a period of two years in certain specified conduct that would violate the antitrust laws involving the automotive parts at issue. Therefore, the Court finds that after weighing the benefits of the settlements against the risks of continued litigation, the scale tilts heavily toward final approval.

2.     *Complexity, Expense, and Likely Duration of Continued litigation*

A settlement "should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *In re Cardizem*, 218 F.R.D. at 523 (citation omitted). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.*

The Court agrees with Settlement Class Counsel's assessment that antitrust class actions of the size and the magnitude of this very complicated litigation make this among the most difficult and complex actions to prosecute. EPP Counsel represent nearly sixty class representatives, pursuing claims under federal law and the laws of thirty states and the District of Columbia on behalf of classes of consumers and businesses that purchased or leased new Vehicles containing certain automotive parts and replacement parts manufactured by the defendants. Given the well-

known difficulty and protracted nature of antitrust cases in general, the Court finds that any final adjudicated recovery for the EPPs would almost certainly be many years away. Further, continued litigation would be expensive, time consuming, complex, and likely involve conflicting testimony from multiple expert witnesses. The Court is cognizant that complex antitrust litigation of this scope and magnitude has many inherent risks that the settlements eliminate. Here, EPPs have negotiated substantial recoveries that eliminate all risks of continued litigation while ensuring substantial payments for the benefit of the Settlement Classes. An analysis of this factor, therefore, overwhelmingly supports final approval of the settlements.

### 3.   *Judgment of Experienced Counsel*

In deciding whether a proposed settlement warrants approval, the courts consider "the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig*., 248 F.R.D. 483, 498 (E.D. Mich. 2008). Counsels' judgment "that settlement is in the best interest of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18).

Courts presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion unless there is contrary evidence. *In re Packaged Ice*, 2011 WL 717519, at *12; *Sheick*, 2010 WL 4136958, at *19-20. Here, the parties have been engaged in adversarial and protracted litigation and discovery. The negotiations leading to the settlements were conducted entirely at arm's-length and the agreements were reached only after many months of hard bargaining, often with the assistance of highly experienced mediators. The settlements were negotiated in good faith with counsel on each side zealously representing the interests of their clients.

In this litigation, the settlements were reached by experienced counsel, with decades of experience, after arm's-length negotiations, conducted, in many instances, with the assistance and under the supervision of very experienced mediators. Settlement Class Counsel have stated that they believe that the settlements each provide an excellent result for the respective Settlement Classes given the circumstances of each Settling Defendant's conduct and potential liability. Settlement Class Counsel thoroughly investigated the legal and factual issues regarding EPPs' claims and discovery has been extensive. *See, e.g.*, Joint Decl. of Hollis Salzman, Adam J. Zapala, and Marc M. Seltzer, *In re Exhaust Systems*, Case No. 2:16-cv-03703 (E.D. Mich.), ECF No. 171-1 ¶¶ 7, 14-15. The information revealed in the discovery process is useful to all the subsequently filed cases, and the records demonstrate that the parties have thoroughly explored the strength and weaknesses of the claims asserted by EPPs and the expected defenses to those claims. *See Sheick*, 2010 WL 4136958, at *19. The Court finds that the judgment of experienced counsel strongly supports final approval of the Round 4 Settlements.

### 4. Discovery

Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline required to satisfy this factor. *Packaged Ice*, 2010 WL 3070161, at *5-6; *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("[F]ormal discovery [is not] a necessary ticket to the bargaining table."). The "question is whether the parties had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004)).

The progress in discovery varies by each case. In some cases, such as *In Re: Occupant Safety Systems*, discovery is complete. In all cases, however, EPPs' counsel have had access to voluminous documents produced to the DOJ and also have considered the guilty pleas of certain

16

defendants, which in many instances set forth the volume of commerce data used in calculating the amount of criminal fines imposed, and proffers of information by cooperating defendants. The Court is satisfied that they had sufficient information to reach these settlements.

        *5.*     *Reaction of Absent Class Members*

The deadline for class members to object to the settlements and exclude themselves from the proposed Settlement Classes was November 19, 2019. As of that date, there were no objections to the settlements and no requests for exclusion from the Settlement Classes.[5] The reaction of the members of the Settlement Classes to the settlements strongly favors approval of the settlements.

        *6.*     *Public Interest*

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530 (quotation omitted). In light of the conduct at issue and guilty pleas related to the claims here, there is no countervailing public interest that provides a reason to disapprove the settlements. *Griffin*, 2013 WL 6511860, at *5. This factor also supports final approval. In addition to addressing the merits of the proposed settlements, the Court must determine that the requirements for class certification under Rule 23(a) and (b) are met. In its preliminary approval orders, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of settlement only, Settlement Classes relating to the parties and parts covered by the settlements. It is well established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Int'l Union*, 2006 WL 1984363, at *3, *18; *In re Cardizem*, 218 F.R.D. at 516-19. The settlements meet

---

[5] The only objections filed addressed the Plan of Allocation and were ultimately withdrawn.

the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

**B.      The Settlement Classes Satisfy Federal Rule of Civil Procedure 23(a)**

To certify a class, Rule 23(a) and one subsection of Rule 23(b) must be satisfied. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013). Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a).

The Court finds that each factor is met for the reasons summarized below.

1.      *Numerosity*

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Here, the Settlement Classes include millions of end-payor consumers and businesses, geographically dispersed throughout the United States. The number and the geographical distribution throughout the United States makes joinder impracticable. Therefore, this factor is satisfied.

2.      *Commonality*

Next, a class action must implicate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A certifiable class claim must arise out of the same legal or remedial theory," *Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980) (citation omitted), which can be satisfied if the class members' claims share "[a] common nucleus of operative fact," that

is, some "common question. . . at the heart of th[e] case[.]" *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992) (citation omitted).

Antitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope, and effect of the alleged conspiracy. These cases are no different. For example, an issue common to each of the Settlement Classes is whether Settling Defendants engaged in a combination and conspiracy among themselves to fix, raise, maintain, or stabilize the prices of the automotive parts at issue in each of the cases. The Court finds that the commonality requirement is met here.

### 3.    *Typicality*

To satisfy the third prerequisite to class certification, "claims . . . of the representative parties [must be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). A proposed class representative can satisfy this prerequisite if his or her claim arises "from the same event or practice or course of conduct that gives rise to the claims of other class members." *Beattie v. Century Tel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). Here, typicality is satisfied because EPPs' injuries arise from the same wrong that allegedly injured each of the Settlement Classes as a whole. Each member of a Settlement Class was a victim of the same conspiracy alleged in the applicable class complaint.

### 4.    *Adequacy of Representation*

To satisfy the fourth prerequisite for class-action status, the Court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This two-pronged inquiry requires the Court to assess "the adequacy of the named plaintiffs' representation of the class and requires that there be no conflict between the interests of the representative and those of the class in general; [and] the other relates to the adequacy of class

counsel's representation." *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. at 154, 168 (S. D. Ind. 2009) (citation omitted).

The class representatives share the same interests as other class members and will fairly and adequately protect the interests of the classes. In addition, class counsel are qualified, experienced and able to conduct the litigation. They have vigorously prosecuted these cases and have fairly and adequately represented each of the Settlement Classes. Accordingly, the Court finds that the named plaintiffs are adequate class representatives and that their counsel, Cotchett Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P., should be appointed to represent the Settlement Classes pursuant to Rule 23(g).

## C.     The Settlement Classes Satisfy Rule 23(b)(3)

Because EPPs meet the requirements of Rule 23(a), the Court turns to the additional requirement of Rule 23(b)(3)—that class plaintiffs demonstrate that common questions predominate over questions affecting only individual members and that class resolution is superior to other methods for the fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 615. Horizontal price-fixing cases are well-suited for class certification because proof of a conspiracy presents a common, predominating question, *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008), that forms the basis from which all proposed Settlement Class members' alleged injuries arise. The antitrust claims alleged herein involve the existence of shared issues related to liability, the scope of the conspiracy, and impact. Common issues predominate over any individual questions. Notably, the alleged anticompetitive conduct at issue in these cases is not dependent on the separate conduct of the individual Settlement Class members. Finally, a class action is the superior method to adjudicate these claims. The interest of Settlement Class members in individually controlling the prosecution of separate claims is outweighed by the

efficiency of the class mechanism. Therefore, for purposes of these Settlements, the Court finds that the prerequisites for a class action pursuant to Rule 23 have been met as to each of the Settlement Classes.[6]

## IV.    CONCLUSION

For the reasons stated above, the Court hereby **CERTIFIES** the Settlement Classes for EPPs. The Court's certification of the Settlement Classes as provided herein is without prejudice to, or waiver of, the rights of any Defendant to contest certification of any other class proposed in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311. The Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12- md-02311. No party may cite or refer to the Court's approval of any Settlement Class as persuasive or binding authority in support of any motion to certify any class.

**IT IS HEREBY FURTHER ORDERED** that the terms of the parties' Settlement Agreements for the Settlements are hereby incorporated as Orders of this Court.

**IT IS HEREBY FURTHER ORDERED** that Cotchett, Pitre & McCarthy, L.L.P., Robins Kaplan LLP, and Susman Godfrey L.L.P. are appointed Settlement Class Counsel.

Finally, the Court **GRANTS** final approval of each of the Settlements.

**IT IS SO ORDERED.**

Dated: September 23, 2020                           s/Sean F. Cox
                                                    Sean F. Cox
                                                    U. S. District Judge

---

[6] The Court has previously approved the revised Plan of Allocation of the settlement proceeds and now hereby reaffirms that approval.